UNITED STATES DISTRICT COURT
FOR MASSACHUSETTS

CIVIL ACTION NO._____

WILLIAM R. MITCHELL,            )
     Plaintiff,                 )
                                )
                                )
                                )
     -V-                        )        COMPLAINT
                                )        JURY DEMAND
                                )
                                )
WILLIAM D. MONGELLI,            )
LIBRARIAN  FOR MCI-NORFOLK      )
STATE PRISON, BEING SUED        )
IN HIS OFFICIAL AND             )
INDIVIDUAL CAPACITY,            )
     Defendant.                 )
                                )

INTRODUCTION

This is an action seeking monetary and punitive
damages and injunctive relief for violations of the
plaintiff's constitutional protected rights to free
speech, rights to association, harassment, retaliation,
and access to the courts by the Librarian for MCI-
Norfolk State Prison under the First and Fourteenth
Amendments to the United States Constitution, thereby,
violating plaintiff's civil rights.

The United States District Court for Massachusetts
has original jurisdiction over this action pursuant to
42 U.S.C. §1983.

PARTIES

1.   Plaintiff, William R. Mitchell, is a citizen of
the United States and of the Commonwealth of
Massachusetts.  The plaintiff is currently serving a

-2-

life sentence in the custody of the Department of
Correction, MCI-Norfolk, P.O. Box 43, Norfolk,
Massachusetts 02056.

2.    Defendant, William D. Mongelli, the Librarian for
MCI-Norfolk State Prison, has a usual place of
business located at 2 Clark Street, P.O. Box 43,
Norfolk, Massachusetts 02056.  The defendant is being
sued in his official and individual capacity.

                              FACTS

3.    On November 14, 1991, the plaintiff was sentenced
to life imprisonment for second degree murder.  The
plaintiff was sentenced to MCI-Walpole (Cedar Junction).

4.    The plaintiff was then classified to MCI-Norfolk
for the duration of said sentence.

5.    The plaintiff began researching his case in the
MCI-Norfolk Law Library.  Plaintiff also began
studying criminal law to prepare his case for appeal.
The plaintiff researched and studied for five years
up to when the Massachusetts Appeals Court affirmed
his conviction on March, 1995.

6.    The plaintiff began working and researching grounds
for a motion for a new trial.  The plaintiff also began
learning his way around the law library, and he was
familiar with William D. Mongelli, the Librarian.

-3-

7.    The plaintiff became well versed in the law and
he was happy working and studying in this area.    The
plaintiff started formulating at least three motions
for new trials within the past 14 years.

8.    The plaintiff went to the law library on a regular
basis.  He researched through the hours of 1:00 p.m.
to either 2:30 movement or until 3:30, the last
movement of the day.  The plaintiff maintained these
hours, five days a week for thirteen years until he
began having problems with the Law Librarian.  So to
avoid any further problems with the law librarian, the
plaintiff changed his research hours in the law library
to the morning shift, which is at 8:30 a.m. to 11:30
a.m..  After maintaining these hours for one year,
during this period, the librarian became hostile
towards plaintiff.  The librarian started to make
comments on his working with other inmates in the law
library.  The librarian started making subtle threats
and innuendos. i.e. while plaintiff was standing at
the copy machine, waiting in line to get his legal
papers copied, and on more than one occasion, Mr.
Mongelli would go through everyone materials before
he gave permission to copy legal papers or legal
books.  When the librarian got to the plaintiff, he
would say things like, "What's this crap, your not
going to get out of prison."  Or, while the copy

-4-

machine was still operating, sometimes before the copy
clerk could get to some of the inmates, including the
plaintiff, the time for copying would be running out,
the librarian would come out of his office and put his
hand between the plaintiff and another inmate standing
beside him, and say, "from here down", no more copies."
At first plaintiff thought that it was because the
10:30 movement was in progress, which is the cutoff
time for copies.  But as time went on, the plaintiff
started to notice a pattern of behavior from the
librarian.

9.   The plaintiff noticed that no matter where he was
standing in the copy line, and it was 10:30, the
librarian would come out of his office and say, "from
here down to here," no matter how many inmates were
still standing in the copy line, and no matter where the
plaintiff was standing in the line, plaintiff could be
fourth in line or he could be tenth in line, Mr.
Mongelli would still manage to put his hand between
plaintiff and another inmate and say, "from here down",
no more copies, and the rest can leave and come back
another day.  The plaintiff noticed that it would
always be right at that point where the plaintiff was
standing.  The plaintiff also noticed that no matter
where he was in the law library, Mr. Mongelli would

-5-

come out of his office and say, what are you doing
over there  and plaintiff would say, getting a
United States Supreme Court Reporter for research, and
he would reply, "no your not, get over here and sit
down."  The plaintiff would end up being deterred and
have to leave the law library at the next movement.

10.  This became a pattern of behavior from Mr. Mongelli
and as time went on it became more pronounced.  The
librarian started talking to inmates, especially the
plaintiff, like we were little kids, he would yell and
scream and have like a little tantrum.  He would also
say things like "you'll never get out of jail," or
"your still here."  When plaintiff would be minding his
own business, he would come out of his office and say,
"I told you to shut-up, or get out of the library."  It
seemed like every chance the librarian had, he would
make a comment or a statement like, "why don't you sit
down and shut-up, and move all your stuff and sit some
place else, I am sick of listening to you."

11.  Mr.Mongelli was demonstrating a pattern of
harassment, and that it was making the plaintiff upset,
and at times, Mr.Mongelli's attitude towards him
would stress plaintiff out, and as a result, he would
have to leave the law library early and go back to
his Unit.  This in essence, deprived the plaintiff

of the benefit of the law library for that day.

12.    This pattern of behavior and/or harassment became
very clear to plaintiff and other inmates, especially
during the last two years, where it was almost
unbearable, and that he found himself debating on
whether or not he would go to the law library because
plaintiff did not know what kind of <u>mood</u> the librarian
would be in, or what he would say next to plaintiff
while he was there researching.  In fact, it was
getting to the point where Mr. Mongelli did not even
care who heard him tell plaintiff to  either shut-up
or get out of the law library, or that he would just
humiliate plaintiff in front of other inmates for no
apparent reason, except that plaintiff was exercising
his constitutional protected rights.

13.    The plaintiff realized that Mr. Mongelli did not
want true litigators in the law library, and anybody
that did not know very much about the criminal law,
Mr. Mongelli would not say a word to them.  Most
certainly, Mr. Mongelli's behavior shows a direct
attack on the true litigators.

14.    Within the last year, 2003-2004, the librarian's
attacks became more frequent and direct.  It seemed
like Mr.Mongelli was making his crusade or campaign

-7-

of harassment personal.

15.  It came to the turning point where the plaintiff
was so worried about what Mr.Mongelli's demeanor would
be like and how he was going to act when plaintiff
would be in the law library.  The plaintiff was
literally afraid to talk to another inmate or walk
to another part of the law library, in the event that
Mr. Mongelli would come out of his office and say
something, which in turn, would have the chilling
effect on plaintiff's speech.

16.  On September, 2003, the plaintiff was in the law
library researching his case for Federal Review, and
he walked over to where the Supreme Court Reporters
were located in another part of the law library.  Mr.
Mongelli then came out of his office and screamed on
the top of his lungs, "get out of the corner ,"
there was another inmate standing next to plaintiff,
and the plaintiff said to Mr. Mongelli that he was
getting a law book for his studies, and Mr. Mongelli
just said, "no your not, both of you get out of the
corner like I said."

17.  The plaintiff did not understand why Mr. Mongelli
said this to him because all the plaintiff was doing
was obtaining a legal book of the shelf for his

-9-

Mongelli came out of his office and said, "are you going to keep talking or are you going to research." The plaintiff informed the librarian that "that is exactly what I am doing, I am researching the law, and talking to my friend about the law and how he can apply it to his case."

20.   Mr. Mongelli became angry and he did not want to hear this.  He then came over to where plaintiff and his friend were standing and said, "take your stuff and move somewhere else."  The plaintiff had at least five legal books opened on the table, with some paperwork. Plaintiff ended up cutting his research short with his friend and put the law books back on the shelf.

21.   The plaintiff's friend became nervous and distraught about what just took place with the librarian, and he told plaintiff that he did not want to get in trouble with him.  So plaintiff's friend got discouraged and ended up leaving the law library at the 10:30 a.m. movement, instead of staying for the next hour as planned.  The plaintiff was also afraid that Mr. Mongelli would say something else to interrupt and impede the plaintiff's ability to research.  The plaintiff was already intimidated by the librarian's demeanor and that he was worrying about talking to someone else in fear that he would come out of his

-8-

research.   In fact, the plaintiff, thanks to the help
from other inmates, finished formulating his Petition
for writ of habeas corpus and it was properly filed
in the United States District Court for Massachusetts.
Mr. Mongelli then told the plaintiff to either sit
down or get out of the law library.

18.   Although the plaintiff did file his petition,
eventually, his ability to preform this task was
hampered and hindered by the remarks, interference, and
the right out humiliation and harassment from the
librarian.   This made the plaintiff's research more
frustrating than a constitutional challenge to his
conviction.

19.   On January 14, 2004, the plaintiff was in the law
library, around the 9:30 a.m. movement, a friend of
the plaintiff's went over to plaintiff and asked him
for his help in researching his criminal case.   This
friend wanted to know about certain jury instructions
in his criminal trial.   The plaintiff informed his
friend that he would be glad to help him in his
research.   The plaintiff went and obtained several law
books (Northeastern 2d Edition) from the shelf and
placed them on the long research table where plaintiff
usually does his own research.   Plaintiff had a law
book in his hand, talking to his friend, and Mr.

office and screamed at plaintiff in front of other inmates.

22.   On January 15, 2004, the plaintiff was in the law
library at the 9:30 a.m. movement.  He was researching
case law for his Petition for writ of habeas corpus,
and at the same time, plaintiff was talking to the law
Clerks about certain cases that directly relate to the
plaintiff's case.  The law clerks are hired by Mr.
Mongelli to run the law library, and they are there to
assist and/or help inmates in finding materials for their
research.  In fact, any inmate that wants to work in the
law library as a law clerk has to attend Mr. Mongelli's
Law Class.  Around 10:25 a.m., just five minutes before
movement, Mr. Mongelli stuck his head out of his office
and yelled to plaintiff to "shut-up" and that he was not
going to listen to the plaintiff everyday.  The plaintiff
said to Mr. Mongelli that he had a right to "free speech."
Mr. Mongelli became very upset and he called the
plaintiff into his office and slammed the office door.  Mr.
Mongelli started yelling at plaintiff like he was a little
kid.  Plaintiff then informed Mr. Mongelli that all he
was doing was talking about how cold it was outside as
the plaintiff was ready with his jacket on to leave the
law library anyways.  Mr. Mongelli said that he did not
care and that the plaintiff will not talk in the law
library.

23.  The plaintiff then said that he was researching his case, and Mr. Mongelli just did not want to listen. The plaintiff then informed Mr. Mongelli that he was denying him access to the courts.  Mr.Mongelli became even more angry at the plaintiff, and he demonstrated resentment towards plaintiff and said, "do you want to go there?"  Of course plaintiff, by this time, had no choice but to say, "No I don't," and that he did not want to argue with him."  Mr. Mongelli just said that we were not arguing, but you are going to listen to me.

24.  The plaintiff said that he was only talking to the law clerk, and he said that plaintiff cannot talk to his law clerks. Mr. Mongelli told plaintiff to leave the law library, but plaintiff was already on his way out of the law library.  In fact, on the way out, Mr. Mongelli called the law clerk into his office and started to yell and scream at him.  Mr. Mongelli told his law clerk that he cannot talk to the plaintiff while he was in the law library.

25.  Upon leaving the law library at the 10:30 a.m. movement, plaintiff proceeded to pick-up his I.D. card so he could return to his Unit.  Mr. Mongelli called plaintiff back to the law library exit door where he was standing with the OIC Officer.[1]  Mr. Mongelli then said to this officer that he wanted him to hear

what just happened between plaintiff and Mr. Mongelli.
The librarian then started to make an incident right
there at the doorway.  Plaintiff just stood there and
listened to what Mr. Mongelli was saying in front of
this officer.  The librarian, in essence, was trying
to get plaintiff "pinched" for an infraction.  The
OIC Officer asked plaintiff if it was true and what
did he want to do, and plaintiff said that he was
sorry and that it would not happen again.  The officer
then asked Mr. Mongelli what he wanted to do about this
situation, and he said that he would probably write up
an incident report.[2]  The plaintiff then left the
building and returned to his Unit.  The plaintiff never
returned to the law library again.

26.  The plaintiff did not do anything wrong except
exercise his First and Fourteenth Amendments rights to
free speech, right to association, and access to the
courts, so while Mr. Mongelli was chastising plaintiff
in front of this officer, it was for one thing, and
one thing only, and that was to get plaintiff lugged[3]
to higher security in retaliation for expressing his

---

[1]    The OIC Officer is the person who is responsible for
the movement in the building, and he is also the person
who Mr. Mongelli goes to if there is a problem in the law
library.

[2]    An incident report is what is written when something
happens without issuing a disciplinary report (Ticket).

constitutional rights.

27.  The plaintiff has not been in the law library
since this incident, especially when Mr. Mongelli is
there because he is worried and intimidated by Mr.
Mongelli and what his demeanor would be like and what
he would do next if plaintiff appeared in the law
library.  Plaintiff only goes to the law library on
Sunday mornings when he can work and research his
case without worrying about someone telling him to
shut-up every five minutes, telling him that he cannot
work with other inmates or even talk to the law clerks.
But the down side of going to the law library on Sundays
is that the copy machine is not in operation, nor can
the plaintiff obtain any supplies.

28.  There are other incidents where Mr. Mongelli, in
the past, tried to impede plaintiff's ability to
research, work with other inmates.  One time, Mr.
Mongelli threw plaintiff out of the law library during
non-movement hours because he did not want to hear his
voice, and that he was not in the mood.  In fact, for
the last five years, plaintiff has been listening to

---

3    "Lugged" means when an inmate violates Institutional
rules and regulations, he is then handcuffed and esscorted
to the (SMU) building (Segregation), until a disciplinary
report is written and sanctions are issued.

-14-

Mr.Mongelli tell him to either shut-up or get out of
the law library.  This rein of unprofessional
behavior amounts to harassment and there is no
justification for harassing plaintiff for exercising
his constitutional protected rights.  Mr. Mongelli
acted outside of his official and individual capacity
thereby violating plaintiff's civil rights.

29.  On January 22, 2004, plaintiff filed a grievane
with the Institutional Grievance Officer (IGO),
Ricahrd S. Christiansen, Jr., grievance number 04-09,
pursuant to 103 CMR 491.09.  The plaintiff explained
exactly what took place between Mr. Mongelli and the
plaintiff. (Exhibit A).

30.  On March 18, 2004, the Grievance Officer denied
plaintiff's complaint simply stating that Mr.Mongelli
informed his office, and that although Mr. Mongelli
spoke to plaintiff, he understands that inmates may
converse with other inmates (clerks) while in the law
library to continue their law research.  However, an
extended conversation may require him to intervene
as to why this conversation must be conducted.
Furthermore, you currently have no restrictions that
would prohibit you from accessing the law library to
continue legal research. (Exhibit B).

31. On March 2, 2004, the plaintiff appealed the
decision of the grievance officer to the Superintendent
pursuant to 103 CMR 491.21 and again on March 26, 2004,
pursuant to 103 CMR 491.12(1). (Exhibit C,D).

32. In plaintiff's March 26, 2004 appeal, he argued
that Mr. Mongelli and/or the grievance officer cannot
put a time limit on speech, until or unless the
plaintiff is violating one of the Institutional rules
or regulations or policies of the law library, and in
this case, he did not. The plaintiff also argued
that he did not complain that he could not get into the
law library, he argued that while he is in the law
library, Mr. Mongelli impedes his ability to research
and thus, access to the courts, along with his rights
to associate with other inmates in the law library.
(Exhibit D). Furthermore, the plaintiff never received
a disciplinary report (Ticket) for any infraction while
in the law library for the past 14 years, nothing
has changed.

33. On April 6, 2004, the Superintendent denied
plaintiff's appeal, stating that "Your access to law
library have not been taken away, Mr. Mongelli has a
right to maintain order in law library so as to ensure
it's a good study place for all inmates at this time I

don't see any violation. (Exhibit D).

34.   On May 1, 2004, the plaintiff appealed the
superintendent's decision in denying his formal
grievance to the Department of Correction, Grievance
Coordinator, Kristie Ladouceur. (Exhibit E).   The
plaintiff sent all pertinent documents to the Main
Office for review pursuant to 103 CMR 491.13.

35.   On May 25, 2004, the Grievance Coordinator wrote
back to plaintiff informing him that she acknowledged
his grievance and that she requested additional
information from plaintiff's institution concerning
this grievance, and once she reviewed all relevant
information pertaining to grievance #04-09, plaintiff
will be provided written notification of her decision/
findings. (Exhibit F).

36.   Prior to this letter from the grievance coordinator,
the Institutional Grievance Officer, Mr. Christiansen
called plaintiff's Unit so he could make an additional
interview as to the ongoing complaint.   The grievance
officer reinvestigated, even after he had already
initial denied plaintiff's grievance.   Mr. Christiansen
asked the plaintiff if anybody else was in the law
library when this incident happened and if he had any
witnesses.   The plaintiff said, "Yes" the whole

library heard and saw what happened. The grievance
officer wanted plaintiff to be specific about the
witnesses. The plaintiff then gave Mr. Christiansen
two witnesses names that were in the law library when
the incident took place, the law clerk being one of
them. The grievance officer went to interview both of
these inmates on the same day, but plaintiff never
received any documents or findings, nor anything in
writing of what his interviews revealed.

37. On June 3, 2004, the Grievance Coordinator,
Kristie Ladouceur made her decision and found that
there was no violation and denied plaintiff's appeal
based on the facts stated in the Superintendent's
decision. (Exhibit G). In essence, the grievance
coordinator rubber stamped the recommendations of the
Superintendent, but makes a note that she recommend
that plaintiff continue to submit concerns of
retaliation/harassment to plaintiff's Superintendent
for appropriate investigation/action. (Exhibit G).

38. The plaintiff did do exactly that, and his
complaint fell on deaf ears.

-18-

## COUNT I

### (FREE SPEECH)
### (FIRST AMENDMENT)

39.  Plaintiff repeats the allegations in paragraphs 1-38 as if fully set forth herein.

40.  Defendant's actions in telling plaintiff to shut-up and get out of the law library for exercising his constitutional protected rights to free speech violates the "Free Speech Clause" of the First Amendment to the United States Constitution.

## COUNT II

### (FREE SPEECH)
### (FIRST AMENDMENT)

41.  Plaintiff repeats the allegations in paragraphs 1-38 as if fully set forth herein.

42.  Defendant's actions in telling plaintiff to shut-up and don't talk to the law clerks in exercising his constitutional protected rights to free speech violates the "Free Speech Clause" of the First Amendment to the United States Constitution.

## COUNT III

### (ASSOCIATION)
### (FIRST AMENDMENT)

43.  Plaintiff repeats the allegations in paragraphs 1-38 as if fully set forth herein.

-19-

44. Defendant's actions in telling plaintiff to shut-up and don't talk to the law clerks in exercising his constitutional protected rights to free speech violates the "Association Clause" of the First Amendment to the United States Constitution.

COUNT IV

(ASSOCIATION)
(FIRST AMENDMENT)

45. Plaintiff repeats the allegations in paragraphs 1-38 as if fully set forth herein.

46. Defendant's actions in telling plaintiff to shut-up and don't talk to other inmates he helps in exercising his constutional protected rights to free speech violates the "Association Clause" of the First Amendment to the United States Constitution.

COUNT V

(PRIOR RESTRAINTS)
(FIRST AMENDMENT)

47. Plaintiff repeats the allegations in paragraphs 1-38 as if fully set forth herein.

48. Defendant's actions in bringing plaintiff to the OIC Officer for chastising and then writing an incident report because plaintiff informed defendant that he had a right to free speech and a right to associate

with his law clerks, in essence, puts a prior
restraint and/or chilling effect on the plaintiff's
speech in violation of the First Amendment to the
United States Constitution.

COUNT VI

(RETALIATION)
(FIRST AMENDMENT)

49.  Plaintiff repeats the allegations in paragraphs 1-38
as if fully set forth herein.

50.  Defendant's actions in bringing plaintiff to the
OIC Officer for chastising and then writing an incident
report because plaintiff informed defendant that he
had a right to free speech and a right to associate
with his law clerks, was in retaliation in violation
of the First Amendment to the United States
Constitution.

COUNT VII

(ACCESS TO THE COURTS)
(FOURTEENTH AMENDMENT)

51.  Plaintiff repeats the allegations in paragraphs 1-38
as if fully set forth herein.

52.  Defendant's actions in telling plaintiff that he
could not obtain a Supreme Court Reporter from

-21-

another part of the law library interferes with
plaintiff's rights to access to the courts and
violates the "Due Process Clause" of the Fourteenth
Amendment to the United States Constitution.

COUNT VIII

(ACCESS TO THE COURTS)
(FOURTEENTH AMENDMENT)

53.  Plaintiff repeats the allegations in paragraphs 1-38
as if fully set forth herein.

54.  Defendant's actions in telling plaintiff everytime
he is in the law library, and no matter where he is in
the law library to move his legal materials to another
table interferes with plaintiff's rights to access
the courts and violates the "Due Process Clause" of the
Fourteenth Amendment to the United States Constitution.

COUNT IX

(HARASSMENT)

55.  Plaintiff repeats the allegations in paragraphs 1-38
as if fully set forth herein.

56.  Defendant's actions and campaign of harassment
for plaintiff's exercise of his constitutional protected
rights to free speech and to association violates the
First Amendment to the United States Constitution.

## COUNT X

### (CIVIL RIGHTS)

57.   Plaintiff repeats the allegations in paragraphs 1-38
as if fully set forth herein.

58.   Defendant's actions in interfering with plaintiff's
constitutional protected rights to free speech and to
association violates plaintiff's civil rights to be
free from oppressive governmental action under 42 U.S.C.
§1983.

WHEREFORE, plaintiff respectfully request that this
Court:

A.   Permanently enjoin defendant from interfering with
plaintiff's legal research, freedom of speech, right to
associate with others, access to the courts, harassment
and retaliation, now or in the future until or unless
plaintiff violates one of the Institutional rules and
regulations and/or law library policies;

B.   Award the plaintiff monetary damages for each and
every violation of the plaintiff's constitutional
protected rights to free speech, rights to associate
with others, access to the courts, harassment and
retaliation at the hands of the defendant;

-23-

C.   Award the plaintiff punitive damages for each and
every violation of the plaintiff's constitutional
protected rights to free speech, rights to associate
with others, access to the courts, harassment and
retaliation at the hands of the defendant;

D.   Award the costs and fees to plaintiff, and/or
attorney; and,

E.   grant such other and further relief as this Court
deems just and proper.

Respectfully submitted
by the Plaintiff,


*William R. Mitchell*
William R. Mitchell, pro-se
P.O. Box 43
Norfolk, MA 02056

## VERIFICATION

The plaintiff, William R. Mitchell, hereby
certifies that he has drafted the foregoing Complaint;
and that the facts contained herein are true to the
best of his knowledge and signed under the pains and
penalties of perjury on this ___ day of June, 2004.

*William R. Mitchell*
William R. Mitchell

#04-09

NORFOLK I.G.O.

JAN 27 2004

RECEIVED

ATTACHMENT "A"

DEPARTMENT OF CORRECTION
INMATE GRIEVANCE FORM
FORWARD TO THE INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

SECTION "A"

NAME: William R. Mitchell          INSTITUTION  MCI-Norfolk

NUMBER: W-51474      HOUSING UNIT: 2-1          DATE OF INCIDENT: 9,2003; 1/14/04;
1/15/2004.

COMPLAINT: On September, 2003, I was in the law library researching my
case.  I went to the Supreme Court decisions to get a law book, and
Mr. Mongelli came out of his office and said, "get out of the corner",
there was another inmate standing next to me, and I said to Mr.
Mongelli that I was getting a law book, and he said" no your not, and
(ATTACH ADDITIONAL PAGE IF NECESSARY) See, page Two, attached.

REMEDY
REQUESTED: I am requesting monetary and punitive damages for the
violations stated herein, and to enjoin the law librarian from
interfering, harassing, and impeding my ability to access to the
courts.
INMATE SIGNATURE: William R Mitchell          DATE: January 22, 2004

STAFF RECIPIENT: Richard S. Christiansen Jr.          DATE: 1/27/04

DATE RECEIVED: 1/27/04
-----------------------------------------------------------------------------

SECTION "B"

ASSIGNED GRIEVANCE NUMBER:          #04-09

DECISION RENDERED:          _____ APPROVED
                            ✓ DENIED

SUMMARY OF FINDINGS:

            See Attached

IGC SIGNATURE: Richard S. Christiansen Jr.      DATE: 3/18/04
(DENIED GRIEVANCES MAY BE APPEALED TO THE SUPERINTENDENT WITH 10 DAYS OF IGC'S DECISION.)

William R. Mitchell
January   , 2004
page Two


... get out of the corner like I said.  I don't know why he
said this to me because all I was doing was researching case
law for a "Petition For Writ Of Habeas Corpus".  This is not
the first time Mr. Mongelli told me to either sit down or get
out of the Law Library.

On January 14, 2004, I was in the Law Library at the 9:30
movement.  A friend of mine came over to me and asked me for
some help.  He wanted to know about certain jury instructions
in his criminal case.  I had a law book in my hand talking with
my friend, and Mr. Mongelli came out of his office and said, "are
you going to keep talking or are you going to research."  I
told Mr. Mongelli that is what I am doing, I am researching the
law, and talking to my friend about the law and how it applies
to his case.  Mr. Mongelli did not want to hear this.  My friend
did not want any trouble with Mr. Mongelli, so he ended up
leaving at the 10:30 movement, and I did too.  I wanted to stay
until the 11:30 movement like I always do, but I was afraid that
Mr. Mongelli would say something to me and interrupt, and impede
my ability to research, and I was afraid to talk with someone in
fear that he would come out of his office and scream at me in
front of other inmates.

On January 15, 2004, I was in the Law Library at the 9:30
movement.  I was researching the case law for my Petition, and
at the same time I was talking to the law Clerk about certain
cases that relate to my case.  It was arounf 10:25, just before
movement, when Mr. Mongelli stuck his head out of his office and
yelled to me to "shut-up, and that he was not going to listen
to me everyday."  I said to Mr. Mongelli that I have a 1st
Amendment to right to "free speech".  Mr. Mongelli became very
upset and he called me into his office.  He started to yell at
me like I was a little kid.  I said all I was talking about was
how cold it was outside because I was ready to leave.  He said
that he did not care and that I will not talk in the law library.

I said that I was researching my case, he did not want to
hear this, and I said that he was then denying my access to the
courts.  Mr. Mongelli became even more angry and he said, "do
you want to go there".  I said no, and that I did not want to
argue with him, he said that we were not arguing, but you are
listening to me.  I said I was only talking to the law clerk,
and he said that I cannot talk to the law clerk's.  He told me
to leave.  Mr. Mongelli then called his law clerk into his office
and started to scream at him, and told him that he cannot talk to
me.

William R. Mitchell
January  , 2004
page Three


    Upon leaving the law libraary at the 10:30 movement, I
went to get my I.D. to return to my Unit, Mr.Mongelli called
me back to where he was standing with the OIC Officer.  He
then said to this officer that he wanted him to hear what
happened.  Mr. Mongelli tried to get me lugged, and I did not
say a word.  I said that I was sorry and that it would not
happen again.  The Officer said what do you want to do, and Mr.
Mongelli said that he probably would have to write up an incident
report.  I then left the building.

    I believe that I did not do anything wrong, I was only
exercising my First Amendment rights to access to the courts,
free speech, and my right to association.  See, <u>Zimmerman v.
Tribble</u>, 226 F.3d 568, 573 (7th Cir. 2000); <u>Hancock v. Thala-
cker</u>, 933 F.Supp. 1449, 1474-1475 (N.D.Iowa 1996).

    I also believe and that I am afraid that because Mr. Mongelli
brought this issue to the OIC Officer was in retaliation for
saying that I had a First Amendment right to free speech, access
to the courts, and a right to associate.  This in effect, puts
a stifling or a chilling effect on my speech, and that Mr.
Mongelli's conduct amounts to harassment. <u>Bell v. Johnson</u>, 308
F.3d 594, 604 (6th Cir. 2002); <u>Thaddeus-X v. Blatter</u>, 175 F.3d
378, 397 (6th Cir. 1999).

    There are other incidents where Mr. Mongelli, in the past,
tried to impede my ability to research, work with other inmates,
and one time he threw me out of the Law Library because he
did not want me to help or talk to other inmates.  For the last
few years I have been listening to Mr. Mongelli tell me to
shut-up, and "since there is no justification for harassing
people for exercising their constitutional rights [the effect
on freedom of speech] need not be great in order to be action-
able." <u>Id</u>. at 397.   42 U.S.C. §1983.

    It seems like every time I go to the law library, which is
only three times a week, Wed, thurs, Fri, Mr. Mongelli waits
until I am talking to or helping another inmate, before he
tries to interfere with my protected rights.  I know that it
is clear that most courts hold that "an inmate does not have
an independent right to help other prisoners with their legal
claims."  See, <u>Gibbs v. Hopkins</u>, 10 F.3d 373, 378 (6th Cir.
1993).  Rather, "a 'jailhouse lawyer's' right to assist another
prisoner is wholly derivative of that prisoner's right of
access to the courts; prison officials may prohibit or limit
jailhouse lawyering unless doing so interferes with an inmate's
ability to present his grievances to a court." <u>Thaddeus-X</u>,

William R. Mitchell
January  , 2004
page Four


supra, at 395.  In my case, I help a lot of people and Mr.
Mongelli knows this, and his interference with this protected
conduct, denies not only my right to access to the courts,
but other inmate's access to the courts as well.

    I am requesting monetary and punitive damages for Mr.
Mongelli's violations of my Constitutional Rights under the
First Amendment to the United States Constitution, and art.
16 of the Massachusetts Declaration of Rights.  See, art. LXXVII
of the Amendments.

    I am also requesting that the Department of Correction
enjoin the law librarian from interfering, harassing, and
impeding my ability to access to the courts.


                              Respectfully yours,



                              William R. Mitchell


cc: file



## The Commonwealth of Massachusetts
### Executive Office of Public Safety
### Department of Correction
### Massachusetts Correctional Institution Norfolk
### 2 Clark Street,  P.O. Box 43
### Norfolk, Massachusetts 02056
### Tel: (508)660-5900

### www.mass.gov/doc



**Mitt Romney**
*Governor*
**Kerry Healy**
*Lt. Governor*

**Edward Flynn**
*Secretary*

**Kathleen M. Dennehy**
*Commissioner*
**James Bender**
*Acting Deputy Commissioner*

**Luis S. Spencer**
*Superintendent*

March 18, 2004

William Mitchell, W51474
Unit 2-1
Norfolk, MA 02056

Inmate Mitchell,

A review of your grievance #04-09 has been completed with the following decision rendered.

Please be advised that Mr. Mongelli has informed this Office that although he has spoken to you, he understands that Inmates may converse with other Inmates (clerks) while in the Law Library to continue their Law research. However, an extended conversation may require him to intervene as to why this conversation must be conducted. Furthermore, you currently have no restrictions that would prohibit you form accessing the Law Library to continue conducting legal research.

Based on this information, this Grievance is Denied. If you disagree with this decision you may appeal in accordance with 103 CMR 491.

Sincerely,

*Richard S. Christiansen Jr.*

Richard S. Christiansen, Jr.
Institution Grievance Coordinator

RSC
cc: File

William R. Mitchell
W-51474/Unit 2-1
MCI-Norfolk


Luis Spencer
Superintendent
MCI-Norfolk                         March 2, 2004


**Re:** FORMAL GRIEVANCE
     103 CMR 491.21


Dear Superintendent Spencer:

     I am submitting my grievance to you for review pursuant
to 103 CMR 491.21, as the Grievance Coordinator, Richard
S. Christinansen failed to answer my grievance within the
regulations time limits pursuant to 103 CMR 491.10(1)(E) &
491.18.

     On January 22, 2004, I filed my grievance with the
Inmate Grievance Coordinator.  On January 27, 2004, I
received the receipt from the Grievance officer with
grievance number 04-09.

     On February 6, 2004, the day the Grievance officer was
suppose to respond, I received a "Grievance Extension Form"
notifying me that the time to answer was extended to
February 26, 2004.

     To this day I have not received an answer or a response
from my grievance, and therefore, there is nothing to appeal.

     So pursuant to 103 CMR 491.21, I am submitting my
grievance to you for review (See enclosed).

     Thank you for your time in this matter.


                              Very truly yours,


                              William R. Mitchell


cc: file
encls.

SUPERINTENDENT'S OFFICE
MCI-NORFOLK

MAR 2 6

ATTACHMENT "C"

## DEPARTMENT OF CORRECTION
## INSTITUTION APPEAL FORM
### FORWARD TO THE INSTITUTIONAL SUPERINTENDENT

SECTION A

NAME  William R. Mitchell        INSTITUTION  MCI-Norfolk

NUMBER W-51474      HOUSING UNIT 2-1      DATE OF INCIDENT 9,2003; 1/14/04
1/15/2004

APPEAL   I am appealing the decision of the
Grievance officer's denial of my grievance dated January 27, 2004.
pursuant to 103 CMR 491.12(1).

See attached.

(ATTACH ADDITIONAL PAGE IF NECESSARY)

REMEDY
REQUESTED  (See Grievane at page 1 and 4).

INMATE SIGNATURE William R. Mitchell        DATE: 3/24/04

STAFF RECIPIENT: M. Anderson        DATE: MAR 2 6 2004

DATE RECEIVED: MAR 2 6 2004

**SECTION B**

ASSIGNED GRIEVANCE NUMBER: #04-09

ASSIGNED INSTITUTION APPEAL NUMBER: #04-09

DECISION RENDERED: _____ APPROVED
                    _____ DENIED

SUMMARY OF FINDINGS: Your access to law lib have not
been taken away, Mr. Mongelli has a right
to maintain order in law lib so as to ensure
it's a good study place for all inmates
at this time I don't see any violation(s).

SUPERINTENDENT'S
SIGNATURE        DATE 4/6/04

William R. Mitchell
March 24, 2004
page Two


The Grievance Officer did not address two out of the
three claims.

First, I made a claim that the law librarian interfered
with my rights to association with other inmates in the law
library.

Two, The Law Librarian interfered with my access to
the court's.

Three, the Law Librarian interfered with my rights to
free speech.  (See Grievance attached).

The Grievance Officer denied my grievance stating that
Mr. Mongelli has informed him that although he has spoken
to me, he understands that inmates may converse with other
(clerks) while in the Law Library to continue their law
research.  However, an extended conversation may require him
to intervene as to why this conversation must be conducted.

The Grievance Officer also stated that I am not currently
restricted from the Law Library which would deny me access to
the Law Library in order to conduct legal research.  (See
attached).

The Grievance Officer misses the point, and that is
it does matter how long a conversation is taken place, it
still would be an interference of my freedom of speech,
because there is no time limits on speech, unless I am
violating one of the Institutions policies or regulations.

In this case, I never violated any rules or regulations
in the Law Library as long as I have been going there.

Second, the Grievance Officer's misses the point as to
being denied access to the courts.  In his findings he says
that I am not impeded from access to the Law Librarian.

I never made a claim that I was being denied access to
the Law Library, I made the claim that I was being denied
"access to the courts".  This is a big difference.

William R. Mitchell
March 24, 2004
page Three


     The Grievance Officer fails to address my harassment
claim.  The actions taken by the Law Librarian amounts to
harassment because Mr. Mongelli will jump at every chance
to impede my ability to work on my case, and on others.

     It is almost impossible to work, research without
talking or associating with others.  One has to talk in
order to get ones point across.

     I have not been in the Law Library since January 15,
2004, except for when I go on Sundays now, at 9:30, but
this access is still limited because the copy machine is
turned off, and the Law Librarian is not there to obtain
supplies.

     In other words, the Law Librarian's actions had a
chilling effect on my First Amendment rights to free speech,
access to the courts, and my rights to association with
other inmates in the Law Library, and I am worried about
what Mr. Mongelli will say and do while I am in there.  If
fact, people I know and work with have to stop me on my
way to the canteen, in the yard, etc., just to associate
with me and converse in the law.

     So at this time I am respectfully requesting that you
or your office intervene in this matter, and reverse the
decision of the Grievance Officer and grant the relief
requested.


                              Respectfully yours,

                              William R. Mitchell
                              MCI-Norfolk


cc: file
encls.

William R. Mitchell
P.O. Box 43
Norfolk, MA 02056


Department of Correction
Kristie Ladouceur
Grievance Coordinator                 May 1, 2004
50 Maple Street, Suite 3
Milford, MA 01757


**Re:** MITCHELL V. MONGELLI
GRIEVANCE NUMBER 04-09
COMMITMENT NUMBER W-51474
103 CMR 491.13


Dear Ms. Ladouceur:

        Please find enclosed pursuant to 103 CMR 491.13, and
G.L. c. 127, §38E, my appeal from the denial of my
Grievance on April 6, 2004.

        103 CMR 491.13 states in pertinent part that any
grievance denied by the Superintendent will be packaged
and forwarded to the departmental grievance coordinator.

        I have been waiting for  an answer from your office,
so, instead, here are the relevant documentation for your
review.

        Thank you for your time in this matter.


                                Very truly yours,



                                William R. Mitchell


cc: file
encls.



*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*50 Maple Street, Suite 3*
*Milford, Massachusetts 01757-3698*
*(508) 422-3300*
*www.mass.gov/doc*



**Mitt Romney**
*Governor*

**Kerry Healey**
*Lieutenant Governor*

**Edward A. Flynn**
*Secretary*

Kathleen M. Dennehy
*Commissioner*

James R. Bender
*Acting Deputy Commissioner*

William Mitchell, W51474
MCI-Norfolk
P.O. Box 43
Norfolk, MA 02056

May 25, 2004

Dear Mr. Mitchell:

I am in receipt of your correspondence dated May 1, 2004. More specifically, you indicate that you are awaiting a response from this office concerning grievance #04-09.

Please be advised that I am currently investigating the above-referenced grievance. I have also requested additional information from your institution concerning this grievance. Therefore, once I have reviewed all relevant information pertaining to grievance #04-09, you will be provided written notification of my decision/findings.

I hope that this has adequately addressed your immediate concerns.

Sincerely,

Kristie Ladouceur
Department Grievance Coordinator

cc. Luis Spencer, Superintendent
Richard Christiansen, IGC
File

PRINTED ON RECYCLED PAPER





*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*50 Maple Street, Suite 3*
*Milford, Massachusetts 01757-3698*
*(508) 422-3300*
*www.mass.gov/doc*

**Mitt Romney**
*Governor*

**Kerry Healey**
*Lieutenant Governor*

**Edward A. Flynn**
*Secretary*

**Kathleen M. Dennehy**
*Commissioner*

**James Bender**
*Acting Deputy Commissioner*

William Mitchell, W51575
MCI-Norfolk
P.O. Box 43
Norfolk, MA 02056

June 3, 2004

Dear Mr. Mitchell:

In accordance with 103 CMR 491, Inmate Grievance Policy, the Department Grievance Coordinator reviews all grievance appeals denied at the Superintendent's level. As a result of the aforementioned requirement, I have reviewed your grievance (#04-09) and appeal, relative to allegations of unprofessional conduct by the Librarian.

Please be advised that after a thorough review of the above-mentioned grievance and appeal, I support the Superintendent's decision to deny your grievance, as the facts presented to not support your allegations that the Librarian acted unprofessionally. Additionally, although inmates are allowed to converse and seek assistance from law clerks and other inmates while in the library, they must conduct themselves in accordance with institutional regulations. Furthermore, it is appropriate for the Librarian to ask inmates to leave the library when necessary, to maintain order. Lastly, I recommend that you continue to submit concerns of retaliation/harassment to your respective Superintendent for appropriate investigation/action.

Sincerely,

Kristie Ladouceur
Department Grievance Coordinator

cc. Luis Spencer, Superintendent
R. Christiansen, IGC
File

PRINTED ON RECYCLED PAPER