UNITED STATES DISTRICT COURT
DISTRICT FOR MASSACHUSETTS

CIVIL ACTION NO. 04-11504-RCL

```
                              )
WILLIAM R. MITCHELL,          )
     Plaintiff,               )
                              )
                              )
     -V-                      )        AMENDED COMPLAINT
                              )        JURY DEMAND
                              )
WILLIAM D. MONGELLI,          )
LIBRARIAN FOR MCI-NORFOLK     )
STATE PRISON, BEING SUED      )
IN HIS OFFICIAL AND           )
INDIVIDUAL CAPACITY,          )
     Defendant.               )
                              )
```

## INTRODUCTION

This is an action seeking monetary and punitive damages and injunctive relief for violations of the plaintiff's constitutionally protected rights to free speech, rights to association, harassment, retaliation, and access to the courts by the Librarian for MCI-Norfolk State Prison under the First and Fourteenth Amendments to the United States Constitution, thereby violating plaintiff's civil rights pursuant to 42 U.S.C. §1983.

## JURISDICTION

1.   This Court has jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. §§1331 and 1343 (a)(3).

-2-

VENUE

2.    The District of Massachusetts is an appropriate venue under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

PARTIES

3.    Plaintiff William R. Mitchell is a citizen of the United States and of the Commonwealth of Massachusetts. The plaintiff is currently serving a life sentence in the custody of the Department of Correction, MCI-Norfolk, P.O. Box 43, Norfolk, Massachusetts 02056.

4.    Defendant William D. Mongelli is the Librarian for MCI-Norfolk State Prison and he has a usual place of business located at 2 Clark Street, P.O. Box 43, Norfolk, Massachusetts 02056.  The defendant is being sued in his official and individual capacity.

5.    At all times relevant to the events described herein, the defendant has acted under color of state law.  The defendant William D. Mongelli continues to act under color of state law.

-3-

FACTUAL ALLEGATIONS

6.    On November 14, 1991, the plaintiff was sentenced
to life imprisonment for second degree murder.  The
plaintiff was sentenced to MCI-Walpole (Cedar Junction).

7.    The plaintiff was then classified to MCI-Norfolk
for the duration of said sentence.

8.    The plaintiff began researching his case in the
MCI-Norfolk Law Library.  Plaintiff also began
studying criminal law to prepare his case for appeal.
The plaintiff researched and studied for five years up
to when the Massachusetts Appeals Court affirmed his
conviction on March, 1995.

9.    The plaintiff began working and researching grounds
for a motion for a new trial.  The plaintiff also began
learning his way around the law library and he was
familiar with defendant William D. Mongelli, the
Librarian.

10.    The plaintiff became well versed in the law and he
was happy working and studying in this area.  The
plaintiff started formulating at least three motions for
new trials within the past 14 years.

11.    The plaintiff went to the law library on a regular
basis.  He researched through the hours of 1:00 p.m.
to either 2:30 movement or until 3:30 p.m., the last

-4-

movement of the day.  The plaintiff maintains these
hours, five days a week for at least thirteen years
until he began having problems with the law librarian.
So to avoid any further problems with the defendant,
the plaintiff changed his research hours in the law
library to the morning shift,which is at 8:30 a.m. to
11:30 a.m..  After maintaining these hours for one year,
during this period the librarian became hostile towards
plaintiff.  The librarian started to make comments on
his working with other inmates in the law library.  The
librarian started making subtle threats and innuendos.
i.e. while plaintiff was standing in the copy machine
line waiting to get his legal papers copied and on
more than one occasion, the defendant William D. Mongelli
would go through everyone's materials before he gave
permission to copy legal papers or legal books.  When
the librarian got to the plaintiff he would say things
like, "What's this crap, your not going to get out of
prison."  Or, while the copy machine was still
operating and before the copy clerk could get to some
of the inmates, including the plaintiff, the time for
copying would be running out, the librarian would
come out of his office and put his hand between the
plaintiff and another inmate standing in front of
plaintiff and say, "from here down, no more copies."

-5-

At first plaintiff thought that it was because the
10:30 a.m. movement was in progress, which is the cut
off time for copies. But as time went on the plaintiff
started to notice a pattern of behavior from the
librarian.

12. The plaintiff noticed that no matter where he was
standing in the copy line and it was 10:30 a.m., the
librarian would come out of his office and say to
plaintiff, "from here down to here," no matter how
many inmates were still standing in the copy line and
no matter where the plaintiff was standing in the line.
The plaintiff could be fourth in line or he could be
tenth in line, the librarian would still manage to put
his hand between plaintiff and another inmate and say,
"from here down, no more copies and the rest can leave
and come back another day." The plaintiff noticed that
it would always be right at that point where the
plaintiff was standing. The plaintiff also noticed that
no matter where he was in the law library, the defendant
William D. Mongell would come out of his office and say,
"what are you doing over there", and the plaintiff
would say, "getting a United States Supreme Court
Reporter for research", the defendant would reply,
"no your not, get over here and sit down." The
plaintiff would end up being deterred and have to leave
the law library at the next available movement.

13.  This became a pattern of behavior from the defendant
William D. Mongelli and as time went on it became more
pronounced.  The librarian started talking to the
plaintiff like he was a little kid.  He would yell and
scream and have like a little tantrum.  The librarian
would also say things like, "you'll never get out of
jail."  Or, "your still here."  When plaintiff would
be minding his own business, he would come out of his
office and say, "I told you to shut-up or get out of
the library."  It seemed like every chance the librarian
had he would make a comment or a statement like, "why
don't you sit down and shut-up and move all your stuff
and sit some place else, I am sick of listening to you."

14.  The defendant William D. Mongelli was demonstrating
a pattern of harassment and that it was making the
plaintiff upset, and at times, the defendant's attitude
towards plaintiff would stress him out and as a result,
the plaintiff would have to leave the law library early
and go back to his Unit.  This in essence deprived the
plaintiff of the benefit of the law library for that day.

15.  This pattern of behavior and/or harassment became
very clear to plaintiff, especially during the last two
years, where it was almost unbearable and that he
found himself debating on whether or not he would go
to the law library on a particular day because the

plaintiff did not know what kind of <u>mood</u> the librarian would be in or what he would say next to plaintiff while he was there researching. In fact, it was getting to the point where the defendant William D. Mongelli did not even care who heard him tell plaintiff to either shut-up or get out of the law library  or that he would just right out humiliate plaintiff in front of other inmates for no apparent reason, except that the plaintiff was exercising his constitutionally protected rights.

16.  The plaintiff realized that the defendant did not want true litigators in the law library and anybody that did not know very much about the criminal law, the librarian would not say a word to them.  Most certainly the librarian's behavior shows a direct attack on the plaintiff and any other true litigator.

17.  Within the last year, between 2003-2004, the librarian's attacks became more frequent and direct.  It seemed like the defendant William D. Mongelli was making his crusade or campaign of harassment personal.

18.  It came to the turning point where the plaintiff was so worried about what the defendant's demeanor would be like and how he was going to act when plaintiff would be in the law library.  The plaintiff was literally afraid to talk to another inmate or walk to

another part of the law library in the event that the
librarian would come out of his office and say
something, which in turn would have the chilling affect
on plaintiff's speech.

19.   On September, on or around 2003, the plaintiff was
in the law library researching his case for Federal
review and he walked over to where the United States
Supreme Court Reporters were located in another part of
the law library.  The defendant William D. Mongelli
came out of his office and screamed on the top of his
lungs, "get out of the corner."  There was another
inmate standing next to plaintiff and plaintiff said to
the librarian that he was getting a law book for his
studies and the librarian just said, "no your not,
both of you get out of the corner like I said."

20.   The plaintiff did not understand why the defendant
William D. Mongelli said this to him because all the
plaintiff was doing was obtaining a legal book of the
shelf for his research.  In fact, the plaintiff, thanks
to the help from other inmates, finished formulating
his Application for a Writ of Habeas Corpus and that
it was properly filed in the United States District
Court for Massachusetts.  The librarian then told the
plaintiff to either sit down or get out of the law
library.

21.  Although the plaintiff did file his petition on
time, his ability to perform this task was hampered
and hindered by the defendant's remarks, interference
and the right out humiliation and harassment from the
librarian.  This made the plaintiff's research more
frustrating and unmanageable.

22.  On or around January 14, 2004, the plaintiff was
in the law library, around the 9:30 a.m. movement and
a friend of the plaintiff's went over to him and asked
for plaintiff's help in researching his criminal case.
This friend wanted to know about certain jury
instructions in his criminal trial.  The plaintiff
informed his friend that he would be glad to help him
in his legal research.  The plaintiff went to a section
of the library and obtained several law books
(Northeastern 2d Edition) from the shelf and placed
them on the long research table where plaintiff usually
does his own research.  Plaintiff had a law book in
his hands, talking to his friend when the defendant
William D. Mongelli came out of his office and said,
"are you going to keep talking or are you going to
research."  The plaintiff informed the librarian that
"that is exactly what I am doing, I am researching the
law and taking to my friend about how he can apply
the law to his case."

-10-

23. The defendant William D. Mongelli became angry and
he did not want to hear this.  The librarian then came
over to where plaintiff and his friend were standing and
said, "take your stuff and move somewhere else."  The
plaintiff had at least five legal books opened up on
the table with some paperwork.  Plaintiff ended up
cutting his research short with his friend and put the
law books back on the shelf.

24. The plaintiff's friend became nervous and distraught
about what just took place with the librarian and he told
plaintiff that he did not want to get in trouble with
him.  So plaintiff's friend got discouraged and ended
up leaving the law library at the 10:30 a.m. movement,
instead of staying for the next hour as planned.  The
plaintiff was also afraid that the defendant William
D. Mongelli would say something else to interrupt and
impede the plaintiff's ability to research.  The
plaintiff was already intimidated by the librarian's
demeanor and that he was worrying about talking to
someone else in fear that the librarian would come out
of his office screaming at plaintiff in front of other
inmates.

25. On or around January 15, 2004, the plaintiff was
in the law library at the 9:30 a.m. movement.  He was
researching case law for his application for writ of

-11-

habeas corpus and at the same time plaintiff was talking
to the law Clerk about certain cases that directly
relate to the plaintiff's case.  The law clerks are hired
by the defendant William D. Mongelli to run the law
library and assist and/or help other inmates in finding
materials for their research.  In fact, any inmate that
wants to work in the law library as a law clerk has to
attend the librarian's Law Class.  Around 10:25 a.m.
just five minutes before movement the librarian stuck
his head out of his office and yelled at plaintiff to
"shut-up" and that he was not going to listen to the
plaintiff everyday.  The plaintiff said to the librarian
that he had a right to "free speech."  The librarian
became very upset and he called the plaintiff into his
office and slammed the office door.  The defendant
William D. Mongelli started yelling at plaintiff like he
was a little kid.  Plaintiff then informed the librarian
that all he was doing was talking to the law clerk about
certain case law and how the whether was outside.  The
librarian said that he did not care and that the
plaintiff will not talk in the law library or his law
clerks.

26.  The plaintiff then said that he was researching
his case and the librarian just did not want to listen.
The plaintiff then informed the librarian that he was
denying him access to the courts.  The librarian became

-12-

even more angry at the plaintiff and he demonstrated
resentment towards plaintiff and said, "do you want to
go there?"  Of course plaintiff, by this time, had no
choice but to say, "No, I don't," and that he did not
want to argue with him."  The librarian just said that
we were not arguing but you are going to listen to me.

27.  The plaintiff said that he was only talking to
the law clerk and he said that plaintiff cannot talk to
his law clerks.  The librarian told plaintiff to leave
the law library, but plaintiff was already on his way
out of the law library.  In fact, on the way out, the
librarian called the law clerk into his office and
started to yell and scream at him.  The defendant
William D. Mongelli told his law clerk that he cannot
talk to the plaintiff while he was in the law library.

28.  Upon leaving the law library at the 10:30
a.m. movement, plaintiff proceeded to pick-up his I.D.
card so he could return to his Unit.  The librarian
called plaintiff back to the law library exit door
where he was standing with the OIC Officer.[1]  The
librarian then said to this officer that he wanted him
to hear what just happened between plaintiff and the

---

[1]    The OIC Officer is the person who is responsible for
the movement in the building and he is also the person
who the defendant William D. Mongelli goes to if there is
a problem in the law library.

-13-

librarian.  The defendant William D. Mongelli then
started to make an incident right there at the doorway.
Plaintiff just stood there and listened to what the
librarian was saying in front of this officer.  The
librarian, in essence, was trying to get plaintiff
"pinched" for an infraction.  The OIC Officer asked
plaintiff if it was true and what did he want to do,
the plaintiff said that he was sorry and that it would
not happen again.  The officer then asked the librarain
what he wanted to do about this situation and he said
that he would probably write up an incident report.[2]
The plaintiff then left the building and returned to
his Unit.  The plaintiff never returned to the law
library again when the librarian was there.

29.  The plaintiff did not do anything wrong except
exercise his First and Fourteenth Amendment rights to
free speech, right to association, and access to the
courts.  So the  only reason that the librarian was
chastising plaintiff in front of this officer was for[3]

------------------

[2]    An incident report is what is wriiten when something
happens without issuing a disciplinary report (Ticket).

[3]    "Lugged" means when an inmate violates Institutional
rules and regulations, he is then handcuffed and esscorted
to the (SMU) building until a disciplinary report is
written and sanctions are issued.

one thing only, and that was to get plaintiff lugged to
higher security in retaliation for expressing his
constitutional rights.

30.   The plaintiff has not been in the law library
since this incident, especially when the librarian is
there and because he is worried and intimidated by
the defendant William D. Mongelli and what his demeanor
would be like and what he would do next if plaintiff
appeared in the law library.  Plaintiff only goes to the
law library on Saturdays and Sunday mornings when he can
work and research his case without worrying about some
one telling him to shut-up every five minutes and
telling him that he cannot work with other inmates or
even talk to the law clerks.  But the down side of
going to the law library on Saturdays and Sundays is
that the copy machine is not in operation, nor can the
plaintiff obtain any legal supplies.

31.   There are other incidents where the defendant
William D. Mongelli, in the past, tried to impede
plaintiff's ability to research and work with other
inmates.  One time, the librarian threw plaintiff out
of the law library during non-movement hours because
he did not want to hear plaintiff's voice and that he
was not in the mood.  In fact, for the last five years
plaintiff has been listening to librarian tell him to

either shut-up or get out of the law library.  This rein
of unprofessional behavior amounts to harassment and
there is no justification for harassing plaintiff for
exercising his constitutionally protected rights.

32.  On January 22, 2004, plaintiff filed a grievance
with the Institutional Grievance Officer (IGO),
Richard S. Christiansen, Jr., grievance number 04-09
pursuant to 103 CMR 491.09.  The plaintiff explained
exactly what took place between the defendant William
D. Mongelli and the plaintiff. (Exhibit A).

33.  On March 18, 2004, the Grievance Officer denied
plaintiff's complaint simply stating that the librarian
informed his office and that although the librarian
spoke to plaintiff, he understands that inmates may
converse with other inmates (clerks) while in the law
library to continue their law research.  However, an
extended conversation may require him to intervene as
to why this conversation must be conducted.
Furthermore, you currently have no restrictions that
would prohibit you from accessing the law library to
continue legal research. (Exhibit B).

34.  On March 2, 2004, the plaintiff appealed the
decision of the grievance officer to the Superintendent
pursuant to 103 CMR 491.21 and again on March 26,
2004, pursuant to 103 CMR 491.12(1). (Exhibit C,D).

-16-

35.  In plaintiff's March 26, 2004 appeal, he argued that
the librarian and/or grievance officer cannot put a time
limit on speech, until or unless the plaintiff is
violating one of the Institutional rules or regulations
or policies of the law library, and in this case he did
not.  The plaintiff also argued that he did not complain
that he could not get into the law library, he argued
that while he is is in the law library, the librarian
impedes his ability to research and thus, access to
the courts, along with his rights to associate with
other inmates in the law library. (Exhibit D).
Furthermore, the plaintiff never received a disciplinary
report (Ticket) for any infraction while in the law
library for the past 14 years, nothing has changed.

36.  On April 6, 2004, the Superintendent denied
plaintiff's appeal stating that "Your access to law
library have not been taken away, Mr. Mongelli has a
right to maintain order in law library so as to ensure
it's a good study place for all inmates at this time I
don't see any violation. (Exhibit D).

37.  On May 1, 2004, the plaintiff appealed the
superintendent's decision in denying his formal
grievance to the Department of Correction, Grievance
Coordinator, Kristie Ladouceur. (Exhibit E).  The
plaintiff sent all pertinent documents to the Main

-17-

Office for review pursuant to 103 CMR 491.13.

38.  On May 25, 2004, the Grievance Coordinator wrote
back to plaintiff informing him that she acknowledged
his grievance and that she requested additional
information from plaintiff's institution concerning
this grievance and once she reviewed all relevant
information pertaining to grievance #04-09, plaintiff
will be provided written notification of her decision/
findings. (Exhibit F).

39.  Prior to this letter from the grievance coordinator,
the Institutional Grievance Officer, Mr. Christiansen
called plaintiff's Unit so he could make an additional
interview as to the ongoing complaint.  The grievance
officer reinvestigated, even after he had already
initially denied plaintiff's grievance.  Mr. Christiansen
asked the plaintiff is anybody else was in the law
library when this incident happened and if he had any
witnesses.  The plaintiff said, "Yes" the whole law
library heard and saw what happened.  The grievance
officer wanted plaintiff to be specific about the
witnesses.  The plaintiff then gave Mr. Christiansen
two witnesses names that were in the law library when
the incident took place, the law clerk being one of
them.  The grievance officer went to interview both
of these inmates on the same day, but plaintiff never

-18-

received any documents or findings, nor anything in writing of what his interviews revealed.

40. On June 3, 2004, the Grievance Coordinator, Kristie Ladouceur made her decision and found that there was no violation and denied plaintiff's appeal based on the facts stated in the Superintendent's decision. (Exhibit G). In essence, the grievance coordinator rubber stamped the recommendations of the Superintendent, but makes a note that she recommend that plaintiff continue to submit concerns of retaliation/harassment to plaintiff's Superintendent for appropriate investigation/action.(Exhibit G).

41. The plaintiff did do exactly that and his complaint fell on deaf ears.

COUNT I

(FREE SPEECH)
(FIRST AMENDMENT)

42. Plaintiff repeats the allegations in paragraphs 1-41 as if fully set forth herein.

43. Defendant's actions in telling plaintiff to shut-up and get out of the law library for exercising his constitutionally protected rights to free speech violates the "Free Speech Clause" of the First Amendment to the United States Constitution.

-19-

## COUNT II

### (FREE SPEECH)
### (FIRST AMENDMENT)

44. Plaintiff repeats the allegations in paragraphs 1-41 as if fully set forth herein.

45. Defendant's actions in telling plaintiff to shut-up and don't talk to the law clerks in exercising his constitutionally protected rights to free speech violates the "Free Speech Clause" of the First Amendment to the United States Constitution.

## COUNT III

### (ASSOCIATION)
### (FIRST AMENDMENT)

46. Plaintiff repeats the allegations in paragraphs 1-41 as if fully set forth herein.

47. Defendant's actions in telling plaintiff to shut-up and don't talk to the law clerks in exercising his constitutionally protected rights to free speech violates the "Association Clause" of the First Amendment to the United States Constitution.

## COUNT IV

### (ASSOCIATION)
### (FIRST AMENDMENT)

48. Plaintiff repeats the allegations in paragraphs 1-41 as if fully set forth herein.