```
            UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
```

WILLIAM R. MITCHELL,                        No. 04-cv-11504-RCL

    Plaintiff,

    v.

WILLIAM D. MONGELLI,

    Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF THE
## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

The defendant, William D. Mongelli ("Mongelli"), submits this memorandum of law in support of his motion for judgment on the pleadings.

## INTRODUCTION

William R. Mitchell ("Mitchell") is a prisoner in the custody of the Department of Correction, serving a life sentence for second-degree murder. *See* Commonwealth v. Mitchell, 646 N.E.2d 1073 (Mass. App.), rev. denied, 648 N.E.2d 1285 (Mass. 1995). He is currently confined at the Massachusetts Correctional Institution, Norfolk ("MCI-Norfolk"), a Level 4 medium-security correctional facility. (Amended Complaint ¶ 7) Mongelli is the librarian at MCI-Norfolk. Mitchell filed this lawsuit against him on July 1, 2004.[1]

## STATEMENT OF FACTS

Mitchell was sentenced to life in prison for second-degree murder on November 14, 1991. (Am. Complaint ¶ 6) He learned to use the MCI-Norfolk law library during the criminal appeal process, and after his conviction was affirmed in March 1995, he began to

2

research potential grounds for a new trial. (Am. Complaint ¶¶ 8, 9) During this time, Mitchell became familiar with the law librarian, Mongelli. (Am. Complaint ¶ 9) For more than thirteen years, Mitchell spent significant afternoon hours in the law library without incident. (Am. Complaint ¶ 11)

At some point, Mitchell "began having problems" with Mongelli, and so he decided to use the library in the morning instead of the afternoon. (Am. Complaint ¶ 11) After roughly a year of this, Mongelli began to verbally harass Mitchell. (Am. Complaint ¶ 11) On one occasion, Mongelli examined the legal documents that Mitchell intended to file and made disparaging comments about his chances of success. (Am. Complaint ¶ 11) On other occasions, Mongelli would cut off the use of the photocopier just before Mitchell's turn. (Am. Complaint ¶¶ 11, 12) Furthermore, Mongelli would question Mitchell's presence in certain areas of the library and would force him to leave those areas. (Am. Complaint ¶ 12) Mongelli would tell Mitchell to "shut-up" or leave the library, often in front of other inmates. (Am. Complaint ¶ 15) Mongelli continually bothered Mitchell in this way. (Am. Complaint ¶ 13) One day in September 2003, Mongelli berated Mitchell for being in a corner of the library while he was attempting to find a law book. (Am. Complaint ¶ 19) Mongelli forced Mitchell to leave that area of the library and would not allow him to get the book. (Am. Complaint ¶ 19)

---

[1] The plaintiff later filed an amended complaint (P#7) on September 29, 2004.

3

Mitchell felt a great deal of stress and embarrassment as a result of Mongelli's conduct, and he would sometimes leave the library as a result. (Am. Complaint ¶¶ 15, 16) On some days Mitchell would not attend the library because he was worried about what mood Mongelli was in. (Am. Complaint ¶ 15) Mitchell did not talk to other inmates or enter certain parts of the library for fear of harassment. (Am. Complaint ¶¶ 17, 18) Mitchell claims that his fear of Mongelli hampered his legal research, and he was only able to complete a petition for habeas corpus with the help of other inmates. (Am. Complaint ¶¶ 20, 21)

On or around January 14, 2004, Mitchell was discussing the law with another inmate when Mongelli forced them to stop their conversation. (Am. Complaint ¶ 22) Mitchell felt intimidated by Mongelli and cut his research short. (Am. Complaint ¶¶ 23, 24) The next day, Mitchell was having a conversation with a library clerk when Mongelli called Mitchell into his office and berated him for talking to the clerk. (Am. Complaint ¶¶ 25, 27) Mongelli told the clerk in question that he should not speak to Mitchell. (Am. Complaint ¶ 27) Before leaving the library, Mongelli stopped Mitchell and discussed the incident with the officer-in-charge ("OIC"). (Am. Complaint ¶ 28) Mitchell apologized and said that his conduct would not happen again. (Am. Complaint ¶ 28) Mongelli stated that he was going to write an incident report about Mitchell. (Am. Complaint ¶ 28) Mitchell has not received a

4

disciplinary report for any infraction of prison law library rules in the past fourteen years. (Am. Complaint ¶ 35)

After this incident, Mitchell no longer attended the law library during hours when Mongelli was on duty. (Am. Complaint ¶¶ 28, 30) Because Mitchell was limited to using the law library on Saturday and Sunday mornings, he no longer had access to the photocopying machine or to legal supplies. (Am. Complaint ¶ 30) Mitchell filed a grievance regarding Mongelli's actions on January 22, 2004. (Am. Complaint ¶ 33) This grievance referenced the January incident involving Mitchell, Mongelli, and the OIC officer. (Am. Complaint, Exhibit A)

The Grievance Officer denied the grievance on March 18, 2004, stating that the law librarian had a right to intercede when inmate conversations became lengthy. (Am. Complaint ¶ 33) Mitchell twice appealed this decision pursuant to 103 Code Mass. Regs. § 491.21. (Am. Complaint ¶ 34) The prison superintendent denied Mitchell's appeals on April 6, 2004, stating that Mongelli had a duty to maintain order so as to ensure a good study environment in the library. (Am. Complaint ¶ 36) Mitchell appealed this on May 1, 2004 to the Department Grievance Coordinator pursuant to 103 Code Mass. Regs. § 491.13. (Am. Complaint ¶ 37) The Grievance Coordinator conducted an investigation, interviewed witnesses, and denied Mitchell's appeal, stating that inmates in the law library must conduct themselves in accordance with institutional regulations. (Am. Complaint ¶¶ 39-40, Exhibit G)

5

Mitchell now seeks compensatory damages, punitive damages, and injunctive relief alleging that the retaliation and harassment by Mongelli has impaired his access to the courts under the Fourteenth Amendment and his rights to free speech and free association under the First Amendment. (Am. Complaint ¶¶ 42-59) Mitchell brings this claim as a violation of civil rights under 42 U.S.C. § 1983. (Am. Complaint ¶¶ 60-61)

ARGUMENT

Standard of Review

Under Fed. R. Civ. P. 12(c), the court must accept all of the non-movant's well-pleaded factual averments as true and draw all reasonable inferences in his favor. Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991). Judgment may not be entered on the pleadings unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id.

A claim under 42 U.S.C. § 1983 has two essential elements: (1) the challenged conduct is attributable to a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981); Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). The first element is undisputed in that Mongelli was the prison librarian acting under color of law at the time in question.

6

1. <u>The Plaintiff Fails to State a Claim Regarding his Access to the Courts.</u>

In <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977), the United States Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The parameters of this right were more clearly defined in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996). In order to prevail on an "access to court" claim, <u>Lewis</u> held that a prisoner must demonstrate some "actual injury" in the sense that the shortcomings in the prison law library or legal assistance program have hindered his efforts to pursue a nonfrivolous legal claim. <u>Lewis</u>, 518 U.S. at 351-353. The plaintiff meets this burden by showing that "an actionable claim ... which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided." <u>Id.</u> at 356.

Prisoners are not entitled to access to court which is state-of-the-art. Access need only be "adequate, effective, and meaningful." <u>Bounds</u>, 430 U.S. at 822; <u>Blake v. Berman,</u> 625 F.Supp. 1523, 1525 (D. Mass. 1986). The constitutional standard is satisfied when an inmate has the ability "to prepare a petition or complaint," <u>Carter v. Fair</u>, 786 F.2d 433, 435 (1st Cir. 1986), and "to participate meaningfully in the legal process." <u>Sowell v. Vose</u>,

941 F.2d 32, 34 (1st Cir. 1991).

Mitchell's claim is deficient because he does not allege that Mongelli's actions caused him to suffer an "actual injury." The pleadings fail to explain how, if at all, Mitchell was prejudiced by Mongelli's conduct. Without this showing, the claim lacks an essential element. Lewis, 518 U.S. at 349; Sowell, 941 F.2d at 35.

Mitchell concedes that he was able to file a timely petition for habeas corpus in federal court. (Am. Complaint, ¶¶ 20-21)[2]. This Court may take judicial notice of the docket entries in that case. The docket reflects that Mitchell filed his petition on April 26, 2004. He has had access to the court throughout that case, including as recently as June 21, 2005 when he submitted a letter/request (P#9). This activity demonstrates that Mitchell has been able to "participate meaningfully in the legal process." *See* Sowell, 941 F.2d at 34.

Mitchell does not allege that Mongelli barred him from the library. Mitchell states that he voluntarily chose not to attend the library, except on weekends, in order to avoid interaction with Mongelli. (Am. Complaint, ¶ 30) It is also instructive that Mitchell does not allege that Mongelli impeded his litigation in the instant case. Indeed, he was able to file a 23-page typewritten complaint and a 24-page amended complaint, together with numerous exhibits and motions. *See* McDonald v. Hall, 610 F.2d 16, 19 (1st

---

[2] A copy of the docket sheet from that case, William Mitchell v. Luis Spencer, USDC (Mass.) No. 04-cv-10844-MLW, is attached as Exhibit 1.

7

8

Cir. 1979) (*pro se* inmate appeared to have adequate access to law library where his brief "clearly seems to be the product of more than minimum competence.")

2. <u>The Plaintiff Fails to State a Claim Regarding his Rights to Freedom of Speech and Association.</u>

Mitchell complains that Mongelli told him to be quiet and prohibited him from speaking with the inmate law clerks in the library. The complaint exhibits Mitchell's lack of understanding that a library is generally regarded as a place of quiet. Analyzing the claim under the First Amendment, the policy easily meets the <u>Turner</u> standard under which it must be upheld "if it is reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).

Obviously, loud and disruptive behavior in the library interferes with the ability of other inmates to read, work and study the law. To that end, enforcement of the rule against such behavior ensures that all inmates enjoy the right of access to the courts. <u>Graham v. Cattell</u>, 2005 U.S. Dist. LEXIS 528 (D.N.H. 2005).[3] In <u>Graham</u>, the court upheld a strict "no talking" policy between inmates while in the law library. *Slip op.* at *13-15. The court noted that prison officials may reasonably regulate the manner in which library facilities are used, and held that the "no talking" policy was a reasonable restriction. <u>Id.</u>

Similarly, Mitchell has no constitutional right to receive

9

legal assistance from the inmate law clerks. *See* <u>Shaw v. Murphy</u>, 532 U.S. 223, 231 n.3 (2001) (no special First Amendment right to provide or receive legal advice from other prisoners).

3. <u>The Plaintiff Fails to State a Claim for Emotional Distress Allegedly Caused by Mongelli's Derisive Language.</u>

Mitchell fails to state a federal civil rights claim with respect to his allegation that Mongelli subjected him to insults and derision. *See* <u>Pittsley v. Warish</u>, 927 F.2d 3, 7 (1st Cir. 1991) ("emotional injury which results solely from verbal harassment…is generally not sufficient to constitute an invasion of an identified liberty interest"); <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1310 n.11 (10th Cir. 1998) (verbal harassment alone is insufficient to state a claim under the 8th Amendment); <u>Shabazz v. Cole</u>, 69 F.Supp.2d 177, 201 (D.Mass. 1999) (verbal threats and abuse do not violate an inmate's constitutional rights); <u>Brown v. Croce</u>, 967 F.Supp. 101, 104 (S.D.N.Y. 1997); <u>Fernandez v. Rapone</u>, 926 F.Supp. 255, 263 (D.Mass. 1996) (no constitutional violation resulted from occasional degrading remarks by correction officers during strip searches); <u>Arruda v. Fair</u>, 547 F.Supp. 1324, 1334 (D.Mass. 1982)(verbal taunts of officers did not render search policy unreasonable).

---

[3] A copy of the <u>Graham</u> decision is being provided to the plaintiff because he does not have access to LEXIS.

10

To the extent that Mitchell claims that Mongelli's actions embarrassed him, his allegations fail to rise to the level of a civil rights claim. While not to be condoned, even if Mongelli spoke rudely towards Mitchell on the several occasions alleged in the complaint, no constitutional violation ensued. <u>Fernandez</u>, 926 F.Supp. at 263. Mitchell's allegations simply do not state a triable § 1983 claim against Mongelli.

Moreover, under the Prison Litigation Reform Act (PLRA), enacted in 1995, a prisoner must allege some physical injury in order to pursue an emotional distress claim. The relevant statute, 42 U.S.C. § 1997e(e), states:

> No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

*Contrast*, <u>Shaheed-Muhammad v. DiPaolo</u>, 138 F.Supp.2d 99, 106-108 (D.Mass. 2001) (no showing of physical injury required for claimed violation of abstract rights, e.g., free exercise of religion, equal protection, and due process).

4. <u>The Plaintiff Fails to State Either a Procedural or Substantive Due Process Claim.</u>

For procedural due process to apply, there must be a protected liberty interest at stake, i.e., some "atypical and significant hardship ... in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995). Mitchell does not allege that Mongelli disciplined him for any of the incidents

11

alleged in the pleadings. In fact, Mitchell admits that he "never received a disciplinary report (Ticket) for any infraction while in the law library for the past 14 years, nothing has changed." (Am. Complaint, ¶ 35) Even the incident of January 15, 2004, following which Mitchell apologized to Mongelli for his behavior (Am. Complaint, ¶ 28) did not result in disciplinary action. Mitchell's right to procedural due process was not triggered because no liberty interest was implicated.

To the extent that Mitchell claims a substantive due process violation, he must show either that (1) a specific liberty or property interest protected by the 14th Amendment has been violated, or (2) the state's conduct "shocks the conscience." Brown v. Hot, Sexy and Safer Productions, Inc., 68 F.3d 525, 531 (1st Cir. 1995), cert. denied, 116 S.Ct. 1044 (1996); Fernandez v. Rapone, 926 F.Supp. 255, 262 (D.Mass. 1996). With regard to the latter standard, substantive due process is violated when state action is "egregiously unacceptable, outrageous, or conscience-shocking." Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990), cert. denied, 498 U.S. 1041 (1991); Santiago de Castro v. Morales Medina, 943 F.2d 129, 131 (1st Cir. 1991). "Offensive conduct is not conscience-shocking, however, in a substantive due process sense, merely because it trespasses on 'some fastidious squeamishness or private sentimentalism.'" Id., 943 F.2d at 131-132, quoting Rochin v. California, 342 U.S. 165, 172 (1952). The threshold for alleging a substantive due process claim is high. Brown, 68 F.3d at 532;

12

Fernandez, 926 F.Supp. at 263. Mitchell's allegations fail to meet this demanding standard.

## CONCLUSION

This Court should grant judgment on the pleadings in favor of the defendant, William D. Mongelli, and all counts of the amended complaint should be dismissed.

                                          Respectfully submitted,

                                          NANCY ANKERS WHITE
                                          Special Assistant Attorney General

Date: July 6, 2005          __/s/ DAVID J. RENTSCH_____
                                     David J. Rentsch, Counsel
                                     Legal Division
                                     Department of Correction
                                     70 Franklin Street, Suite 600
                                     Boston, MA  02110-1300
                                     (617) 727-3300, ext. 142
                                     BBO #544926