UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                          )
WILLIAM R. MITCHELL,      )
      Plaintiff,          )
                          )
                          )
      -v-                 )         CIVIL ACTION
                          )         NO. 04-11504-RCL
                          )
WILLIAM D. MONGELLI,      )
      Defendant.          )
                          )
```

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED.R.CIV.P. 12(c)

NOW COMES Plaintiff William R. Mitchell in the above-entitled matter, and he does hereby respectfully offer Plaintiff's opposition to Defendant's Motion For Judgment on the Pleadings. In support hereof, Plaintiff submits the following.

### PRIOR PROCEEDINGS

Plaintiff adopts here the prior proceedings of the present case as outlined in Defendant's memorandum of law at page One, and Plaintiff's Amended Complaint at paragraphs 1-41. Plaintiff incorporates the same herein by reference.

### STATEMENT OF FACTS

Again, Plaintiff fully incorporates here by reference the Statement of Facts contained in Defendant's memorandum of law at pages One through Five, and

-2-

Plaintiff's Amended Complaint at paragraphs 1-41.

Plaintiff further incorporates here by reference the Defendant's answers to Plaintiff's Amended Complaint. In addition, Plaintiff wishes to clarify what appears to be misstatements of facts and a mischaracterization of Plaintiff's claims.

Defendant alleges in short, that Plaintiff fails to state a claim regarding Plaintiff's Rights to Freedom of Speech and Association. (Deft's Mem. at 8). Defendant further alleges that in Plaintiff's Amended Complaint, Plaintiff complained that Defendant told Plaintiff to be quiet and prohibited Plaintiff from speaking with the inmate law clerk in the library. (Amended Comp. ¶25).

Defendant also claims that Plaintiff does not understand that a library, is generally regarded as a place of quiet and that analyzing Plaintiff's claims under the First Amendment, the policy easily meets the Tuner standard as it relates to a legitimate penological interest in security.

Plaintiff clarifies the facts stated herein by Defendant and characterizes Plaintiff's claims accordingly.

-3-

First, Defendant told Plaintiff to "shut-up" on two occasions, not "be quiet." (Amended Comp. ¶¶13,25). On one of these occasions, Defendant came out of his office and just said, "shut-up" or get out of the library. (Id. at ¶13). Defendant admits that he spoke with Plaintiff on occasion and sometimes Defendant had to tell Plaintiff to be quiet while in the library, but Defendant denies any pattern or practice of arbitrarily denying Plaintiff access to the library.
(Deft's Answers at 8, ¶13). (Deft's Mem. at 2-3,8-10).

On the second occasion, on January 15, 2004, while Plaintiff was waiting for movement, Plaintiff engaged in a conversation with the law clerk. Defendant stuck his head out of his office door and yelled at Plaintiff to "shut-up," not be quiet. Defendant said that he was not going to listen to Plaintiff everyday. Plaintiff informed Defendant that Plaintiff had a right to free speech, and Defendant became hostile.
(Amended Comp. ¶25). (Deft's Answers at 4). Defendant admits that some prisoners are hired and trained as law clerks to assist other prisoners with legal research.

Defendant further admits that he has on occasion called certain prisoners, including Plaintiff, into his office to speak with them about inappropriate behavior in the library, but Defendant denies that he has

knowledge or information sufficient to admit or deny
the remaining averments contained in paragraph 25.

Defendant claims here that prohibiting Plaintiff
from talking to his law clerks is a result of a law
library policy and that talking is prohibited.
(Deft's Mem. at 8-9).  But Plaintiff is not challenging
a "no talking" policy in Plaintiff's Complaint.
(See COUNTS I,II,III).  Besides, there are no
"no talking" policies at MCI-Norfolk.  Although
Defendant has a duty to uphold law and order in the
library, there are no policies that prohibits Plaintiff
from talking or associating with another inmate.

But yet, Defendant argues that there is such a
"no talking" policy at MCI-Norfolk. Deft's Mem. at 8-9).
Furthermore, Defendant never mentions a "no talking"
policy in his answers. (Deft's Answers at 1-7).
(See 103 CMR 478.10 through 478.12)(See also Library
Service Procedural Statement, 103 CMR 478.00, VII(A-F).
Nor does Defendant mention this policy during Plaintiff's
grievance procedures. (Amended Comp. ¶33, Exhibit B).
Defendant informed the grievance coordinator that
although the librarian spoke to Plaintiff, he
understands that inmates may converse with other
inmates (clerks) while in the law library to continue
their law research.  However, an extended conversation
may require him to intervene as to why this
conversation must be conducted.

Plaintiff appealed this decision to the
Superintendent, claiming that there are "no time limits"
on free speech, until or unless Plaintiff is violating
one of the Institutional Rule or Regulations or
policies. (Amended Comp. ¶35). The Superintendent
denied Plaintiff's grievance, only citing that the
Defendant has a duty to uphold law and order in the
library. (Amended Comp. ¶36, Exhibit D).

Defendant is simply trying to make this Court
think that Plaintiff is a "loud and disruptive" and a
"trouble making" prisoner, but Plaintiff never received
a disciplinary report (ticket) for the last 14 years,
and Defendant never wrote an incident report for a
prison or library infraction. (Amended Comp. ¶28,
footnotes 2-3).

In Defendant's answers at ¶28, he denies that he
wrote any such incident report pertaining to the
January 15, 2004, incident. But Defendant told
Plaintiff that he was going to write a report.
Defendant does not argue this point in his motion for
judgment on the pleadings. (Deft's Mem. at 8-9).
Defendant further suggests that Plaintiff does not have
a constitutional right to receive legal assistance
from the inmate law clerk. (Deft's Mem. at 9).

Plaintiff states that there is one thing wrong
with Defendant's claim, and that is, Plaintiff never
claimed he had a constitutional right to receive legal
advice from Defendant's law clerks, nor did
Plaintiff make this claim in any COUNT.

Plaintiff simply stated in his Amended Complaint
¶25 that, "[p]laintiff then informed the librarian
that all he was doing was talking to the law clerk
about certain case law and how the whether was outside."
There is nothing in the statement that even remotely
reflects that Plaintiff claimed that he had a
constitutional right to legal assistance from law clerks
or advice for that matter.  But Plaintiff did state
to Defendant and in Plaintiff's Amended Complaint ¶25,
that "Plaintiff said to the librarian that he had a
right to "free speech." (See COUNTS I,II,III).  Besides,
Plaintiff does his own research and he does not need
assistance from other inmates. (Deft's Mem. at 9).

Additionally, there is nothing in Defendant's
answers that addresses this accusation.
(Deft's Answers at 1-7).  Plaintiff also made a claim
of his right to association. (See COUNT V).

In Defendant's second claim, Defendant states that
Plaintiff fails to state a federal civil rights claim

-7-

for emotional distress allegedly caused by Defendant's derisive language. (Deft's Mem. at 9).

Plaintiff states that Defendant's pattern of harassment and verbal abuse goes to Plaintiff's state of mind, and, in fact, Defendant's actions causes a chilling effect on Plaintiff's speech, and Plaintiff's rights to associate with other inmates. A claim that Defendant conveniently failed to mention in his motion.

It is simple elementary that harassing a person for exercising the First Amendment violates the constitution. There are other instances where Defendant abused Plaintiff mentally and emotionally, on numerous occasions, Defendant denied Plaintiff access to legal books and/or reading materials. (Amended Comp. ¶¶19,20). On this particular day, Defendant informed Plaintiff to "get out of the corner," of the library. (Amended Comp. ¶¶19,20). Plaintiff informed Defendant that he was obtaining a "United States Supreme Court Reporter" for Plaintiff's research. Defendant said, "no your not, ... get out of the corner like I said." (Amended Comp. ¶19).

Defendant admits in his answers that prisoners are not permitted to congregate in corners of the library where their actions cannot be monitored, and

that sometimes Defendant must tell them to move.  But
Defendant denies the remaining averments in Plaintiff's
Amended Complaint.  Defendant denies any other averments
in paragraph 20. (Deft's Answer at 3).

For the record, Plaintiff was not congregating in
the corners of the library, but only obtaining a legal
book for Plaintiff's research.  Besides, the corners
of the library are not out-of-bounds, and if they were,
then Defendant should move the legal books to another
area of the library.

On another occasion, Defendant, while Plaintiff
was researching with another inmate (friend), Defendant
went over to where Plaintiff was standing and said,
move your books to another table.  Defendant then stated
that, "are you going to keep talking or are you going to
research." (Amended Comp. ¶¶22,23).  Plaintiff informed
Defendant "that is exactly what I am doing."  Defendant
did not care and ordered Plaintiff to move.
Plaintiff put the legal books back on the shelf and
Plaintiff left the library with his friend.
(Amended Comp. ¶24).

Defendant further harassed Plaintiff during the
copying hour.  No matter where Plaintiff was in the
copy line, Defendant would come out of his office and
say, "no more copies from here down." (Amended Comp. ¶12).
But Defendant denies this claim in his answers at page
3.

Plaintiff makes out a claim for emotional distress
for Defendant's calculated and consistent harassment
under §1983 for Plaintiff exercising his
constitutionally protected rights to free speech and
association.  Plaintiff understands that "sticks and
stones may break his bones, but names will never hurt
him."  But in Plaintiff's case, it goes deeper than
just name calling.  For instance, Defendant threw
Plaintiff out of the library during non-movement hours
because Defendant did not want to hear Plaintiff's
voice. (Amended Comp. ¶31).  Plaintiff makes out a
claim of harassment. (See COUNT IX).  Defendant never
brings up these points in his motion for judgment on
the pleadings. (Deft's Mem. at 9-10).

Plaintiff states a claim for relief for emotional
distress and interfering with Plaintiff's
constitutionally protected rights to free speech and
association, and therefore, actionable under §1983.

The injury is simple, violating Plaintiff's
constitutional rights for no apparent reason, and where
there are no legitimate penological interest to
security in interfering with these rights, the injury,
in, and of itself, is actionable and need not be great.

Finally, Defendant wants this Court to believe that Plaintiff is a disciplinary problem, a trouble maker if you will. Defendant claims that Plaintiff is "loud and disruptive" in the library and that Plaintiff interferes with the ability of other inmates to read, work and study the law. This is funny because that is exactly what Plaintiff does when Plaintiff is in the library. But yet, Defendant never issued a disciplinary ticket for being "loud and disruptive" or for violating any other rule, regulation and/or policy. (Deft's Mem. at 8). Defendant also wants to buffalo the Court into thinking that after 14 years without a disciplinary report, then somehow Plaintiff is a disciplinary problem, but only in the library and nowhere else in the Institution. Plaintiff's record speaks for itself.

Besides, if the Defendant wanted to give Plaintiff a disciplinary ticket for being disruptive, he could have easily done this. There are 33 code of offenses under the Department of Correction Regulations, 103 CMR 430.24(1)-(33), including, but not limited to, code of offense number 19. "Use of obscene, abusive or threatening language, action, or gesture to any inmate, staff member, or visit." Code of offense number 32. "Violating any law of the Commonwealth of Massachusetts

or the United States." But there are simply no
policies that prohibit individual inmates from talking
in the library.

As a practical matter, Defendant claims that just
because he did not write Plaintiff a ticket, there was
somehow no procedural due process or substantive due
process violation, and therefore, Plaintiff fails to
state a claim.

Plaintiff simple states that just because
Defendant never wrote a disciplinary report or made
out an incident report on the day in question, it does
not mean that Defendant did not or is not violating
Plaintiff's rights. (Deft's Mem. at 10-12).

Defendant further suggests that because Plaintiff
apologized to him and the correctional officer he was
standing with, reflects Plaintiff's guilt of bad
behavior. Plaintiff states that Plaintiff had no other
choice but to apologize because Plaintiff was put in a
compromising position standing in front of a
correctional officer and Defendant. Plaintiff is a
prisoner, Defendant is employed by the Department of
correction, therefore, Plaintiff was afraid that he
would, in fact, receive a disciplinary report if
Plaintiff did not apologize to Defendant for something
Plaintiff believes that Plaintiff did not do.
(Amended Comp. ¶¶28-29).

Plaintiff believes that Plaintiff's speech was chilled by the actions taken by Defendant and Plaintiff believed that Defendant was going to write a incident report, and Defendant accomplished what he was set out to do and that was to eliminate Plaintiff from the law library once and for all. Plaintiff has not been in the library with Defendant present, since the incident. (Amended Comp. ¶¶29-30). Although Defendant claims that he did not bar Plaintiff from the library, it is obvious what happen in this case. Plaintiff never made out a claim that Plaintiff was denied access to the library, only access to the courts. (See COUNTS VII,VIII).

Defendant never brings up the retaliation claim and the Prior Restraints claim. (See COUNTS V.VI). (See also ante at 6-9 & ante at 7-8,9-11). (Amended Comp. ¶28).

After the incident on January 15, 2004, while Plaintiff was exiting the library at the 10:30 a.m. movement, Plaintiff proceeded to pick-up Plaintiff's I.D card so Plaintiff could return to the Unit. The Defendant called Plaintiff back to the exit door of the library where Defendant was standing next to the officer in charge. Defendant then said to this officer that he wanted the officer to hear what just happened between Plaintiff and the Defendant. Defendant then started to make an incident right there at the doorway. Plaintiff just stood there and listened to

-13-

what the Defendant was saying in front of the officer.
Plaintiff believed that Defendant was trying to get
Plaintiff "pinched" for an infraction.  The officer asked
Plaintiff if it was true and what did he want Plaintiff
to do.  Plaintiff said that Plaintiff was sorry and that
it would not happen again.  The officer then asked
DEfendant what he wanted to do about the situation and
Defendant said that he would probably write up an
incident report.  Plaintiff then left the building and
returned to the Unit.  To make sure this situation never
happened again, Plaintiff never returned to the law
library again when Defendant was there.
(Amended Comp. ¶28).

Plaintiff states that bringing Plaintiff to the
officer in charge for chastising was in retaliation for
informing Defendant that Plaintiff had a right to
free speech, and as a result of Defendant's actions,
caused Plaintiff to be stifled, thereby, depriving
Plaintiff of Plaintiff's constitutionally protected
rights to free speech and association.
(Amended Comp. ¶¶29-30).

Plaintiff states a claim for retaliation and it can
be actionable under §1983, for civil rights violations.

### ARGUMENT

## I.   THE COMPLAINT IS LEGALLY AND FACTUALLY SUFFICIENT TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### a. Standard Of Review

"Under Fed.R.Civ.P. 12(c), the court must accept all of the non-movant's well-pleaded factaul averments as true and draw all reasonable inferences in his favor. Santiago de Castro v. Morales-Medina, 943 F.2d 129, 130 (1st Cir. 1991). Judgment may not be entered on the pleadings unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id.   See Conley v. Gibson, 335 U.S. 41, 45-46 (1975).

A claim under 42 U.S.C. §1983 has two essential elements: (1) the challenged conduct is attributable to a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981); Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). The first question is undisputed in that Defendant was the prison librarian acting under color of state law at the time in question.

## b. Plaintiff States A Claim Regarding Plaintiff's Rights To Freedom Of Speech And Association

The Supreme Court in Pell v. Procunier, 417 U.S. 817, 822 (1974), recognized that prisoners retain certain First Amendment rights of free speech.  Thus, "[i]n the First Amendment context a corollary of this principle [that lawful incarceration brings about limitations on privileges and rights] is that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correction system." Hudson v. Palmer, 468 U.S. 517, 523 (1984), quoting Pell, 417 U.S. at 822 and Hancock v. Thalacker, 933 F.Supp. 1449, 1474 (N.D.Iowa 1996). See Leonard v. Nix, 55 F.3d 370, 374 (8th Cir. 1995).

In addition, "[t]he fact that the speech occurs inside the prison walls means that prison authorities may, in appropriate circumstances, regulate the speech, but does not take it outside the reach of the First Amendment altogether." Murphy v. Shaw, 195 F.3d 1121, 1125 (9th Cir. 1999).  But the "impingement of those rights must only meet the lesser standard of Turner v. Safley, 482 U.S. 78, 89 (1987).

In this case, Plaintiff has been researching criminal and civil law for the past 14 years. Most recently, Plaintiff filed a petition for habeas corpus, and 4 civil action, including, but not limited to, the case at hand. (Amended Comp. ¶¶8-10,19-20). Plaintiff has also filed 3 motions for a new trial within the past 14 years and Plaintiff has studie hard in order to regain  his freedom.

Plaintiff eventually started working with other inmates and friends. Plaintiff became friendly with the law clerks over the years and Plaintiff has sparked up several conversations with them, regardless if the conversations were about the law. (Amended Comp. ¶22).

As time went on, Plaintiff went to the law library everyday, until Defendant started interfering with Plaintiff's research. On several occasions, Defendant right out told Plaintiff to either "shut-up" or sit down or leave the library because Defendant was sick of listening to Plaintiff's voice. (Amended Comp. ¶¶13,25). Plaintiff argues that the DEfendant never once said, "be quiet," it was just "shut-up." On these occasions Plaintiff was researching his criminal and civil cases, besides, helping a friend and elaborating on the law, when Defendant told Plaintiff to shut-up or get out of the library.

On January 15, 2004, the day in question,
Plaintiff was in the law library waiting for the 10:30
a.m. movement, when Plaintiff and the law clerk struck
up a conversation about different case law, when
DEfendant stuck his head out of his office door and
yelled at Plaintiff to "shut-up." Defendant said that
he was not going to listen to Plaintiff everyday.
Plaintiff informed Defendant that Plaintiff had a right
to free speech, Defendant became hostile. Defendant
then called Plaintiff into his office and slammed the
door and started yelling at Plaintiff like Plaintiff
was a little kid.  Plaintiff informed Defendant that
all Plaintiff was doing was talking to the law clerk
about certain case law.  Defendant said that he did
not care and that Plaintiff will not talk in the
library or talk to his law clerks.

(Amended Comp. ¶¶25-26).

Defendant argues in his motion for judgment on
the pleadings that there is a "no talking" policy in
the Norfolk State Prison library and that Defendant
was well within his rights to enforce the policy and
tell Plaintiff to be quiet, therefore, Defendant's
actions, in light of the policy comports with the
Turner test. (Deft's Mem. at 8-9).

(Deft's Answers at 1-7).

Plaintiff begs to differ because there are no such policies in the MCI-Norfolk library. (See 103 CMR 478.10-478.12) and (Library Service Procedural Statement, 103 CMR 478.00, VII(A-F)). Furthermore, Defendant never mentioned this policy during the grievance process and therefore, raising this defense now can only be seen as subterfuge. (Amended Comp. ¶33, Exhibit B). Defendant informed the grievance coordinator that although the librarian spoke to Plaintiff, he understands that inmates may converse with other inmates (clerk) while in the law library to continue their law research. However, an extended conversation may require him to intervene as to why this conversation must be conducted.

Plaintiff argues that this statement goes to Defendant's knowledge that he might have violated Plaintiff's rights, and besides, the so-called conversation with the law clerk did not even last two minutes before Defendant stuck his head out of his office and said "shut-up." Moreover, the record shows that there were no such "no talking" policies in the law library and the Defendant admitted that inmates may talk to the law clerks, but Defendant wants this Court to believe that, "all of a sudden", a "no talking" policy appeared out of thin air, and

that Defendant did not violate Plaintiff's First
Amendment rights to free speech and association.

For the sake of argument, if Defendant thought
that Plaintiff's conversation was to long or even
excessive, he should have said so, but instead,
Defendant just said, "shut-up" and that he did not
want to hear Plaintiff everyday.  Therefore,
Plaintiff argues that there were no legitimate
penological interest in security in the law library
or the Prison in telling Plaintiff to "shut-up"
everytime Plaintiff is in the library, especially
in light of the fact that movement was almost in
progress and Plaintiff's very short conversation with
Defendant's law clerks, could not have hurt anyone.

It appears that the only reason for Defendant's
actions towards Plaintiff was to impede, hamper,
thwart and chill Plaintiff's speech.
(See COUNTS I,II,III,V).

As an alternative argument, Defendant claims
that Plaintiff "has no constitutional right to receive
legal assistance from the inmate law clerks."  See
Shaw v. Murphy, 532 U.S. 223, 231 n.3 (2001) (no
special First Amendment right to provide or receive
legal advice from other prisoners).  But see Johnson
v. Avery, 393 U.S. 483, 488 (1969).

Plaintiff's argument is simple, he never claimed
that he had a constitutional right to receive legal
advice from Defendant's law clerk's, nor does Plaintiff
make this claim in any COUNT. Plaintiff stated in his
Amended Complaint, "[p]laintiff then informed the
librarian that all he was doing was talking to the law
clerk about certain case law and how the whether was
outside." Besides, Defendant, in his answers claimed
that "prisoners are hired and trained as law clerks to
assit other prisoners with legal research." (Deft's Mem.
at 25)(Amended Comp. ¶25). Plaintiff further argues
that although Plaintiff might not have a right to legal
advice from law clerks, Defendant has a program where law
clerks are entitled to assist other inmates with legal
research. So how can Plaintiff get help if he cannot
ask, even though Plaintiff did not ask the clerk for
legal advice. Defendant's argument is inconsistent with
his own program. Furthermore, there is nothing in
Plaintiff's statement to Defendant that remotely reflects
he made a claim that he had a constitutional right to
legal assistance from law clerks. Plaintiff said that he
had a right to "free speech." See Shaw v. Murphy, 532
U.S. 223, 232 (2001) (Decline to cloak the provisions of
legal assistance with any First Amendment protections
above and beyond the protection normally accorded
prisoners' speech").

Plaintiff states a claim upon which relief can be
granted.