c. Plaintiff States A Federal Civil Rights Claim For Mental And Emotional Distress Under §1983

In this case, Defendant argues that Plaintiff cannot recover for mental and emotional distress for correctional officers using verbal and abusive language toward inmates under §1983. Defendant also cites citations in support of his argument. (Deft's Mem at 9-10). Most of the cases Defendant relies on deal with the 8th Amendment, cruel and unusual punishment for verbal and abusive language to an inmate. But in the First Amendment setting the claim of mental and emotional distress takes on a different face.[1]

In Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999), the 6th Circuit held that, "First Amendment law is particularly context-driven. Not only does the Amendment protect a rather broad expanse of rights, but even within one category, such as speech, there are multiple levels of protection for different types of speech. Core political speech is most jealously guarded, commercial speech is subject to lesser protection, and obscene speech is left completely unprotected by the FIrst Amendment. Prisoners certainly do not have a greater free speech rights than public employees, but the First Amendment ...

---

[1] Plaintiff never made a claim for mental and/or emotional distress but Plaintiff will address this argument on the merits.

interest is of central importance to prisoners is their right to access to the court." Thaddeus, 175 F.3d at 388.

Although the courts have held under §1997e(e), that, "absent a showing of physical injury would bar a prisoner's recovery of compensatory damages for mental and emotional injury." See Calhoun v. Detelia, 319 F.3d 936, 940 (7th Cir. 2003). "But if that same prisoner alleges some other type of non-physical injury, the statute would not foreclose recovery, assuming that the damages sought were not for any mental or emotional injuries suffered." Id. See Robinson v. Page, 170 F.3d 747, 749 (7th Cir. 1999).

"This review is not novel. Indeed, in the context of First Amendment claims, [the Court has] held explicitly that prisoners need not allege a physical injury to recover damages because the deprivation of the constitutional right is itself a cognizable injury, regardless of any resulting mental or emotional injury." See Rowe v. Shake, 196 F.3d 778, 781-82 (7th Cir. 1999), see also Searles v. Van Bebber, 251 F.3d 869, 879-81 (10th Cir. 2001) (norminal and punitive damages for First Amendment violation not barred); Allah v. Al-Hafeez, 226 F.3d 247, 252 (3d Cir. 2000) (same); Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998) (any form of relief

for First Amendment violations available, if not for mental or emotional injury), quoting Calhoun v. Detelia, 319 F.3d 936, 940-941 (7th Cir. 2003).

Here, Plaintiff was consistently harassed in the library by Defendant for simply exercising Plaintiff's First Amendment rights to free speech, association and access to the courts. On numerous occasions, while Plaintiff was researching in the law library, Defendant would systematically verbally harass Plaintiff no matter what Plaintiff was doing or where Plaintiff was standing and/or sitting in the library or who Plaintiff was with.

One particular incident, Plaintiff was obtaining a legal book from one of the shelves in the corner part of the library. DEfendant came out of his office and informed Plaintiff to "get out of the corner" of the library. Plaintiff informed Defendant that "he was obtaining a "United States Supreme Court Reporter" for Plaintiff's research. Defendant immediately said, "no your not, ... get out of the corner like I said." (Amended Comp. ¶19). On another occasion, Defendant, while Plaintiff was researching with a friend (inmate), Defendant went over to where Plaintiff was standing and said, move your books to another table. Defendant then stated that, "are you going to keep talking or are you going to research." (Amended Comp. ¶¶22-23).

Plaintiff informed Defendant that is "exactly what I am doing." Defendant said that he did not care and ordered Plaintiff to move his legal books. Plaintiff put the legal books back on the shelf and left the library with a friend. (Amended Comp. ¶24).

Defendant further harassed Plaintiff during copy hour. No matter where Plaintiff was standing in the copy line, Defendant would come out of his office and say, "no more copies from here down." (Amended Comp. ¶12). It seemed like Defendant always cut off the copy line exactly where Plaintiff was standing. Plaintiff understands that "sticks and stones may break his bones, but names will never hurt him." But in Plaintiff's situation, it goes far beyond name calling.

For instance, Defendant threw Plaintiff out of the library during non-movement hours simply because Defendant did not want to hear Plaintiff's voice. (Amended Comp. ¶31). No matter what Plaintiff did in the library, Defendant would come over to where he was sitting and make some king of comment or that while going through the copy line when Plaintiff got a chance, Defendant would go through Plaintiff's paperwork and say things like, "What's this crap, your not going to get out of prison."

(Amended Comp. ¶11). Or, Defendant would say things like, "you'll never get out of jail," or "are you still here." (Amended Comp. ¶¶13,15). These statements are far more than just name calling, they go directly to what Plaintiff has been trying to do, and that is "get-out-of-prison." This type of harassment should not be tolerated or condoned just because Plaintiff is a prisoner and Defendant is an employee of the Department of Correction, especially coming from a so-called professional librarian.

Plaintiff understands that some correctional officers do make derogatory remarks to prisoners and that is part of prison life, although this has never personally happened to Plaintiff within the last 14 years, except only from the law librarian.

In this case, Defendant's calculated and consistent campaign of harassment against Plaintiff for simply exercising his constitutionally protected rights to free speech and association caused Plaintiff mental and emotional distress because "[t]he effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." See Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982). In Bart, the Court further held that, "an entire campaign of harassment

which thought trivial in detail may have been substantial in gross." Id. at 625.

Therefore, there are no legitimate reasons for the Defendant to keep telling Plaintiff that Plaintiff will never get out of prison, and then forbid Plaintiff from doing just that. Defendant's actions against Plaintiff are actionable under §1983, and under the provisions set forth in §1997e(e).

Plaintiff states a claim upon which relief can be granted.

d. Plaintiff States A Claim Of Retaliation For Exercising Plaintiff's Constitutionally Protected Rights

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two--that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). "While it may be that the [D]efendant[] ultimately will prevail on this claim upon a showing the [Defendant's] motives for [bringing Plaintiff "up-on-the-rug" with the ("OIC")

officer] was not retaliatory but based on a legitimate penological concern[]." Cf. Scarpa v. Ponte, 638 F.Supp. 1019, 1029 (D.Mass. 1986).

"The chronology of events set forth in ... [P]laintiff's complaint liberally construed, gives rise to a cognizable claim of retaliation based on the temporal proximity of the [Defendant's actions] to [the incident with Plaintiff and calling Plaintiff back to where Defendant was standing, only to be confronted with a correctional officer and informing Plaintiff that Defendant was going to write an incident report]," supports a claim of retaliation. See Shabazz v. Cole, 69 F.Supp.2d 177, 197-198 (D.Mass. 1999).[2]

Plaintiff argues that Plaintiff makes the first hurdle where Plaintiff was engaged in protected conduct. i.e. Free Speech, association and access to the courts.

On January 15, 2004, the day in question, Plaintiff was having a casual conversation with Defendant's law clerk while waiting for the 10:30 a.m. movement, when Defendant stuck his head out of his office door and said, "shut-up." Plaintiff informed

---

2 See, e.g., Murphy v. Cruz, 52 Mass.App.Ct. 314, 317-318; 753 N.E.2d 150, 152-153 (2001).

Defendant that Plaintiff had a right to free speech. Defendant became hostile and informed Plaintiff that Plaintiff cannot talk in the library or to his law clerks. (Amended Comp. ¶¶25-27). (See COUNTS I,II,III).

Plaintiff further meets the second element that adverse action was taken against Plaintiff for exercising Plaintiff's First Amendment rights to free speech and association. Shortly after the incident with Defendant on January 15, 2004, and upon leaving the law library at the 10:30 a.m. movement, Plaintiff proceeded to pick-up Plaintiff's ID card, when Defendant called Plaintiff back to the exist door of the library where Defendant was standing with the ("OIC") officer. Defendant then said to this officer that he wanted him to hear what just happened between Plaintiff and Defendant. Defendant made an incident right then and there. At this particular moment Plaintiff firmly believed that Defendant was trying to get Plaintiff "pinched" for an infraction or in other words, have Plaintiff written up for a disciplinary report. The ("OIC") officer asked Plaintiff what just happened, was it true, and what did Plaintiff want him to do. Plaintiff immediately apologized to Defendant and the ("OIC") officer and

that it would not happen again. The ("OIC") officer asked Defendant what he wanted to do about the situation and Defendant said that he would probably write up an incident report. Plaintiff returned to the Unit. (Amended Comp. ¶¶28-29 & n.2-3). (See COUNT VI).

Plaintiff believed that Defendant had written an incident report like he said he would, and Plaintiff had no reason to disbelieve Defendant. Defendant is an individual in a position of power, he is an employee of the Department of Correction and Plaintiff is only a prisoner. Moreover, Plaintiff did not know that Defendant never filed an incident report until after Defendant filed his answers with the Court. A full 5 and 1 half months since the incident. (Deft's Mem. at 28).

Plaintiff meets the third and final element of a causal connection between element one, and two, where Defendant's actions in bringing Plaintiff "up-on-the-rug" with the ("OIC") officer was, in fact, motivated by Plaintiff's protected conduct. Plaintiff was simply having a casual conversation with one of Defendant's law clerks, and when Defendant informed Plaintiff to "shut-up" and that Plaintiff

cannot talk to his law clerks, Plaintiff informed Defendant that Plaintiff had a right to free speech. The Defendant became hostile and brought Plaintiff to the ("OIC") officer for chastising.
(Amended Comp. ¶¶28-29).

Plaintiff states a claim upon which relief can be granted.

e. <u>Plaintiff States A Claim For Prior Restraints</u>

"To maintain a cause of action for a violation of the First Amendment, a plaintiff 'must allege that his speech was in fact chilled or intimidated.'" <u>Sullivan</u> v. <u>Carrick</u>, 888 F.2d 1, 4 (1st Cir. 1989), quoting <u>Abany</u> v. <u>Fridovich</u>, 862 F.Supp. 615, 621 (D.Mass. 1994). "The chilling effect must not be merely 'indirect, speculative, or too remote.'" <u>Id</u>. at 4. (holding that "[plaintiff's] mere allegations that he was harmed does not amount to satisfying the causation requirement of a Section 1983 action"), citing <u>United States</u> v. <u>Harris</u>, 347 U.S. 612, 626 (1954).

In this case, on January 15, 2004, upon Plaintiff leaving the library, Defendant called Plaintiff back to where he was standing with a correctional officer. Defendant tried to cause a further incident

in front of this officer. The ("OIC") officer asked Plaintiff what he wanted to do, and Plaintiff apologized to Defendant. The ("OIC") officer asked Defendant what he wanted to do and Defendant said that he would probably write up an incident report. Plaintiff then left the library and returned to the Unit.

Plaintiff argues that bringing Plaintiff "up-on-the-rug" with the ("OIC") officer and then claiming to write an incident report chilled Plaintiff's speech and that it intimidated Plaintiff to the point where Plaintiff never returned to the library while Defendant was present. (Amended Comp. ¶¶28-30). Although Plaintiff did not receive a disciplinary report (ticket), Defendant still claimed that he was going to write up an incident report as to what transpired in the library, but Plaintiff did not know this until Defendant filed his answers in court. (Deft's Answers at 28). (Deft's Mem. at 10-11).

The actions taken by Defendant can be seen as an adverse effect that "would deter a person of ordinary firmness from continuing to engage in that conduct." Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff also believed that if Plaintiff returned to the library for any reason, Defendant would surely give Plaintiff a disciplinary report for talking in the library just to justify his actions. Therefore, the adverse action taken by Defendant prevented Plaintiff from returning to the library when Defendant is present.

Plaintiff states a Claim upon which relief can be granted.

## CONCLUSION

It has been said in this Commonwealth that a Rule 12(c) or Rule 12(b)(6) are not even a blunt instrument and should seldom be the weapon of first choice. The Defendant's dispositive motion in this case is a classic example of why this is so. Notwithstanding Defendant's expressions of denial and credulousness as to ultimate proof. Plaintiff's Amended Complaint easily surmounts the "minimal hurdle" of the Defendant's motion for judgment on the pleadings.

Plaintiff respectfully suggest that the Defendant's dispositive motion should be DENIED.

Respectfully submitted
by the Plaintiff,

William R. Mitchell

William R. Mitchell, pro-se
P.O. Box 43
Norfolk, MA 02056

Dated: July 19, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM R. MITCHELL,
Plaintiff,

-V-

WILLIAM D. MONGELLI,
Defendant.

CIVIL ACTION
No. 04-11504-RCL

CERTIFICATE OF SERVICE

I, William R. Mitchell certifies that he has served upon the Defendant's attorney, David J. Rentsch, Legal Division, Department of Correction, 70 Franklin Street, Suite 600, Boston, Massachusetts 02110-1300, one true and accurate copy of Plaintiff's Motion For Leave To Exceed The Page Limit Pursuant To Local Rule 7.1(B)(4); Plaintiff's Opposition To Defendant's Motion For Judgment On The Pleadings Pursuant To Fed.R.Civ.P. 12(c), on this 19 day of July, 2005, by first class mail, postage prepaid.

Respectfully submitted
by the Plaintiff,

William R. Mitchell, pro-se
P.O. Box 43
Norfolk, MA 02056