UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

—————————————————————————
WILLIAM R. MITCHELL,                      )
               Plaintiff,        )
                      )
         v.                                )        CIVIL ACTION NO.
                      )        04-11504-RCL
WILLIAM D. MONGELLI,                      )
              Defendant.        )
—————————————————————————)

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS

     Before me is the defendant's motion for judgment on the pleadings pursuant to Federal

Rule of Civil Procedure 12(c). This is a civil rights action brought by the plaintiff, William R.

Mitchell ("Mitchell"), who is serving a life sentence at Massachusetts Correctional Institution,

Norfolk ("MCI-Norfolk"). The defendant, William D. Mongelli ("Mongelli"), is the librarian at

MCI-Norfolk. The plaintiff seeks compensatory and punitive damages and injunctive relief for

what he claims are violations of his constitutional rights to free speech and association, under the

First Amendment, and access to the courts, under the Fourteenth Amendment, and for what he

claims is retaliation for his exercise of these rights. The claims are brought pursuant to 42 U.S.C.

§ 1983. I have carefully considered the pleadings in this case, and for the reasons stated herein, I

GRANT in part and DENY in part the motion for judgment on the pleadings.

## I.  FACTS[1]

     The plaintiff was sentenced to life imprisonment on November 14, 1991. Over the past

fifteen years, he has spent a considerable amount of time in the MCI-Norfolk Law Library, where

---

[1]Because this is a motion for judgment on the pleadings, the court must accept as true all
of the well-pleaded facts in the plaintiff's complaint. *Rivera-Gomez v. de Castro,* 843 F.2d 631,
635 (1st Cir.1998). Therefore, all of the facts are drawn from the amended complaint and taken
as true for present purposes.

he prepared an appeal, several motions for a new trial, and a habeas corpus petition.  He alleges

that at a certain point, he "began having problems" with the defendant.  He claims that the

defendant engaged in a pattern of harassment and hostile behavior toward him over a period of

five years, including: commenting on the futility of his legal work; repeatedly cutting off access to

the copy machine immediately before the plaintiff's turn; repeatedly saying "I told you to shut up

or get out of the library"; and forcing the plaintiff to move his work to a different area of the

library. The plaintiff alleges that when he was attempting to obtain books from the shelves, the

defendant would ask "what are your doing over there?" and force him to return to his seat

without the book.  On one occasion, according to the plaintiff, the defendant threw the plaintiff

out of the library "because [the defendant] did not want to hear plaintiff's voice and . . . was not

in the mood."  The plaintiff states that the defendant's harassment often caused him stress, and

that he left the library early on several occasions.  The plaintiff claims that, although he filed his

habeas petition on time, his "ability to perform this task was hampered and hindered by the

defendant's remarks, interference, and the right out humiliation and harassment from the librarian.

This made the plaintiff's research more frustrating and unmanageable."

The situation escalated on January 14 and 15, 2004.  On or about January 14, 2004, the

plaintiff was discussing a legal matter with a fellow inmate, who had asked the plaintiff a question.

The defendant remarked to the plaintiff: "are you going to keep talking or are you going to

research?"  The plaintiff responded that he was researching and talking to his friend about the law.

The defendant became angry and told the plaintiff to "take your stuff and move somewhere else."

On or about January 15, 2004, the plaintiff asserts that he was talking to a law clerk about

his habeas petition.  The defendant "stuck his head out of his office and yelled at the plaintiff to

'shut-up' and that he was not going to listen to the plaintiff everyday." The plaintiff responded

that he had a right to free speech, and the defendant became angry and called the plaintiff into his

office, where he loudly reprimanded the plaintiff, telling him, among other things, that the plaintiff

should not talk in the law library. The plaintiff told the defendant that he was denying the plaintiff

access to the courts. After further discussion, the defendant ordered the plaintiff to leave the law

library. Furthermore, the defendant told the plaintiff not to speak to the law clerks, and told the

law clerk not to speak to the plaintiff.

Since January 15, 2004, the plaintiff has not returned to the law library at a time when the

defendant has been present. He only goes to the law library on Saturdays and Sunday mornings,

when the copy machine is not in operation and he cannot obtain any legal supplies. The plaintiff

has exhausted administrative remedies by filing a grievance and appealing its denial.

## II. DISCUSSION

When considering a motion for judgment on the pleadings, the court "must accept all of

the nonmovant's well-pleaded factual averments as true, and draw all reasonable inferences in his

favor." *Rivera-Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1998) (internal citations omitted).

The court should not grant the motion "unless it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief." *Rivera-Gomez*, 843 F.2d

at 635; *see also Pasdon v. City of Peabody,* 417 F.3d 225, 226 (1st Cir. 2005) (holding that

"[t]he standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the

same as that for deciding a Rule 12(b)(6) motion"). Additionally, because the plaintiff proceeds

pro se, the court should hold the amended complaint "to less stringent standards than pleadings

drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

In this case, the plaintiff has alleged direct violations of his rights to free speech, association, and access to the courts, as well as retaliation for his exercise of these rights. All of these claims are pursued under 42 U.S.C. § 1983, which provides a cause of action for violations of the laws and Constitution of the United States by persons acting under color of state law. It is undisputed that the defendant was acting under color of law at the time of the incidents in question; therefore, the only issue is whether the plaintiff has alleged the violation of a right secured by the Constitution and laws of the United States.

A.      **Access to the Courts**

It is well established that prisoners have a fundamental right of access to the courts, which "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). In order to make out a claim for violation of this right, however, the plaintiff must show that he has suffered actual injury. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). A plaintiff may show actual injury by demonstrating that "the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. In more specific terms, an inmate demonstrates actual injury when he "shows that an actionable claim . . . which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided." *Lewis*, 518 U.S. at 356.

Here, the plaintiff has not shown any "actual injury," as that term is defined in *Lewis*. He claims that the defendant violated his right to access to the courts by telling him to sit down without obtaining certain books; telling him to move his papers to a different table; forcing him to leave the library on occasion; and harassing him to the point that the plaintiff does not go to the

4

library when the defendant is present.  However, the plaintiff has not alleged that the defendant's

behavior  "hindered his efforts to pursue a legal claim," within the meaning of *Lewis*.  The fact

that the plaintiff voluntarily stays away from the library when the defendant is present is not, on

this record, a constructive denial of the use of library facilities and materials.  More to the point,

although he describes a difficult relationship with the defendant, the plaintiff points to no

actionable claim that he has lost or that has been rejected because of the conduct of the defendant;

nor does he assert that the prosecution of any such claim is currently being prevented by the

defendant.   On the contrary, the plaintiff admits that he filed a timely petition for habeas corpus,

and that he has successfully filed and pursued other matters, including the present litigation.

**B.**      **Freedom of Speech and Association**

        Although a "prison inmate retains those First Amendment rights that are not inconsistent

with his status as a prisoner or with the legitimate penological objectives of the corrections

system,[2] *Pell v. Procunier,* 417 U.S. 817, 822 (1974), prison regulations may impinge on those

constitutional rights if the regulations are "reasonably related to legitimate penological interests."[3]

---

        [2] There is no special protection for inmate speech that involves legal advice.  The Supreme
Court has held that inmates have no special First Amendment right to provide legal assistance to
other inmates, *Shaw v. Murphy*, 532 U.S. 223, 227 (2001); nor do inmates have a First
Amendment right to speak with law clerks.  Rather, "[u]nder our right-of-access precedents,
inmates have a right to receive legal advice from other inmates only when it is a necessary 'means
for ensuring a reasonably adequate opportunity to present claimed violations of fundamental
constitutional rights to the courts.'" *Shaw v. Murphy,* 532 U.S. 223, 227 n.3 (2001) (internal
citations omitted).

        [3]*Turner* addresses the constitutionality of prison *regulations*.  Here, the plaintiff objects
that there is no applicable regulation regarding quiet in the library.  (Pl. Mem. 4.)  There is not
sufficient evidence in the record to determine whether a regulation exists, but even if there is no
regulation, there is clearly a policy or practice of controlling the level of noise in the library, *see*
Ex. B, D, G to Am. Complaint, and it is reasonable to extend the reasoning of *Turner* to prison
policies and practices.  The Supreme Court has called its decision in *Turner* a "unitary, deferential

*Turner v. Safley,* 482 U.S. 78, 89 (1987).   The court can assess the reasonableness of prison

regulations by considering: (1) whether there is a "valid, rational connection" between the

regulation and the government interest; (2) whether there are alternative means of exercising the

right; (3) the impact of accommodation of the asserted right on correctional officers and other

inmates; and (4) the absence of ready alternatives. *Turner v. Safley,* 482 U.S. 78, 89-90 (1987).

Assuming without deciding that the plaintiff had rights to speech and association in the

library, there is clearly a "valid, rational connection" between a rule against loud, distracting

behavior in the library and the government's interest in maintaining order.[4]  Further, the rule

ensures that all inmates can enjoy the right of access to the courts by reading, working, and

studying the law.  The plaintiff has alternative means for exercising his right to speak and

associate with other inmates in other locations and at other times.

C.    **Retaliation**

Even if a plaintiff does not have a claim for a direct violation of his constitutional rights,

he may have a claim for retaliation if an adverse action was taken against him because he engaged

in protected activity. *See McDonald v. Hall,* 610 F.2d 16, 18 (1st Cir. 1979 (holding that even

---

standard for reviewing prisoners' constitutional claims." *Shaw v. Murphy,* 532 U.S. 223, 227
(2001). And the *Turner* court itself cited *Procunier v. Martinez* in reaching its conclusion, stating,
"[w]hen a prison regulation *or practice* offends a fundamental constitutional guarantee, federal
courts will discharge their duty to protect constitutional rights." *Procunier v. Martinez,* 416 U.S.,
at 405-406 (quoted in *Turner v. Safley,* 482 U.S. 78, 84 (1987)).  Finally, in explaining its
decision in *Turner,* the Court warned against "[s]ubjecting the day-to-day judgments of prison
officials to an inflexible strict scrutiny analysis," stating that courts should not be the "primary
arbiters of what constitutes the best solution to every administrative problem." *Turner v. Safley,*
482 U.S. 78, 89 (1987).  This reasoning applies as strongly to prison policies and practices as it
does to regulations.

[4] Indeed, it is virtually a universal truism that libraries generally are expected to be quiet
places.

6

though a prisoner has no right to a hearing before a transfer, "he may nevertheless establish a claim under § 1983 if the decision to transfer him was made by reason of his exercise of constitutionally protected First Amendment freedoms"). A prisoner may make a claim for retaliation if (1) he engaged in conduct protected by the Constitution, (2) an adverse action was taken against him, and (3) the adverse action was taken *because* he engaged in the protected conduct. *See McDonald*, 610 F.2d at 18 (reversing the dismissal of a complaint which alleged that the plaintiff "filed actions against prison officials and assisted other inmates in doing so, that he along with 10 other prisoners were subsequently transferred, and that the decision to transfer him was made in retaliation for his litigation activities").

In this case, the plaintiff argues that adverse action was taken against him – he was thrown out of the library and reprimanded in front of the Officer in Charge – because he asserted his rights to speech and access to the courts.   Irrespective of whether the plaintiff actually *had* these rights, he *asserted* constitutional rights during his January 14/15, 2004 encounter with the defendant.  The record is not clear as to whether the defendant's subsequent actions were taken because the plaintiff asserted First and Fourteenth Amendment rights, or simply because the plaintiff was being disruptive of the tranquility of the library.  Further, the record is not clear as to whether the defendant's subsequent actions constituted an adverse action against the plaintiff. Thus, on the present record, the court cannot say, as a matter of law, that the defendant did not retaliate against the plaintiff because the plaintiff exercised his constitutional rights.  Accordingly, the retaliation claim survives the present motion.

### III.  CONCLUSION

For these reasons, I GRANT the defendant's motion for judgment on the pleadings insofar

as it applies to all of the claims in the amended complaint except the retaliation claim. I DENY

the defendant's motion insofar as it applies to the retaliation claim.

      In lieu of a scheduling conference, the parties are directed--jointly, if possible; separately,

if necessary--to propose to the court a schedule of pretrial matters that addresses deadlines for

any (1) amendments to the pleadings, (2) discovery, and (3) further dispositive motions. The

schedule(s) must be filed with the court not later than March 28, 2006.

SO ORDERED.

                               /s/ REGINALD C. LINDSAY

                                United States District Judge

Dated: March 6, 2006