```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
```

WILLIAM R. MITCHELL,                         No. 04-cv-11504-RCL

    Plaintiff,

    v.

WILLIAM D. MONGELLI,

    Defendant.

<u>MEMORANDUM OF LAW IN SUPPORT OF THE</u>
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

The defendant, William D. Mongelli ("Mongelli"), submits this memorandum of law in support of his motion for summary judgment on the retaliation claim, Count VI of the Amended Complaint.

<u>INTRODUCTION</u>

William R. Mitchell ("Mitchell") is a prisoner in the custody of the Massachusetts Department of Correction, serving a life sentence for second-degree murder. *See* <u>Commonwealth v. Mitchell</u>, 646 N.E.2d 1073 (Mass. App.), <u>rev. denied</u>, 648 N.E.2d 1285 (Mass. 1995). He is incarcerated at the Massachusetts Correctional Institution, Norfolk ("MCI-Norfolk"), a Level 4 medium-security correctional facility. (Amended Complaint ¶ 7) Mongelli is the librarian at MCI-Norfolk.

<u>STATEMENT OF PROCEEDINGS</u>

Mitchell filed this lawsuit on July 1, 2004. He filed an amended complaint (P#7) on September 29, 2004. Mongelli filed his answer (P#15) on May 26, 2005. On July 6, 2005, Mongelli filed a motion for judgment on the pleadings (P#16) with a supporting

2

memorandum (P#17). This Court ruled on March 6, 2006, granting Mongelli's motion in part and denying it in part. Pursuant to the ruling, Mitchell was permitted to pursue his retaliation claim against Mongelli. The parties have engaged in discovery on this issue. This motion for summary judgment addresses the retaliation claim. For the reasons that follow, Mongelli is entitled to summary judgment on that claim.

### STATEMENT OF UNDISPUTED FACTS

On or around January 14, 2004, Mitchell was discussing the law with another inmate in the library when Mongelli forced them to stop their conversation. (Am. Complaint ¶ 22) Mitchell felt intimidated by Mongelli and cut his research short. (Am. Complaint ¶¶ 23, 24) The next day, January 15, 2004, Mongelli told Mitchell to be quiet while Mitchell was having a conversation with an inmate clerk in the library. (Am. Complaint ¶ 25) Mongelli then called Mitchell into his office and chastised him for his conduct. (Am. Complaint ¶ 27; Deposition of William R. Mitchell, p. 12)[1] Mongelli told Mitchell that he was too loud. (Mitchell Deposition, p. 12) Before leaving the library, Mongelli stopped Mitchell and discussed the incident with the officer-in-charge ("OIC"). (Am. Complaint ¶ 28) Mitchell apologized and said that this behavior would not happen again. (Am. Complaint ¶ 28; Mitchell Deposition, p. 13) Mongelli did not issue a disciplinary report against Mitchell for this incident. (Mitchell Deposition, pp. 14, 17) Mitchell has not

3

received a disciplinary report regarding any infraction of the library rules at MCI-Norfolk at any time over the past fourteen years. (Am. Complaint ¶ 35)

Mongelli perceived that Mitchell would at times engage in "boisterous conversations" with other inmates, including the inmate law clerks, while in the library. (Mongelli Interrogatory Answer No. 4)[2] Mongelli reminded Mitchell on more than one occasion that he was in a library and that he should use a quieter tone of voice so as not to distract other library patrons. Id. Mongelli did not prohibit Mitchell from speaking with the inmate law clerks. (Mongelli Interrogatory Answer No. 11) However, Mongelli told Mitchell that when he spoke to anyone in the library, he should use a conversational tone appropriate for that environment. Id.

After the January 2004 incident, Mitchell would generally not attend the law library during hours when Mongelli was on duty. (Am. Complaint ¶¶ 28, 30) However, Mongelli did not bar Mitchell from the library nor did he place any restrictions on Mitchell's attendance. (Mitchell Deposition, p. 17) When Mitchell began to attend the law library on Saturday and Sunday mornings, he no longer had access to the photocopying machine or to legal supplies issued by Mongelli. (Am. Complaint ¶ 30) However, he obtained legal supplies by purchasing them in the prison canteen. (Mitchell Deposition, p. 21) He bought paper, typewriter ribbons, and manila

---

[1] The relevant portions of Mitchell's deposition are filed as Exhibit 1.
[2] Mongelli's interrogatory answers are filed as Exhibit 2.

4

envelopes from the canteen, and another person would sometimes give him manila envelopes. (Mitchell Deposition, pp. 20-21) A friend of Mitchell worked in the library and copied legal documents for him. (Mitchell Deposition, p. 22)

On at least two occasions after January 15, 2004, Mitchell attended the library when Mongelli was there. (Mitchell Deposition, pp. 22-24) Mongelli allowed Mitchell to photocopy some documents. (Mitchell Deposition p. 23) On those occasions, Mongelli permitted Mitchell to stay in the library until it closed. (Mitchell Deposition p. 24)

Mitchell seeks compensatory damages, punitive damages, and injunctive relief on his retaliation claim. He alleges that Mongelli retaliated against him for asserting his First Amendment rights to freedom of speech and association. (Am. Complaint ¶¶ 42-59) Mitchell brings this claim as a violation of his civil rights under 42 U.S.C. § 1983. (Am. Complaint ¶¶ 60-61)

ARGUMENT

A claim under 42 U.S.C. § 1983 has two essential elements: (1) the challenged conduct is attributable to a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981); Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). The first element is undisputed in that Mongelli was the prison librarian acting under color of law at all times in question.

5

## THE DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON THE RETALIATION CLAIM.

For Mitchell to sustain a First Amendment retaliation claim, he must prove: (1) that he engaged in a protected activity, (2) that the defendant took "adverse action" against him, and (3) a causal connection between the first two elements. Gill v. Pidlypchak, 389 F.3d 379, 380 (2nd Cir. 2004); Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999) Adverse action is "conduct that would deter a similarly situated individual of ordinary firmness from exercising … constitutional rights." Gill v. Pidlypchak, 389 F.3d at 381

Mitchell's claim fails because he has not produced evidence to support any of the three essential elements. Although Mitchell says that he was engaging in a protected activity on January 15, 2004 (i.e., speaking with a law clerk), he did not have the right to speak in a manner that would disrupt and distract others. That was Mongelli's perception, and Mitchell has produced no evidence that it was unreasonable. Moreover, Mitchell had no constitutional right to receive legal assistance from the inmate clerk. *See* Shaw v. Murphy, 532 U.S. 223, 231 n.3 (2001) (no special First Amendment right to provide or receive legal advice from other prisoners).

Furthermore, Mitchell was not subjected to any adverse action following the January 15, 2004 incident. Mongelli simply told Mitchell to lower his voice and then later, when Mitchell was leaving the library, Mongelli discussed the incident with the

6

officer-in-charge. According to Mitchell, the library period was over and he left of his own volition. (Mitchell Deposition, p. 18) Mongelli did not bar Mitchell from the library. (Mitchell Deposition, p. 17) Mitchell voluntarily chose not to attend the library, except on weekends, in order to avoid interaction with Mongelli. (Am. Complaint, ¶ 30) *Compare* Clement v. Gomez, 2000 U.S. Dist. LEXIS 4327 (N.D. Cal. 2000)(inmate was properly barred from the prison law library for two 30-day periods for violating no-talking rule).[3] Mitchell did not receive a disciplinary report, and he never served a disciplinary sanction for the incident. *Compare* Gill v. Pidlypchak, 389 F.3d 379, 381 (2nd Cir. 2004) (retaliation claim allowed to proceed where allegedly false misbehavior report resulted in inmate's sentence to three weeks in "keeplock.")

The undisputed facts do not meet the objective test of an "adverse action." Mitchell's subjective fears notwithstanding, a reasonable person "of ordinary firmness" would not have reacted in this way to being reprimanded by the librarian. *See* Gill v. Pidlypchak, supra, 389 F.3d at 381. It was not reasonable for Mitchell to actively avoid interaction with Mongelli after January

---

[3] A copy of the Clement decision is being provided to the plaintiff because he does not have access to LEXIS.

7

15, 2004. In fact, Mitchell admitted that he returned to the library on at least two occasions when Mongelli was on duty. (Mitchell Deposition, pp. 22-24) Mitchell was permitted to use the library without incident on those dates.

Finally, there is no evidence of a causal connection between the first and second elements of Mitchell's claim. As the plaintiff, Mitchell bears a "substantial burden in attempting to prove that the actual motivating factor" for his alleged mistreatment was retaliatory. McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); Shabazz v. Cole, 69 F.Supp.2d 177, 197 (D.Mass. 1999). Mitchell must prove that "but for" a retaliatory motive harbored by Mongelli, the January 2004 incidents would not have occurred. McDonald, 610 F.2d at 18. There is no evidence of this because it is undisputed that Mongelli was attempting to enforce library decorum. Mongelli's perception of Mitchell's library conversations was that they were loud and boisterous to the extent that he had to remind Mitchell to use a quieter tone of voice. (Mongelli Interrogatory Answers No. 4, 5) Mitchell has produced no evidence that this reason was a pretext or that Mongelli's true motive was to punish Mitchell for asserting his rights. Had Mongelli wanted to punish Mitchell, he could have written a disciplinary report against him. (Mongelli Interrogatory Answer No. 16) Mongelli instead chose to handle the matter informally. Id.

It is beyond dispute that, as the librarian, Mongelli had an obligation to preserve order and quiet in the library. Simply put,

8

it was his job to tell inmates to be quiet when and if their talking grew too loud. Obviously, such disruptive behavior interferes with the ability of other library patrons to read, work and study the law. To that end, enforcement of the rule against such behavior ensures that all inmates enjoy the right of access to the courts. *See* Graham v. Cattell, 2005 U.S. Dist. LEXIS 528 (D.N.H. 2005), s*lip op.* at *13-15 (noting that prison officials may reasonably regulate the manner in which library facilities are used and upholding strict "no talking" policy between inmates in the law library).[4]

Mitchell claims that Mongelli's actions caused emotional distress. (Mitchell Deposition, p. 28) However, under the Prison Litigation Reform Act (PLRA), enacted in 1995, a prisoner must allege some physical injury in order to pursue an emotional distress claim. The relevant statute, 42 U.S.C. § 1997e(e), states:

> No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

It is undisputed that the events at issue did not result in a physical injury. Mitchell does not contend that his emotional distress manifested in any physical symptoms. (Mitchell Deposition, p. 29) Even if Mitchell was distressed when Mongelli told him to be

---

[4] A copy of the Graham decision is being provided to the plaintiff.

9

quiet, the PLRA bars his claim for emotional distress. *Contrast*, Shaheed-Muhammad v. DiPaolo, 138 F.Supp.2d 99, 106-108 (D.Mass. 2001) (no showing of physical injury required for claimed violation of abstract rights, e.g., free exercise of religion, equal protection, and due process).

## CONCLUSION

This Court should grant summary judgment to the defendant, William D. Mongelli, on the sole remaining count of the amended complaint.

Respectfully submitted,

NANCY ANKERS WHITE
Special Assistant Attorney General

Date: September 20, 2006         __/s/ DAVID J. RENTSCH_____
                                 David J. Rentsch, Counsel
                                 Legal Division
                                 Department of Correction
                                 70 Franklin Street, Suite 600
                                 Boston, MA  02110-1300
                                 (617) 727-3300, ext. 142
                                 BBO #544926
                                 djrentsch@doc.state.ma.us