EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM R. MITCHELL,

    Plaintiff,                        C.A. No. 04-11504-RCL

v.

WILLIAM D. MONGELLI,

    Defendant.

## ANSWERS TO THE PLAINTIFF'S AMENDED INTERROGATORIES TO THE DEFENDANT, WILLIAM D. MONGELLI

Interrogatory No. 1

    Please state your full name and job description fully and in complete detail for the record. And describe fully and in complete detail any and all your curriculum, including, but not limited to, any special courses or training in the field of law librarian or general librarian.

Answer No. 1

    William Mongelli. I am the librarian at MCI-Norfolk. In general, my duties are to plan, direct and supervise the programs and services of the institution library by applying standard library procedures to serve the needs of the institution's inmates. I obtained a Bachelor of Arts (B.A.) degree in 1982 and a Masters in Library Science (M.L.S.) degree in 1986.

Interrogatory No. 2

    Please describe fully and in complete detail any and all training you received by the Department of Correction prior, during, or after you were hired directly related to your job.

Answer No. 2

    After I was hired by the Department of Correction in 1986, I underwent four weeks of training at MCI-Cedar Junction in Walpole. Since then, I have taken 40 hours of in-service training each year as offered and required by the Department of Correction.

Interrogatory No. 2a
How long have you been employed by the Department of Correction as a law librarian or general librarian?

Answer No. 2a
Since October 1986.

Interrogatory No. 3
Please describe fully and in complete detail if you have ever written any papers, journals, speeches, or books, etc., whether it was in your private, individual or official capacity within the last ten (10) years. If so, please describe fully and in complete detail what those papers, journals, speeches, or books are.

Answer No. 3
I authored a book, entitled "CONSENTRATING ON THE LAW: A Program Of Self-Directed Legal Research For Prison Course Givers." It is published by F&W Associates, and the book is available for purchase through LMC Source, 358 South 700 East #B305, Salt Lake City, UT 84102. I wrote the book in my private capacity in 2001.

Interrogatory No. 4
Please describe fully and in complete detail that on January 15, 2005, at the 10:30 a.m. movement, did you have an occasion of seeing or hearing plaintiff engaging in a conversation with one of your law clerks?

Answer No. 4
No, I did not. In the plaintiff's amended complaint, he claims that this incident occurred on January 15, 2004. While I don't have an independent memory of that specific incident, I do remember that the plaintiff would sometimes engage in boisterous conversations with other inmates, including inmate law clerks, in the library. On more than one occasion I had to remind the plaintiff that he was in a library and that he should use a quieter tone of voice so that he would not distract other library patrons.

Interrogatory No. 5
Please describe fully and in complete detail if you heard what the conversation was about? If so, please describe fully and in complete detail the substance of that conversation.

Answer No. 5

Again, if the question is whether I heard such a conversation on January 15, 2005, the answer is "no." Regarding the 2004 incident, I don't have a specific memory of the substance of the plaintiff's conversation, but I distinctly remember that the tone and volume of the plaintiff's voice was disruptive and interfered with the tranquility of the library environment.

Interrogatory No. 6

Please describe fully and in complete detail if plaintiff was violating any prison or law library rule, regulation, or policy while engaging in his conversation? If so, please describe fully and in complete detail what those violations were.

Answer No. 6

Although I did not write a disciplinary report against the plaintiff, he could have been charged with a violation of the code of offenses, which at the time were contained in 103 CMR 430.00 et seq. (1993). Specifically, 103 CMR 430.24(8) prohibited conduct which disrupts or interferes with the security or orderly running of the institution. In addition, it is universally recognized that a library is a place of quiet study, and the plaintiff broke this unwritten rule of behavior.

Interrogatory No. 7

Please describe fully and in complete detail that on January 15, 2005, just before the 10:30 a.m. movement, and while plaintiff was engaged in a conversation with one of your law clerks, did you stick your head out of your office and yell at plaintiff to "shut-up?" If so, please describe fully and in complete detail why.

Answer No. 7

Again, my answer is "no" because I don't believe that this happened in 2005. With respect to the 2004 incident, I probably did loudly tell the plaintiff to "shut-up." I did this because I had already reminded the plaintiff on prior occasions to lower his voice in the library, and the fact that he ignored my prior admonishments provoked this response. I used a loud voice to convey my instructions so as to ensure that the plaintiff would hear and understand.

Interrogatory No. 8
    Please describe fully and in complete detail if plaintiff informed you that he had a right to free speech?

Answer No. 8
    If the question is whether the plaintiff said this to me on January 15, 2005, the answer is "no" because I don't believe we had this conversation in 2005. I don't remember whether the plaintiff said this to me during 2004.

Interrogatory No. 9
    Please describe fully and in complete detail if you called plaintiff into your office and yelled at him?

Answer No. 9
    I did not do this on January 15, 2005. I probably did call the plaintiff into my office during the 2004 incident because that is my custom and practice in that type of situation. I don't have an independent memory of that specific occasion.

Interrogatory No. 10
    Please describe fully and in complete detail when plaintiff informed you that he had a right to free speech, did you become angry and start to scold plaintiff?

Answer No. 10
    No, I did not do this on January 15, 2005. During 2004, I did have to speak with the plaintiff on several occasions to remind him about proper library decorum and to request that he lower his voice. If the plaintiff's response was that he had a right to free speech, I would have acknowledged this but informed him that other inmates have a right to a library environment free of loud distractions. To the extent that the plaintiff considers this a "scolding," it was.

Interrogatory No. 11
    Please describe fully and in complete detail if you informed plaintiff that he could no longer speak to your law clerks? If so, please describe fully and in complete detail why.

Answer No. 11
    I never told the plaintiff, in 2004, 2005, or at any other time, that he could not speak with the inmate law clerks. I told the plaintiff on several occasions that when he spoke to anyone

in the library, he should use a conversational tone appropriate for that environment. Moreover, I instructed him to refrain from engaging in loud, boisterous conversations that were disruptive and distracted others in the library.

Interrogatory No. 12
Please describe fully and in complete detail if plaintiff then informed you that he had a right to access to the courts?

Answer No. 12
I don't recall that the plaintiff said that. He certainly did not say this on January 15, 2005, if that is the question.

Interrogatory No. 13
Please describe fully and in complete detail if you became more angry with what plaintiff said, and if you stated the phrase, "do you want to go there?" If so, please describe fully and in complete detail why.

Answer No. 13
This did not happen on January 15, 2005. During one of my conversations with the plaintiff in 2004, I may have become angry with him because he appeared to be unwilling to comply with my instructions about using the proper tone of voice while in the library. In my estimation, the plaintiff was interfering with the right of other inmates to use the library as a place of quiet study. Because I felt that the plaintiff's conduct was disruptive, and he appeared not to understand or care about this, I probably did become angry with him. As I stated previously, I had to use a loud voice in this situation in order to ensure that the plaintiff heard and understood my instructions.

Interrogatory No. 14
Please describe fully and in complete detail that on January 15, 2005, at the 10:30 a.m. movement, and upon plaintiff leaving the law library, did you call plaintiff over to where you were standing with a correctional officer and start yelling at plaintiff in front of this officer? If so, please describe fully and in complete detail why.

Answer No. 14
This did not happen on January 15, 2005. If the plaintiff is asking whether a correctional officer was present during our

conversation in 2004, the answer is "yes." The officer-in-charge (OIC) would have been present in or near the library for security purposes. If the plaintiff perceived that I spoke to him in front of the officer in a loud tone of voice, it was because I had already reminded the plaintiff at least twice before to lower his voice while in the library. As I stated in previous answers, I felt that I had to use a loud voice under the circumstances to ensure that the plaintiff heard and understood my instructions to him.

Interrogatory No. 15
Please describe fully and in complete detail that when you were yelling at plaintiff in front of the correctional officer, it could get plaintiff lugged to higher security or have a disciplinary ticket issued.

Answer No. 15
Anything is possible, but that was not my intention.

Interrogatory No. 16
Please describe fully and in complete detail when you were yelling at plaintiff in front of the correctional officer, were you trying to get plaintiff lugged to higher security or have a disciplinary ticket issued? If so, please describe fully and in complete detail why.

Answer No. 16
No. If I had determined that a disciplinary ticket was warranted in this situation, I could have written the ticket myself. I did not write a disciplinary ticket against the plaintiff for his behavior because I thought that the appropriate course was to handle the matter informally.

Interrogatory No. 17
Please describe fully and in complete detail if you informed plaintiff after he apologized to you that you were going to write up an incident report. If so, please describe fully and in complete detail why.

Answer No. 17
No, this did not happen.

Interrogatory No. 18
   Please describe fully and in complete detail if you have any knowledge that chastising plaintiff in front of the correctional officer or informing plaintiff that you were going to write up an incident report because plaintiff informed you that he was engaging in or exercising his constitutionally protected rights would violate the constitution?

Answer No. 18

**OBJECTION BY COUNSEL:** Counsel objects on the basis that the question is incomprehensible and vague. Counsel further objects as this question appears to ask the witness to draw a legal conclusion.

Interrogatory No. 19
   Please describe fully and in complete detail if you have ever written a disciplinary ticket up for plaintiff because of disruptive behavior, loud talking, or violating a prison rule, regulation, or policy? If so, please describe fully and in complete detail when and why.

Answer No. 19
   No, I have not. Each incident where the plaintiff showed a lack of regard for library decorum was handled informally, and therefore no formal disciplinary report was written.

Interrogatory No. 20
   Please describe fully and in complete detail if you had written up any other inmate in the law library for disruptive behavior, loud talking, or violating a prison rule, regulation, or policy? If so, please describe fully and in complete detail when, who, and why.

Answer No. 20

**OBJECTION BY COUNSEL:** Counsel objects on the basis that the question is vague, overbroad, unduly burdensome, irrelevant to the subject matter involved in this action, not reasonably calculated to lead to the discovery of admissible evidence, and is otherwise outside the scope of permissible discovery under Mass. R. Civ. P. 26(b). Counsel further objects to this question to the extent that it seeks information protected by the Criminal Offender Record Information Act ("CORI"), G.L. c. 6, § 167 et seq.

Notwithstanding this objection, and without waiver thereof, the defendant answers as follows: Yes, I have written disciplinary reports against other inmates for rule infractions related to the library. My attorney will provide you with copies of the relevant documents.

Signed under the pains and penalties of perjury on this 19TH day of APRIL, 2006.

*William D. Mongelli* (signature)

As to objections:

*David J. Rentsch* (signature)

David J. Rentsch, Counsel
Legal Division
Department of Correction
70 Franklin Street, Suite 600
Boston, MA    02110-1300
(617) 727-3300, ext. 142
BBO# 544926