UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                )
WILLIAM R. MITCHELL,            )
        Plaintiff,              )
                                )
                                )
        -V-                     )          CIVIL ACTION
                                )          NO. 04-11504-RCL
                                )
WILLIAM D. MONGELLI,            )
        Defendant.              )
                                )
```

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56(b)

NOW COMES Plaintiff William R. Mitchell in the above-entitled matter, and he does hereby respectfully submit his Opposition to Defendant's Motion For Summary Judgment pursuant to Fed.R.Civ.P. 56(b). Plaintiff further states the following:

FACTUAL ALLEGATIONS
IN DISPUTE

Plaintiff William R. Mitchell provides the following statement of material facts as to which there is a genuine issue to be tried.

1.    Plaintiff is disputing Defendant's Statement of Undisputed Facts at pages 2-4, in support of Defendant's motion for summary judgment.
(Affidavit of William R. Mitchell ¶4).

2.   Plaintiff further rebuts Defendant's answers to
his amended complaint at paragraph 13.
(Affidavit of William R. Mitchell ¶¶6-7).

3.   Plaintiff has been going to the law library for
the last 14 years on a steady bases. Plaintiff did
his research between the hours of 1:00 p.m. to either
2:30 or until 3:30 p.m.. Plaintiff began having
problems with the law librarian, William D. Mongelli.
Plaintiff changed his research hours to a morning
schedule. After maintaining these hours for about a
year, Defendant Mongelli became hostile toward
Plaintiff, and he made comments about Plaintiff
working and researching with other inmates. Defendant
Mongelli further interfered with Plaintiff's legal
copying, and he always turned the machine off just
before it was Plaintiff's turn to copy. And on other
occasions Defendant Mongelli would preclude Plaintiff
from obtaining legal books in certain parts of the law
library. (Affidavit of William R. Mitchell ¶5).

4.   In Defendant's answers to Plaintiff's amended
complaint at paragraphs 11,12,13, he categorically
denied that he was hostile toward Plaintiff, that he
did not make "subtle threats" and "innuendos."
Defendant denied that there was a pattern or practice

-3-

of arbitrarily denying Plaintiff's requests for
photocopying services.  Defendant completely denied
that he interfered with Plaintiff's legal copying,
and further denies that he engaged in any pattern or
practice of arbitrarily denying Plaintiff access to
the library. (Affidavit of William R. Mitchell ¶6).

5.    Plaintiff rebuts the fact that Defendant, in
paragraph 13, of his amended complaint, states he
had to tell Plaintiff to be quite, but denies library
access.  First, Defendant told PLaintiff to "shut-up,"
not be quite.  Second, Plaintiff did not state in his
amended complaint at paragraph 13, that Defendant
denied him access to the library, PLaintiff stated
that Defendant said, "you'll never get out of jail."
Or, "are you still here." "I told you to shut-up or
get out of the library."  And, finally, "why don't
you sit down and shut-up and move all your stuff and
sit some place else, I am sick of listening to you."
(Affidavit of William R. Mitchell ¶7).

6.    In Defendant's answers to Plaintiff's amended
complaint at paragraphs 14,15,17,18, he categorically
denied that he invoked a campaign of harassment, that
his attitude changed toward Plaintiff, and that
Plaintiff was forced to leave the law library, making

it appear that Plaintiff did something wrong.
Defendant completely denied accusations in paragraph
15, of Plaintiff's amended complaint that he
continued his campaign of harassment and his right
out hostility toward Plaintiff in front of other
inmates in the law library. Defendant completely
denied averments in paragraph 17, of Plaintiff's
amended complaint that between 2003 and 2004, he
invoked another series of calculated harassment
toward Plaintiff for no other reason, but to interrupt
and interfere with Plaintiff's legal research, thereby,
violating Plaintiff's rights to free speech.
Defendant further denied averments in paragraph 18,
of Plaintiff's amended complaint that no matter where
Plaintiff was in the law library or who he was talking
to, Defendant would come out of his office and say
something, thereby, chilling Plaintiff's legal
activities. (Affidavit of William R. Mitchell ¶8).

7.   In Defendant's answers to Plaintiff's amended
complaint at paragraphs 19,20,21,22, he categorically
denied that Plaintiff informed him that he was getting
a Federal book out of a section of the law library,
the corner area.  Defendant further denies the date
on which this particular incident took place.
Defendant also denied that he told Plaintiff that he

-5-

could not get a legal book out of the corner part of
the law library. Defendant then denied that he was
without information about whether or not Plaintiff was
obtaining a legal book when he told Plaintiff to get
out of the corner of the law library. Although
Plaintiff had a legal book in his hand, and he looked
right at it. Defendant denied all averments in
paragraph 21, of Plaintiff's amended complaint that
he hampered, hindered, and interfered with Plaintiff's
legal research. Defendant further denied all
averments in paragraph 22, of Plaintiff's amended
complaint that on January 14, 2004, while Plaintiff
was in the law library with a friend researching his
criminal case, Defendant went over to the table where
Plaintiff and his friend were working and said, "are
you going to keep talking or are you going to research."
(Affidavit of Pedro Valtentin ¶¶3-4) and
(Affidavit of William R. Mitchell ¶9).

8.    In Defendant's answers to Plaintiff's amended
complaint at paragraphs 23,24, he categorically denied
that on January 14, 2004, he told Plaintiff to take
his legal papers and books and go somewhere else.
Defendant further denied that Plaintiff put the legal
books away, and left the law library with his friend

-6-

at the first movement.

(Affidavit of Pedro Valtentin ¶5) and

(Affidavit of William R. Mitchell ¶10).

9.    In Defendant's answers to Plaintiff's amended
complaint at paragraphs 25,26,27, he categorically
denied that on January 15, 2004, he stuck his head out
of his office and told Plaintiff to "shut-up" and that
he was not going to listen to him everyday.  Defendant
further denies that when he called Plaintiff in his
office, Plaintiff told Defendant that he had a right
to free speech.  Defendant also denied the fact that
he became angry when Plaintiff said this to him, and
said that he did not want Plaintiff to talk to his law
clerks anymore.  In paragraph 27, in Plaintiff's
amended complaint Defendant denied that he yelled and
screamed at Plaintiff when he told him that Plaintiff
could not talk to his law clerks.  In Defendant's
answers to Plaintiff's first set of interrogatories
No. 11, Defendant further denied he told Plaintiff
not to talk to his law clerks.

(Affidavit of Emmett S. Muldoon ¶4) and

(Affidavit of William R. Mitchell ¶11).

10.    In Defendant's answers to Plaintiff's amended
complaint at paragraphs 28,29, he categorically denied
that on January 15, 2004, when Defendant called

Plaintiff back from picking up his identification
card, to where Defendant was standing with a
Correctional officer, he told Plaintiff that he was
going to write an incident report for his behavior,
and that Defendant tried to get Plaintiff lugged or
removed to higher security. Compare Defendant's
answers to interrogatory No. 15, where Plaintiff asks
him "when you were yelling at plaintiff in front of
the Correctional officer, it could get plaintiff
lugged to higher security or have a disciplinary
ticket issued?" Defendant Mongelli answered,
"anything is possible, but that was not my attention."
Defendant further denied questions in interrogatory
No. 17, that he informed Plaintiff he was going to
write up an incident report. Defendant answered,
No. 17, "No, this did not happen."
(Affidavit of William R. Mitchell ¶12).

11. Although Defendant claims he had never written
a ticket, all Plaintiff needs to know is that Defendant
Mongelli works for the Department of Correction and
he was yelling at Plaintiff in front of a
Correctional officer, a co-worker if you will, and
informed Plaintiff he was going to write him up for a
disciplinary infraction. This alone is enough, in
the prison setting, to deter or chill a similarly

situated individual of ordinary firmness from

exercising his/her constitutional rights.

(Affidavit of William R. Mitchell ¶13).

12.  Plaintiff firmly believed that Defendant was

going to write him up, so Plaintiff stayed out of the

law library on days Defendant was working, and

researched on the weekends.  Plaintiff further

believed that if he did not apologize at this

particular time, although Plaintiff don't believe that

he violated any rules, he would, in fact, be lugged

to higher security and have a disciplinary ticket

issued.  Plaintiff was chilled in his regular

library activities and now Plaintiff is curtailed to

the weekends, although Defendant did not bar

Plaintiff from the law library, he believed that if

he continued with his regular law library activities,

Plaintiff would surely get a disciplinary ticket

from Defendant.  Plaintiff believes that Defendant

accomplished what he was set out to do, and that is

get rid of him out of the law library, for whatever

reasons, they are only known to the Defendant.

(Affidavit of William R. Mitchell ¶14).

13.  The record demonstrates that Defendant's conduct

was motivated by an evil intent to stifle Plaintiff

from his regular law library activities.  Defendant

conduct is obvious that it was a motivating factor
that Plaintiff informed him that he had a right to
free speech and his conduct in front of the OIC
officer.  Defendant's actions infringed on his
constitutional rights, and his conduct or actions
after PLaintiff left his office was, in fact,
retaliatory.  Furthermore, there was a casual
connection between informing Defendant Plaintiff had
a constitutional right to free speech and calling
him over to where he was standing with a co-employee,
for chastising.  In Defendant's answers to Plaintiff's
request for admissions No. 13, he denied that it was
three minutes from the time Plaintiff left his office
and the time he brought Plaintiff to the building
officer for admonishment.

(Affidavit of William R. Mitchell ¶15).

14.  In Plaintiff's 14 years or so in prison he has
never received a disciplinary ticket for misbehaving,
and Plaintiff did not want to start now.  In fact,
Defendant acknowledges this in his answers to
Plaintiff's amended complaint at paragraph 35.
Defendant further admitted in answers to interrogatory
No. 19, that he never had to write Plaintiff up for
disruptive behavior, loud talking, or violating a
prison rule, regulation, or policy.  But Plaintiff

never informed Defendant in the past he had a right
to free speech. (Affidavit of William R. Mitchell ¶16).

15. Plaintiff asked Defendant to admit or deny that
he was a trouble maker only in the law library. He
answered that he did not have sufficient information
or knowledge to either admit or deny this request in
admission No. 14, even in light of Defendant's answers
to Plaintiff's amended complaint at paragraph 35,
that Plaintiff has never received a disciplinary
report in 14 years.

(Affidavit of William R. Mitchell ¶17).

16. In Defendant's answers to Plaintiff's amended
complaint at paragraph 31, he categorically denied
that on one occasion he threw Plaintiff out of the
law library during non-movement hours because he did
not want to hear Plaintiff's "voice" and that he was
not in the mood.

(Affidavit of William R. Mitchell ¶18).

17. In Defendant's answers to Plaintiff's
interrogatories No. 4, he denies that he saw or heard
Plaintiff in a conversation with his law clerks. But
yet Defendant answers that Plaintiff engaged in
boistertous conversation.

(Affidavit of William R. Mitchell ¶19).

18.   In Defendant's answers to Plaintiff's
interrogatories No. 6, he denies he wrote a
disciplinary report, but that Plaintiff could have
been charged with offense under 103 CMR 430.24(8)
"disruptive conduct."
(Affidavit of William R. Mitchell ¶20).

19.   In Defendant's answers to Plaintiff's requests
for production of documents No. 1-2, he produced four
tickets.   Two disciplinary reports and two were only
incident reports.   All written against inmates that
violated the law library rules.   On November 28, 2001,
Defendant wrote up a ticket on one of his own workers
for disobeying an order of a staff member and failure
to properly perform a work assignment.   On August 5,
7 months after the incident between Defendant and
Plaintiff, (January 15, 2004) Defendant had written a
ticket against another one of his workers for using
the copy machine without authority.
(Affidavit of William R. Mitchell ¶21).

20.   On March 22, 2005, Defendant had written an
incident report against an inmate for illegal copying
contraband materials on the photocopier.   On May 17,
2005, Defendant had written an incident report
against two inmates who were carrying on a "loud"

conversation. Defendant informed these inmates that
they had to leave the law library. Defendant reported
the incident to the OIC Sergeant.

(Affidavit of William R. Mitchell ¶22).

21. Defendant had written up other inmates in the
past for law library violations, but yet he did not
write Plaintiff for his so-called violation. Defendant
claimed that a disciplinary ticket was not warranted
in this situation, and that he could have written the
ticket himself. Defendant further answered that he
did not write a disciplinary ticket for Plaintiff's
behavior because he thought that he could handle it
informally. (Affidavit of William R. Mitchell ¶23).

22. Plaintiff believes and the record is clear why
Defendant did not write him up for a disciplinary
infraction because Plaintiff did not violate any
prison rules, regulations, or policies, as he did with
other inmates. The record is further clear that
Defendant is no stranger to writing disciplinary
or incident reports for minor infractions. But yet,
for some strange reason, he did not write Plaintiff
up for a library infraction.

(Affidavit of William R. Mitchell ¶24).

23.    There is nothing in the record that demonstrates
Defendant tried to resolve the two disciplinary
reports or the two incident reports.  The inmates
violated the rules, and Defendant issued them a
ticket, simple.

(Affidavit of William R. Mitchell ¶25).

24.    On May 12, 2006, exactly two years after the
incident between Defendant and Plaintiff, and 10
months after Defendant had written his last ticket
that Plaintiff knows of, he issued another
disciplinary ticket to an inmate for leaving his
legal materials in the law library between non-
movement hours.  Defendant never tried to resolve
this ticket informally or unofficially.  In fact,
Mr. McCauley did not know a ticket was even written
against him until the next day, on May 13, 2006.
(Affidavit of Martin McCauley ¶¶3,5-6) and
(Affidavit of William R. Mitchell ¶26).

25.    The record demonstrates that Defendant does have
a custom and practice of issuing disciplinary tickets
for minor offenses, but yet, Defendant did not issue
PLaintiff a ticket, although he claims that he could
have.    In Defendant's answers to request for
admissions No. 15, he admitted it was his preference
to resolve disciplinary problems in an informal
manner. (Affidavit of William R. Mitchell ¶27).

-14-

26.  In Defendant's answers to Plaintiff's request
for admissions No. 17,18, he denied that he tried to
resolve the November 28, 2001 and August 5, 2004,
March 22, 2005, and May 17, 2005, disciplinary and
incident reports because the March 22, 2005 and May
17, 2005 were not written up as disciplinary reports,
but yet Defendant does not answer whether or not he
tried to resolve the November 28, 2001 and August 5,
2004 tickets informally.

(Affidavit of William R. Mitchell ¶28).

27.  The record is clear that if Plaintiff was
violating any library rule or regulation, Defendant
surely would have written Plaintiff up for an
infraction.  There is nothing special about Plaintiff.
(Affidavit of William R. Mitchell ¶29).

28.  In Defendant's answers to Plaintiff's amended
complaint at paragraphs 13,25,30, he categorically
denied that he told Plaintiff to "shut-up," but only
states that he told Plaintiff to be "quite."
(Affidavit of William R. Mitchell ¶30).

29.  In Defendant's answers to Plaintiff's
interrogatories No. 7, he now claims that "I probably
did loudly tell the plaintiff to "shut-up."

Defendant tries to justify why he used the terminology "shut-up" when addressing Plaintiff in the law library. (Affidavit of William R. Mitchell ¶31).

30. On June 22, 2004, Plaintiff was given an affidavit by Francis J. Gallagher. In his affidavit he avers that Defendant, when addressing inmates at work, he uses foul language, and makes derogatory remarks when he asks Defendant Mongelli for legal supplies. (Affidavit of Francis J. Gallagher ¶¶2-3) and (Affidavit of William R. Mitchell ¶32).

31. Mr. Gallagher's affidavit reflects Defendant's demeanor and his state of mind when dealing with inmates in the law library. The record demonstrates that Defendant, more likely than not, could have engaged in some type of harassment when dealing with Plaintiff. Especially, while Plaintiff was working with other inmates, and talking to his law clerks, whether or nor Plaintiff was receiving or giving legal advice. (Affidavit of William R. Mitchell ¶33).

32. In Defendant's answers to Plaintiff's amended complaint at paragraph 25, he stated that his law clerks where trained law clerks to assist other prisoners with legal research.
(Affidavit of William R. Mitchell ¶34).

33.  Plaintiff believes that Defendant cannot have
it both ways.  First, Defendant argues in his
memorandum of law at page 5, that Plaintiff does not
have a constitutional right to give or receive legal
advice from inmate clerk.  But yet, Defendant has a
class/program in which he teaches and trains inmates
in certain areas of the law, and once an inmate
completes the program, inmates can now be hired as
law clerks.  The law clerk's duties encompass
helping and assisting other inmates in the law library
with their legal research.
(Affidavit of William R. Mitchell ¶35).

34.  Although Plaintiff was not giving or receiving
legal advice, nor did he claim this anywhere in his
complaint, how would Plaintiff get assistance from
Defendant's law clerks if he cannot talk to them.
(Affidavit of William R. Mitchell ¶36).

35.  Defendant's intentions in calling Plaintiff over
to where he was standing with a Correctional officer
are suspicious, and his actions are obvious and
closely related to the time Plaintiff informed
Defendant he had a right to free speech and the time
he called Plaintiff back to where he was standing

-17-

with another officer.

(Affidavit of William R. Mitchell ¶37).

36.   Plaintiff was leaving the building, but Defendant
called him back and placed Plaintiff in a
compromising position, and in the prison setting, all
Plaintiff could do is apologize, although he felt he
did nothing wrong.

(Affidavit if William R. Mitchell ¶38).

37.   Although Defendant did not bar Plaintiff from
the law library, never denied him legal copies, get
moved from the unit and Plaintiff's cell, or place
him in segregation, or even write a ticket, since
the filing of Plaintiff's civil suit would be
foolhardy for Defendant to do anything different.

(Affidavit of William R. Mitchell ¶39).

38.   The damage was already done on January 15, 2004,
when Defendant tried to get Plaintiff lugged by the
OIC officer and then threaten him with an incident
or disciplinary report for simply informing Defendant
that Plaintiff had a right to free speech.  Whether
or not a ticket was written is not relevant.

(Affidavit of William R. Mitchell ¶40).

39.   The record is clear that Defendant launched a
campaign of harassment over the last three years

leading up to the events that took place on January 14 and 15, 2004, and there is simply no legitimate reason for harassing Plaintiff for exercising his constitutional rights to free speech under the First Amendment to the United States Constitution. (Affidavit of William R. Mitchell ¶41).

40. Pursuant to the Prisoners Litigation Reform Act ("PLRA"), and section 1997e(e) bars me from damages on mental or emotional injury, except for abstract rights. e.g. free exercise of religion, equal protection, and due process. Abstract rights also encompass free speech and ones right to association. Although Defendant argues that Plaintiff did not suffer an emotional or physical injury, Plaintiff does not have to show actual injury for violations of the First Amendment rights to free speech and association because a violation or interference with the First Amendment, in and of itself, is the damage. (Affidavit of William R. Mitchell ¶42).

41. Plaintiff believes that there is a genuine issue of material fact in dispute and that Defendant is not entitled to summary judgment as a matter of law. The case should go to the jury because credibility and state of mind are at issue.

-19-

(Affidavit of William R. Mitchell ¶43).

WHEREFORE, Plaintiff prays that this Honorable Court
DENY Defendant's Motion For Summary Judgment and send
this case to a jury.

                                    Respectfully submitted
                                    by the Plaintiff,

                                    William R. Mitchell, pro-se
                                    P.O. Box 43
                                    Norfolk, MA 02056

Dated: October 3 , 2006