UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    FILED
                                    IN CLERKS OFFICE
WILLIAM R. MITCHELL,  )
      Plaintiff,      )             2006 OCT -5 P 2: 35
                      )
                      )             US DISTRICT COURT
   -v-                )             DISTRICT OF MASS
                      )         CIVIL ACTION
                      )         NO. 04-11504-RCL
                      )
WILLIAM D. MONGELLI,  )
      Defendant.      )
                      )
```

PLAINTIFF'S MEMORANDUM IN SUPPORT OF OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PRIOR PROCEEDINGS

Plaintiff adopts here Defendant's prior
proceedings as fully set forth herein at pages 1-2,
except for Defendant is not entitled to summary
judgment.

STATEMENT OF THE FACTS

On July 1, 2004, Plaintiff filed a lawsuit for
civil rights violations. On September 29, 2004,
Plaintiff filed an amended complaint. On May 26,
2005, Defendant filed his answers to the amended
complaint. On July 6, 2005, Defendant filed a
motion for judgment on the pleadings. On March 6,
2006, the Court granted in part, and denied in part.

Plaintiff was allowed to continue with his retaliation claim. Both parties engaged in discovery and Defendant moves for summary judgment.

### ARGUMENT

## I.   SUMMARY JUDGMENT SHOULD BE DENIED AND THE CASE MOVED TO AS THERE ARE GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE

### a. Summary Judgment Standard

Summary judgment is to be granted when, based on the pleadings, affidavits and depositions, "there is no genuine issues as to any material fact and [where] the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c); Kourouvacillis v. General Motors Corp., 410 Mass. 706, 716 (1991). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The moving party is said to bear both the initial burden of production and the ultimate burden of persuation at trial on the motion." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000).

-3-

"Where the moving party lacks the ultimate burden
of persuasion at trial, its initial burden of
production is conventionally satisfied in one of two
ways.  The movant may affirmatively produce evidence
that negates an essential element of the non-moving
party's claim." See Adickes v. S.H. Kress & Co., 398
U.S. 144, 158 (1970).  Additionally, there must be
"sufficient evidence favoring the non-moving party
for a jury to return a verdict for that party.  If
the evidence is merely colorable, or is not
significantly probative, summary judgment may be
granted." Anderson v. Liberty Lobby Inc., 477 U.S.
242, 249-250 (1986) (citations omitted).  "A party
seeking to recover upon a claim, counterclaim, or
cross-claim or to obtain a declaratory judgment may,
at any time after the expiration of 20 days from the
commencement of the action ... move with or without
supporting affidavits for summary judgment in his/her
favor upon all or any part thereof." Fed.R.Civ.P.
56(a).

## II. DEFENDANT WILLIAM D. MONGELLI IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two--that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Thaddeus-X v. Blatter, 175 F.3d 378, 395 (6th Cir. 1999); Bell v. Johnson, 308 F.3d 594, 602 (6th Cir. 2002). See Shabazz v. Cole, 69 F.Supp.2d 177, 197 (D.Mass. 1999).

### (i) Protected Conduct

Plaintiff was engaged in protected conduct on at least three separate occasions. One, Plaintiff was preparing a petition for writ of habeas corpus, Bell, supra, at 607, when Defendant hampered, hindered, harassed, and interfered with Plaintiff's research. Defendant informed Plaintiff on numerous occasions to get out of the corners of the library, and move your stuff someplace else, even when Plaintiff informed DEfendant that he was obtaining a Federal Court

Reporter for his research, Defendant said that he did not care and go and sit down somewhere.

On January 14, 2004, Plaintiff was engaged in protected conduct when a friend of his came into the law library and asked him if he could help him in his criminal case. See Johnson v. Avery, 393 U.S. 483, 490 (1969); Bell, supra, at 609; Thaddeus-X, supra, at 395. See Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985). Defendant went over to the table where Plaintiff and his friend was working and said, "are you going to keep talking or are you going to research." When Plaintiff answered, "that is what I am doing." Defendant told Plaintiff to move his legal papers and books and go to another area of the law library. Plaintiff, instead of moving, put all the 7 or 8 legal books back on the shelf and left the law library with his friend. Johnson, supra, at 490, "segregation of a 'jailhouse lawyer' in retaliation for providing legal aid is equivalent to the prison regulation barring [inmate legal] assistance," quoting Bell, supra, at 609.

On January 15, 2004, the next day, Plaintiff was engaged in protected conduct when he was discussing an issue with one of Defendant's law clerks, when he stuck his head out of his office door and told

Plaintiff to "shut-up" and that he did not want to hear his voice everyday. Defendant called Plaintiff into his office and scolded him and told him not to talk to his law clerks.

Plaintiff informed Defendant that he had a right to free speech and access to the courts. Defendant became angry with Plaintiff and said, "do you want to go there?" Plaintiff said, No, and he was allowed to leave Defendant's office. Shortly after leaving his office and picking up Plaintiff's identification card, Defendant called him back to where he was standing with another Correctional officer.

(ii) Adverse Action

In Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999), quoting Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002). The Court "explained that governmental action, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Id. at 397. The Courts further "determined that some adverse actions are so de minimis that they do not give rise to constitutionally cognizable injuries." Id. at 396. Accordingly, "[the Court]

held that an official action will be deemed 'adverse' only if it could 'deter a person of ordinary firmness' from the exercise of the right at stake." Thaddeus-X, supra, at 397, quoting Bell, supra, at 603.  See Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982).

In Bart, the Court held that the "effect on freedom of speech need not be great in order to be actionable[,]" and that "it would trivialize the First Amendment to allow plaintiffs to bring First Amendment retaliation claims for any adverse action no matter how minor."  "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." Bell, supra, 603.

The "adverse action" requirement in Thaddeus-X makes it clear that, in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law. Id. at 603.

On January 15, 2004, after Plaintiff left Defendant's office and proceed to leave the building, he called Plaintiff back to where he was standing with a correctional officer.  Defendant started yelling at Plaintiff in front of this office.  Defendant said, "tell him what just happen."  Plaintiff realized that

he was being placed in a compromising position, so
Plaintiff apologized. Defendant then threaten
Plaintiff with writing up an incident report for my
conduct. Plaintiff left the OIC building and went
back to his unit.

After the incident, Plaintiff completely changed
his law library routine from going everyday, morning,
noon and sometimes at night, for 14 years, to just the
weekends, Saturday and Sundays, sometimes Monday,
because Defendant is not working on Monday mornings.
Plaintiff has a friend copy his legal documents, and
only on emergencies does he go to the law library
when Defendant Mongelli is working.

Plaintiff argues that in the prison setting,
informing an individual that he will be written up for
misconduct, in front of another correctional officer,
would deter a person of ordinary firmness from exercise
of his constitutionally protected rights. Although
Defendant denied in his answers to Plaintiff's amended
complaint, interrogatories, and admissions, that he
either did not write up an incident report, nor did
he even tell Plaintiff that he was going to write one
up, is of no consequence because Plaintiff preceived
the threat as real, and thought that, in fact, he
would be written up.

In Defendant's answers to Plaintiff's
interrogatories, he claimed that he "could have written
Plaintiff up for an infraction pursuant to 103 CMR 430.
24(8)(conduct which disrupts or interference with the
security or orderly running of the Institution)."
Under section 430.25(1) or (3), Plaintiff could have
been sanctioned either for a minor or major offense.
Under minor offenses, Plaintiff could have been (1)(a)
"Reprimand;" (1)(b) "Loss of privileges for a
specified period of time;" (1)(c) "Room, grounds, or
house restriction;" (1)(d) "Restitution;" (1)(e)
"Extra-work duty for a specified period of time."
Under major offenses, Plaintiff could have been (3)(a)
"Isolation for a specified period of time not to
exceed 15 days for one offense, and no more than 30
days for all violation arising out of one incident;"
(3)(b) "Recommended good-time forfeiture;" (3)(c)
"All minor sanctions;" (3)(d) "Sentence to a
Department Disciplinary Unit for a period not exceeding
10 years. See Brown v. Crowley, 312 F.3d 782, 789
(6th Cir. 2002).

Plaintiff argues that if Defendant did, in fact,
write him up for a disciplinary infraction, he
certainly would have lost "good time" or disciplinary

credits, effectively increasing the amount of remaining time that Plaintiff was required to serve. Brown, supra, at 789, citing Thaddeus-X, supra, at 394. Although Plaintiff is serving a life sentence and good time credits do not apply, he was still "in-danger" of further loss of liberty through disciplinary detention. Brown, supra, at 788. See 103 CMR 430.25 (3)(a) (1993).

Plaintiff could have lost his single cell that he has been in for years, went to the ("hole"), placed in a more restrictive unit in a double-cell, lose canteen, telephone, television, and visitation privileges. See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997).

Plaintiff argues that "[a] reasonable jury could conclude that being subjected to the risk of such severe sanctions for [simply informing someone of their constitutional rights to free speech and access to the courts] would deter a person of ordinary firmness from continuing to engage in that [protected] conduct." Brown, supra, at 789; Thaddeus-X, supra, at 394. In Thaddeus-X, the Court held that "harassment, physical threats, and transfer to the area of the prison used to house mentally disturbed inmates, specially combined with the conditions allegedly

present there, would likely have a strong deterrent effect." Id. at 398.

Defendant tried to justify why he did not write Plaintiff a ticket, even though he threaten him with one, by portraying Plaintiff as a "trouble-maker" cabable of threats and (even worse) dangerous and disruptive behavior and a threat to the security and orderly running of the law library. But there is one major hole in Defendant's argument and that is Plaintiff has not received a disciplinary infraction in over 14 years. See Colon v. Coughlin, 58 F.3d 865, 872 (2nd Cir. 1995).

In Colon, the Court held that "evidence of prior good behavior ... may be circumstantial evidence of retaliation." See also Flaherty v. Coughlin, 713 F.3d 10, 13 (2nd Cir. 1983)(allegations of retaliatory motive on the part of DOCS were supported by some circumstantial evidence). Although Defendant wants to continue his charade that Plaintiff is a trouble maker and a rule violator, he has never written Plaintiff up for any infraction, like he has with other inmates in the past and even after the incident on January 15, 2004.

In fact, Plaintiff asked Defendant to admit or deny in admissions if Plaintiff was a disciplinary

problem in the law library, and he stated that he did not have sufficient information to admit or deny this question, but yet, Defendant admitted in his answers to Plaintiff's amended complaint that he has never had a disciplinary ticket in 14 years.  See <u>Carter</u> v. <u>McGrady</u>, 292 F.3d 152, 158 (4th Cir. 2002).

In <u>Carter</u>, the Court held that "the record reveals that Carter was clearly guilty of egregious violations of prison policy--stealing a typewriter and unauthorized use of the mails (and other violations as well." The Court concluded, "assuming **arguendo**, that Carter has correctly described the attitude at SCI-Mahanoy about jailhouse lawyering and that he has made out a **prima facie** case of retaliation, that there is no genuine issue of material fact that the prison officials would have disciplined Carter for these violations notwithstanding his jailhouse lawyering." <u>Id</u>. at 154.

The Court in <u>Brown</u> v. <u>Crowley</u>, 312 F.3d 782, 791, stated that they were "dubious that the issuance of a major misconduct ticket under such circumstances could ever be deemed consistent with First Amendment principles."  "Prison officials are clearly free to punish inmate conduct that threatens the orderly administration of the prison."  But "[t]he state

must ensure ... that [conduct-regulating] portions of
the prison rules are not used as a backdoor means of
punishing inmates for exercising their right to
criticize the legality of officials' actions.    Any
attempt to use the rules in this manner would result
in an unconstitutional application of the rules."
Brown, supra, at 791.

        Plaintiff was chilled in his regular library
activities when Defendant threaten him with a
disciplinary infraction under 103 CMR 430.24(8).
Plaintiff stopped going to the law library during the
week (Monday thru Friday) when Defendant was working,
and he was curtailed to the weekends (Saturday and
Sunday), sometimes Monday mornings when Defendant is
not working.    Plaintiff was further chilled in his
activities because under 103 CMR 430.25(1) & (3), he
could have been placed in segregation (higher security),
privileges suspended. i.e. canteen, visitation, tele-
phone, room detention and the loss of a single cell,
or placed in a double-cell.    See Hines v. Gomez,
108 F.3d 265, 269 (9th Cir. 1997)(a prisoner
complained of being double-celled after a long stretch
of being single-celled, and claimed that prison
officials made changes to retaliate for his
agreement to participate in a television interview."

[Pratt v. Rowland, 65 F.3d 802 (9th Cir. 1995)].

In Hines, the Court used the Pratt reasoning, "the injury asserted is the retaliatory accusation's chilling effect on Hines' First Amendment rights, not the additional confinement or the deprivation of the television." Id. at 269. The Court further held that Hines' failure to demonstrate a more substantial injury does not nullify his retaliation claim.

Plaintiff's "retaliation claim requires no more substantial injury than alleged." Id. at 270. See also Sullivan v. Carrick, 888 F.2d 1, 4 (1st Cir. 1989); Abany v. Fridovich, 862 F.Supp. 615, 621 (D.Mass. 1994); citing United States v. Harriss, 347 U.S. 612, 627 (1954)(prior restraints/chilling effect).

c. Casual Connection

"The third element--a casual connection between the protected conduct and the adverse action---needs to be established by the plaintiffs to complete their affirmative case." Thaddeus-X v. Blatter, 175 F.3d 378, 399 (6th Cir. 1999).

On January 14, 2004, Defendant hindered, hampered, and interfered with Plaintiff's research in his case and with others. Defendant went over to where Plaintiff was researching with a friend and said,

"are you going to keep talking or are you going to research." When Plaintiff informed Defendant that is what he was doing, he demanded Plaintiff to move his legal papers and books to another area of the law library. Instead of moving, Plaintiff put the legal books back on the shelf and left with his friend.

On January 15, 2005, the very next day, Plaintiff was discussing an issue with one of Defendant's law clerks, he stuck his head out of his office door and told Plaintiff to "shut-up." Defendant then called Plaintiff into the office and started to yell at him for talking to his law clerks. Defendant told Plaintiff that he did not want to hear his voice everyday. Plaintiff informed Defendant that he has a right to free speech and access to the courts. Defendant then said, "do you want to go there?"

Plaintiff was allowed to leave Defendant's office. Upon leaving the building, Defendant called Plaintiff back to where he was standing with another Correctional officer. Defendant told Plaintiff to "tell him what just happened." Plaintiff said he was soory. Defendant then said he was going to write an incident report for Plaintiff's misbehavior. Plaintiff was allowed to leave the building.

Plaintiff argues that there is a casual connection between the time he informed Defendant that he had a right to free speech and access to the courts, and the time Defendant called Plaintiff over to where he was standing with another Correctional officer and threaten Plaintiff with a ticket, all took place within a three minute span.

The Courts have held that "such temporal proximity between an inmate's lawsuit and disciplinary action may serve as circumstantial evidence of retaliation." See Flaherty v. Coughlin, 713 F.2d 10, 14 (2nd Cir. 1983). See also Harris v. Fleming, 839 F.2d 1232, 1238 (7th Cir. 1998)(timing of litigation and alleged retaliation may be significant), quoting Colon v. Coughlin, 58 F.3d 865, 872 (2nd Cir. 1995).

Additionally, "the adverse action was motivated at least in part by the plaintiff's protected conduct." See Brown v. Crowley, 312 F.3d 782, 790 (6th Cir. 2002).

Plaintiff shows that Defendant's actions in bringing him in front of another Correctional officer and threatening him with a ticket was motivated in part by informing Defendant that Plaintiff has a right to free speech and access to the courts. Defendant's actions demonstrate an evil intent to punish Plaintiff

for simply exercising his constitutional rights to
association, and access to the courts. For instance,
Defendant stuck his head out of office door and told
PLaintiff to "shut-up," and that was not going to
listen to him everyday. Defendant's state of mind is
at issue because the term "shut-up" can be interpreted
reasonably as establishing that [Mongelli's] actions
was not a 'good-faith' effort to maintain or restore
discipline, but rather was done 'maliciously and
sadistically' to cause harm." See Thomas v. Statler,
20 F.3d 298, 302 (7th Cir. 1994), citing Hudson v.
McMillian, 503 U.S. 1, 7 (1992).

In Defendant's answers to Plaintiff's amended
complaint he denied that he told Plaintiff to "shut-up,"
but only said be "quite." In Defendant's answers to
interrogatories he now claims that "I probably did
loudly tell the plaintiff to "shut-up."

Plaintiff argues that he has shown a casual
connection between his protected conduct and Defendant
threatening him with a ticket.

## III. SECTION 1997e(e) DOES NOT APPLY TO PLAINTIFF'S FIRST AMENDMENT CLAIM

Defendant argues that Plaintiff cannot recover
damages on his retaliation claim because he did not

show a "physical injury." (Deft's Mem. at 8). Defendant

further argues that the "undisputed events at issue

did not result in a physical injury, and even if

Plaintiff was distressed when Mongelli told him to be

quite, the PLRA bars his claim for emotional distress."

(Deft's Mem. at 8).

Plaintiff argues that Defendant's position is

defective for the following reasons: One, Plaintiff

never asserted a claim of "mental or emotional" injury.

(See Amended Complaint). See Canell v. Lightner, 143

F.3d 1210, 1213 (9th Cir. 1998). The Court held

that "Canell is not asserting a claim for 'mental or

emotional injury.'" "He is asserting a claim for a

violation of his First Amendment rights." Id. at 1213.

The Court further held that, "the deprivation of First

Amendment rights entitles a plaintiff to judicial

relief wholly aside from any physical injury he can

show, or any mental or emotional injury he may have

incurred." Id. "Therefore, §1997e(e) does not apply

to First Amendment claims regardless of the form of

relief sought." Id.

Defendant's argument that "no showing of physical

injury required for claimed violation of abstract

rights, e.g. free exercise of religion, equal

protection and due process is without merit because
Defendant conveniently left out free of speech and
retaliation as one of those abstract rights.
(Deft's Mem. at 9).

Plaintiff argues that "[i]n the context of First
Amendment claims, the [Court] held explicitly that
prisoners need not allege a physical injury to recover
damages because the deprivation of the constitutional
right is itself a cognizable injury, regardless of
any resulting mental or emotional injury." See
Calhoun v. Detelia, 319 F.3d 936, 940 (7th Cir. 2003);
Rowe v. Shake, 196 F.3d 778, 781-82 (7th Cir. 1999).
See also Searles v. Van Bebber, 251 F.3d 869, 879-81
(10th Cir. 2001) (nominal and punitive damages for
First Amendment violation not barred).

The January 14 and 15, 2004 episodes were not
isolated incidents, in fact, Defendant has been
harassing Plaintiff while researching and helping
others in the law library for years working up to the
retaliation on January 15, 2004. Defendant wants to
argue that the effects of the January 15, 2004,
incident on Plaintiff's freedom of speech [were]
small.  But Plaintiff argues that "there is no
justification for harassing people for exercising
their constitutional rights [and] it need not be

great in order to be actionable." See Bart v. Telford,
677 F.2d 622, 625 (7th Cir. 1982); Rowe v. Shake, 196
F.3d 778, 781 (7th Cir. 1999)(a deprivation of First
Amendment rights standing alone is a cognizable
injury).

Plaintiff argues that he is entitled to damages
on his retaliation claim, and that Defendant Mongelli,
MCI-Norfolk and Bay State Correctional Facility are
no strangers to the courts when it comes to retaliation
toward their inmates for exercising one right or the
other. See Puleio v. Commissioner of Correction, 52
Mass.App.Ct. 302 n.1 (2001). Defendant Mongelli was
named a defendant in this case. Puleio lodged civil
rights claims against Defendant Mongelli for violating
his rights to access to the courts and freedom of
speech, and redressing the courts with his grievances.
Puleio also made a claim of retaliation against
Defendant for complaining about his actions. Id. at 308.
See Murphy v. Cruz, 52 Mass.App.Ct. 314, 317-318
(2001). The record shows that officials at MCI-Norfolk
retaliated against Murphy for exercising his rights
to free speech. See Shabazz v. Cole, 69 F.Supp.2d
177, 197 (D.Mass. 1999). Shabazz was retaliated
against by law librarian who he worked for with a false
disciplinary report for turning her in to her boss for

charging inmates for copying legal documents which is
prohibited by the CMR's.  See also Zimmerman v. Tribble,
226 F.3d 568, 573 (7th Cir. 2000).  Law Librarian
denied access to the law library in retaliation for
Zimmerman complaining about the interference with his
legal mail.

## IV.  PLAINTIFF'S CASE SHOULD GO TO THE JURY AS DEFENDANT'S STATE OF MIND AND CREDIBILITY ARE AT ISSUE

Plaintiff simply argues that the disparity between
his affidavit and Defendant's answers to his amended
complaint, interrogatories, and admissions itself
create a credibility issue that is not readily
amenable to resolution on summary judgment.  See
United States v. Rem, 38 F.3d 634, 644 (2nd Cir. 1994),
quoting Colon v. Coughlin, 58 F.3d 865, 873
(2nd Cir. 1995).

## CONCLUSION

Based on the foregoing arguments, and the reasons
stated herein, Plaintiff respectfully suggests that
this Honorable Court DENY Defendant's Motion For
Summary Judgment.

-22-

Respectfully submitted
by the Plaintiff,

_____
William R. Mitchell, pro-se
P.O. Box 43
Norfolk, MA 02056

Dated: October  , 2006