UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                         )
WILLIAM R. MITCHELL,     )
       Plaintiff,        )
                         )
                         )
    -V-                  )            CIVIL ACTION
                         )         NO. 04-11504-RCL
                         )
WILLIAM D. MONGELLI,     )
       Defendant.        )
                         )
```

PLAINTIFF'S AFFIDAVIT IN SUPPORT OF OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56(e)

I, William R. Mitchell depose and state that everything in this affidavit is true to the best of my knowledge.

1.    My name is William R. Mitchell and I am the author of the record.  I am currently incarcerated at MCI-Norfolk State Prison serving a life sentence.  I am also under the care and custody of the Department of Correction, therefore, I am subjected to the rules and regulations of the Institution.

2.    I swear under the pains and penalties of perjury that the documents attached hereto are a true and accurate copy of DEfendant's answers to my amended complaint, Defendant's answers to amended interrogatories, Defendant's response to request for production of documents, with attachments, and Defendant's response to first request for admissions pursuant to Fed.R.Civ.P. 56(e), and Local Rule 56.1.

3.    I filed this law suit in Federal Court for violations of my constitutionally protected rights to free speech, association, retaliation, and access to the courts.

4.    I am disputing Defendant's Statement of Undisputed Facts at pages 2-4, in support of Defendant's motion for summary judgment.

5.    I have been going to the law library for the last
14 years on a steady bases.  I did my research between
the hours of 1:00 p.m. to either 2:30 or until 3:30 p.m.
(Am Complaint ¶¶11-12).  I began having problems with
law librarian, William D. Mongelli.  I then changed my
research hours to a morning schedule.  After
maintaining these hours for about a year, Defendant
Mongelli became hostile toward me, he made comments
about me working and researching with other inmates.
(Am. Complaint ¶¶11-12).  Defendant Mongelli further
interfered with my legal copying, and he always turned
the machine off just before it was my turn to copy.  And
on other occasions Defendant Mongelli would preclude me
from obtaining legal books in certain parts of the law
library. (Am. Complaint ¶¶11-13).

6.    In Defendant's answers to my amended complaint at
paragraphs 11,12,13, he categorically denied that he
was hostile toward me, that he did not make "subtle
threats" and "innuendos."  Defendant denied that there
was a pattern or practice of arbitrarily denying me
requests for photocopying services.  Defendant completely
denied that he interfered with my legal copying, and
further denies that he engaged in any pattern or practice
of arbitrarily denying me access to the library.

7.    I rebut the fact that Defendant, in paragraph 13,
of my amended complaint, he states he had to tell me to
be quite, but denies library access.  First, Defendant
told me to "shut-up," not be quite.  Second, I did not
state in my amended complaint at paragraph 13, that
Defendant denied me access to the library, I stated
that Defendant said, "you'll never get out of jail." Or,
"are you still here."  "I told you to shut-up or get
out of the library."  And, finally, "why don't you sit
down and shut-up and move all your stuff and sit some
place else, I am sick of listening to you."
(Exhibit "A").

8.    In Defendant's answers to my amended complaint at
paragraphs 14,15,17,18, he categorically denied that
he invoked a campaign of harassment, that his attitude
changed toward me, and that I was forced to leave the
law library, making it appear that I did something wrong.
Defendant completely denied accusations in paragraph 15,
of my amended complaint that he continued his campaign

of harassment and his right out hostility toward me in
front of other inmates in the law library. Defendant
completely denied averments in paragraph 17, of my
amended complaint that between 2003 and 2004, he invoked
another series of calculated harassment toward me for
no other reason, but to interrupt and interfere with my
legal research, thereby, violating my rights to free
speech. Defendant further denied averments in paragraph
18, of my amended complaint that no matter where I was
in the law library or who I was talking to, Defendant
would come out of his office and say something, thereby,
chilling my legal activities. (Exhibit "A").

9.   In Defendant's answers to my amended complaint at
paragraphs 19,20,21,22, he categorically denied that I
informed him that I was getting a Federal book out of
a section of the law library, the corner area.  Defendant
further denies the date on which this particular incident
took place.  Defendant also denied that he told me that
I could not get a legal book out of the corner part of
the law library.  Defendant then denied and that he was
without information about whether or not I was obtaining
a legal book when he told me to get out of the corner
of the law library.  Although I had a legal book in my
hand, and he looked right at it.  Defendant denied all
averments in paragraph 21, of my amended complaint that
he hampered, hindered, and interfered with my legal
research.  Defendant further denied all averments in
paragraph 22, of my amended complaint that on January 14,
2004, while I was in the law library with a friend
researching his criminal case, Defendant came over to
the table where my friend and I were working and said,
"are you going to keep talking or are you going to
research." (Exhibit "A"). (Note: the OIC officer was
standing with Defendant Mongelli when he made this
statement). (Affidavit of Pedro Valentin ¶¶3-4).

10.   In Defendant's answers to my amended complaint at
23,24, he categorically denied that on January 14, 2004,
he told me to take my legal papers and books and go
somewhere else.  Defendant further denied that I put
the legal books away, and left the law library with my
friend at the first movement. (Pedro ¶5).

11.   In Defendant's answers to my amended complaint at
paragraphs 25,26,27, he categorically denied that on
January 15, 2004, he stuck his head out of his office
and told me to "shut-up" and that he was not going to
listen to me everyday.  Defendant further denies that

when he called me in his office, "I told him that I had
a right to free speech."  Defendant also denied the
fact that he became angry when I said this to him, and
then said that he did not want me to talk to his law
clerks anymore.  In paragraph 27, on my amended
complaint Defendant denied that he yelled and screamed
at me when he told me that I could not talk to his law
clerks. (Exhibit "A"). (Affidavit of Emmett S. Muldoon
¶4).  In Defendant's answers to my first set of
interrogatories No. 11, he further denied he told me
not to talk to his law clerks. (Exhibit "B").

12.  In Defendant's answers to my amended complaint at
paragraphs 28,29, he categorically denied that on January
15, 2004, when he called me back from picking up my
Identification card, to where he was standing with a
Correctional officer, he told me that he was going to
write an incident report for my behavior, and that he
tried to get me lugged or removed to higher security.
Compare Defendant's answers to interrogatory No. 15,
where I asked Defendant "when you were yelling at
plaintiff in front of the Correctional officer, it could
get plaintiff lugged to higher security or have a
disciplinary ticket issued? (Exhibit "B").  Defendant
Mongelli answered, "anything is possible, but that was
not my intention." (Exhibit "B").  Defendant further
denied questions in interrogatory No. 17, that he
informed me he was going to write up an incident report.
(Exhibit "B").  Defendant's answer, No. 17, "No, this
did not happen."

13.  Although Defendant claims he had never written a
ticket, all I needed to know is that Defendant Mongelli
works for the Department of Correction and he was
yelling at me in front of a Correctional officer, a
co-worker if you will, and informed me he was going to
write me up for a disciplinary infraction.  This alone
is enough, in the prison setting, to deter or chill a
similarly situated individual of ordinary firmness from
exercising his/her constitutional rights.

14.  I firmly believed that Defendant was going to write
me up, so I stayed out of the law library on days he was
     working, and researched on the weekends.  I further
believed that if I did not apologize at this particular
time, although I don't believe I violated any rules, I
would, in fact, be lugged to higher security and have a
disciplinary ticket issued.  I was chilled in my

regular library activities and now I am curtailed to
the weekends, although Defendant did not bar me from
the law library, I believe that if I continued with my
regular law library activities, I would surely get a
disciplinary ticket from Defendant.  I further believe
that Defendant accomplished what he was set out to do,
and that is get rid of me out of the law library, for
what ever reasons, they are only known to the Defendant.

15.   The record demonstrates that Defendant's conduct
was motivated by an evil intent to stifle me from my
regular law library activities.  Defendant's conduct
is obvious that it was a motivating factor that I
informed him that I had a right to free speech and his
conduct in front of the OIC officer.  Defendant's
actions infringed on my constitutional rights, and his
conduct or actions after I left his officer was, in
fact, retaliatory. (Exhibit "A").  Furthermore, there
was a casual connection between informing Defendant I
had a constitutional right to free speech and calling
me over to where he was standing with a co-employee,
for chastising.  In Defendant's answers to my request
for admissions No. 13, he denied that it was three
minutes from the time I left his office and the time
he brought me to the building officer for admonishment.
(Exhibit "D").

16.   In my 14 years or so in prison I have never received
a disciplinary ticket for misbehaving, and I did not want
to start now. (See Am. Complaint ¶35).  In fact,
Defendant acknowledges this in his answers to my amended
complaint at paragraph 35.  Defendant further admitted
in answers to interrogatory No. 19, that he never had
to write me up for disruptive behavior, loud talking,
or violating a prison rule, regulation, or policy.
(Exhibit "B").  But I never informed Defendant in the
past that I had a right to free speech.

17.   I asked Defendant to admit or deny that I was a
trouble maker only in the law library.  He answered
that he did not have sufficient information or knowledge
to either admit or deny this request in admission No.
14, even in light of his answers to my amended complaint
at paragraph 35, that I have never received a
disciplinary report in 14 years. (Exhibit "D").

18.  In Defendant's answers to my amended complaint at paragraph 31, he categorically denied that on one occasion he threw me out of the law library during non-movement hours because he did not want to hear my "voice" and that he was not in the <u>mood</u>. (Exhibit "A").

19.  In Defendant's answers to my interrogatories No. 4, he denies that he saw or heard me in a conversation with his law clerks.  But yet Defendant answers that I engaged in bolstertous conversation. (Exhibit "B").

20.  In Defendant's answers to my interrogatories No. 6, he denies he wrote a disciplinary report, but that I could have been charged with offense under 103 CMR 430.24(8) "disruptive conduct."  (Exhibit "B").

21.  In Defendant's answers to my request for production of documents No. 1-2, he produced four tickets.  Two disciplinary reports and two were only incident reports. All written against inmates that violated the law library rules.  On November 28, 2001, Defendant wrote up a ticket on one of his own workers for disobeying an order of a staff member and failure to properly perform a work assignment. (Exhibit "C").  On August 5, 2004, 7 months after the incident between Defendant and I, (January 15, 2004) Defendant had written a ticket against another one of his workers for using the copy machine without authority. (Exhibit "C").

22.  On March 22, 2005, Defendant had written an incident report against an inmate for illegal copying contraband materials on the photocopier. (Exhibit "C").  On May 17, 2005, Defendant had written an incident report against two inmates who were carrying on a "loud" conversation. Defendant informed these inmates that they had to leave the law library.  Defendant reported the incident to the OIC SErgeant. (Exhibit "C").

23.  Defendant had written up other inmates in the past for law library violations, but yet he did not write me for my so-called violation.  Defendant claimed that a disciplinary ticket was not warranted in this situation, and that he could have written the ticket himself. Defendant further answered that he did not write a disciplinary ticket me for my behavior because he thought that he could handle it informally. (See interrogatory No. 16)(Exhibit "B").

24.   I believe and the record is clear why Defendant did not write me up for a disciplinary infraction because I did not violate any prison rules, regulations, or policies, as he did with other inmates.  The record is further clear that Defendant is no stranger to writting disciplinary or incident reports for minor infractions. But yet, for some strange reason, he did not write me up for a library infraction.

25.   There is nothing in the record that demonstrates Defendant tried to resolve the two disciplinary reports or the two incident reports.  The inmates violated the rules, and Defendant issued them a ticket, simple.

26.   On May 12, 2006, exactly two years after the incident between Defendant and I, and 10 months after Defendant had written his last ticket that I know of, he issued another disciplinary ticket to an inmate for leaving his legal materials in the law library between non-movement hours (Affidavit of Martin McCauley ¶6). Defendant never tried to resolve this ticket informally or unofficially.  In fact, Mr. McCauley did not know a ticket was even written against him until the next day, on May 13, 2006. (Martin ¶¶3,5).

27.   The record demonstrates that Defendant does have a custom and practice of issuing disciplinary tickets for minor offenses, but yet, he did not issue me a ticket, although he claims that he could have.  In Defendant's answers to request for admissions No. 15, he admitted it was his preference to resolve disciplinary problems in an informal manner. (Exhibit "D").

28.   In Defendant's answers to my requests for admissions No. 17,18, he denied that he tried to resolve the November 28, 2001 and August 5, 2004, March 22, 2005, and May 17, 2005, disciplinary and incident reports because the March 22, 2005 and May 17, 2005 were not written up as disciplinary reports, but yet Defendant does not answer whether or not he tried to resolve the November 28, 2001 and August 5, 2004 tickets informally. (Exhibit "D").

29.   The record is clear that if I was violating any library rule or regulation, Defendant surely would have written me up for an infraction.  There is nothing special about me.

30. In Defendant's answers to my amended complaint at paragraphs 13,25,30, he categorically denied that he told me to "shut-up," but only states that he told me to be "quite."

31. In Defendant's answers to my interrogatories No. 7, he now claims that "I probably did loudly tell the plaintiff to "shut-up." Defendant tries justify why he used the terminology "shut-up" when addressing me in the law library. (Exhibit "B").

32. On June 22, 2004, I was given an affidavit by Francis J. Gallagher. In his affidavit he avers that Defendant, when addressing inmates at work, he uses foul language, and makes derogatory remarks when he asks DEfendant Mongelli for legal supplies. (Affidavit of Francis J. Gallagher ¶¶2-3).

33. Mr. Gallagher's affidavit reflects Defendant's demeanor and his state of mind when dealing with inmates in the law library. The record demonstrates that Defendant, more likely than not, could have engaged in some type of harassment when dealing with me. Especially, while I was working with other inmates, and talking to his law clerks, whether or not I was receiving or giving legal advice.

34. In Defendant's answers to my amended complaint at paragraph 25, he stated that his law clerks where trained law clerks to assist other prisoners with legal research.

35. I believe that Defendant cannot have it both ways. First, Defendant argues in his memorandum of law at pages 5, that I do not have a constitutional right to give or receive legal advice from inmate clerk. But yet, Defendant has a class/program in which he teaches and trains inmates in certain areas of the law, and once an inmate completes the program, inmates can now be hired as law clerks. The law clerk's duties incompuss helping and assisting other inmates in the law library with their legal research.

36. Although I was not giving or receiving legal advice, nor did I claim this anywhere in my complaint, how would I get assistance from Defendant's law clerks if I cannot talk to them.

37.  Defendant's intentions in calling me over to
where he was standing with a Correctional officer are
suspicious, and his motive for his actions are obvious
and closely related to the time I informed him I had
a right to free speech and the time he called me back
to where he was standing with another officer.

38.  I was leaving the building, but Defendant called
me back and placed me in a compromising position, and
in the prison setting, all I could do is apologize,
although I feel I did nothing wrong.
(See Am. Complaint ¶¶26-29).

39.  Although Defendant did not bar me from the law
library, never denied me legal copies, get me moved
from the unit and my cell, or place me in segregation,
or even write a ticket, since the filing of my civil
suit would be foolhardy for Defendant to do anything
different.

40.  The damage was already done on January 15, 2004,
when Defendant tried to get me lugged by the OIC
officer and then threaten me with an incident or
disciplinary report for simply informing Defendant I
had a right to free speech. Whether or not a ticket
was written is not relevant.

41.  The record is clear that Defendant launched a
campaign of harassment over the last three years
leading up to the events that took place on January 14,
15, 2004, and there is simply no legitimate reason for
harassing me for exercising my constitutional rights
to free speech under the First Amendment to the United
States Constitution.

42.  Pursuant to the Prisoners Litigation Reform Act
("PLRA"), and section 1997e(e) bars me from damages
on mental or emotional injury, except for abstract
rights. e.g. free exercise of religion, equal
protection, and due process.  Abstract rights also
encompass free speech and ones right to association.
Although Defendant argues that I did not suffer an
emotional or physical injury, I do not have to show
actual injury for violations of the First Amendment
rights to free speech and association because a
violation or interference with the First Amendment, in
and of itself, is the damage.

-10-

43.  I believe that there is a genuine issue of material
fact in dispute and that Defendant is not entitled to
summary judgment as a matter of law.  The case should
go to the jury because credibility and state of mind
are at issue.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY

ON THIS 3 DAY OF OCTOBER, 2006.

Signed by
the Affiant,

William R. Mitchell
P.O. Box 43
Norfolk, MA 02056

"A"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM R. MITCHELL,                           No. 04-cv-11504-RCL

Plaintiff,

v.

WILLIAM D. MONGELLI,

Defendant.

## ANSWER TO THE AMENDED COMPLAINT
## AND DEMAND FOR JURY TRIAL

The defendant, William D. Mongelli, answers the allegations of
the Amended Complaint, paragraph by paragraph, as follows:

The first unnumbered paragraph is an introductory statement to
which no responsive pleading is required. To the extent that
factual allegations are contained therein, the defendant
denies them.

1. This paragraph is a jurisdictional statement for which no
   responsive pleading is required. To the extent that factual
   allegations are contained therein, the defendant denies
   them.

2. The paragraph is a statement of venue for which no
   responsive pleading is required. To the extent that factual
   allegations are contained therein, the defendant denies
   them.

3. Admit.

4. The defendant admits that he is the librarian for MCI-
   Norfolk at the address alleged, but he neither admits nor

2

denies the capacity in which he is being sued.

5. Admit.

6. Admit.

7. The defendant admits that the plaintiff was subsequently classified to MCI-Norfolk, but denies that the plaintiff was classified there for the duration of his sentence.

8. The defendant admits that the Massachusetts Appeals Court affirmed the plaintiff's conviction in 1995, Commonwealth v. Mitchell, 646 N.E.2d 1073, but he is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph.

9. The defendant admits that he knows the plaintiff, but he is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph.

10. The defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph.

11. The defendant admits that the plaintiff attended the prison library on a fairly regular basis in the past, but he denies that the defendant was hostile towards the plaintiff and further denies that the defendant made "subtle threats and innuendos." The defendant admits that, as the prison librarian, he was required to conduct a cursory review of prisoners' legal papers before approving them to be

3

photocopied, but he denies that there was any pattern or practice of arbitrarily denying the plaintiff's requests for photocopying services. The defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph.

12. Deny.

13. The defendant admits that he spoke with the plaintiff on occasion and sometimes had to tell him to be quiet while in the library, but he denies that he engaged in any pattern or practice of arbitrarily denying the plaintiff's access to the library.

14. Deny.

15. Deny.

16. Deny.

17. Deny.

18. Deny.

19. The defendant admits that prisoners are not permitted to congregate in corners of the library where their actions cannot be monitored, and that he sometimes must tell them to move, but he is without knowledge or information sufficient to admit or deny whether this occurred with the plaintiff in September "on or around 2003."

20. The defendant is without knowledge or information sufficient to form a belief as to the truth of the

4

averments contained in this paragraph.

21.The defendant is without knowledge or information sufficient to admit or deny whether the plaintiff filed his petition on time, and he denies the remaining allegations contained in this paragraph.

22.The defendant admits that prisoners are permitted to quietly converse in the library and that loud and disruptive conduct is prohibited, but he is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph.

23.The defendant admits that he has on occasion had to tell prisoners, including the plaintiff, to be quiet while in the library, but he denies the remaining averments contained in this paragraph.

24.The defendant is without knowledge or information sufficient to admit or deny the averments contained in this paragraph.

25.The defendant admits that some prisoners are hired and trained as law clerks to assist other prisoners with legal research. The defendant further admits that he has on occasion called certain prisoners, including the plaintiff, into his office to speak with them about inappropriate behavior in the library, but he is without knowledge or information sufficient to admit or deny the remaining

5

averments contained in this paragraph.

26. Deny.

27. Deny.

28. The defendant admits that the plaintiff would have picked up his inmate identification card upon leaving the library and that the Officer in Charge (OIC) may have been present when he spoke with the plaintiff, but the defendant denies that he wrote a report regarding any incident pertaining to the plaintiff on January 15, 2004.

29. Deny.

30. The defendant admits that the photocopy machine is generally not in operation on Saturdays and Sundays, since he supervises its operation, and the defendant's job does not require him to work on weekends. The defendant denies that the plaintiff cannot obtain legal supplies, but admits that the plaintiff must personally request supplies from the librarian. The defendant is without knowledge or information sufficient to admit or deny the remaining averments contained in this paragraph.

31. The defendant admits that he has had to ask the plaintiff on occasion to be quiet while in the library, but he denies the remaining averments contained in this paragraph.

32. The defendant admits that the plaintiff filed a grievance and, further answering, states that the document speaks for itself.

6

33. The defendant admits that the plaintiff's grievance was denied and, further answering, states that the document speaks for itself.

34. The defendant admits that the plaintiff appealed his grievance and, further answering, states that the document speaks for itself.

35. The defendant admits that, to his knowledge, the plaintiff has never received a formal disciplinary report for any misbehavior while in the law library at MCI-Norfolk. The defendant further states that the document to which the plaintiff refers in this paragraph speaks for itself.

36. The defendant admits that the plaintiff's appeal was denied and, further answering, states that the document speaks for itself.

37. The defendant admits that the plaintiff further appealed the denial of his grievance to the Department grievance coordinator and, further answering, states that the document speaks for itself.

38. The defendant states that the document to which the plaintiff refers speaks for itself.

39. The defendant is without knowledge or information sufficient to admit or deny the averments contained in this paragraph.

40. The defendant admits that the plaintiff's appeal was denied by the Department grievance coordinator and, further

7

answering, states that the document speaks for itself.

41. Deny.

42. The defendant hereby repeats his answers to paragraphs 1 through 41 as set forth herein.

43. The averments contained in this paragraph are conclusions of law which do not require a response. To the extent that factual allegations are made, the defendant denies them.

44. The defendant hereby repeats his answers to paragraphs 1 through 41 as set forth herein.

45. The averments contained in this paragraph are conclusions of law which do not require a response. To the extent that factual allegations are made, the defendant denies them.

46. The defendant hereby repeats his answers to paragraphs 1 through 41 as set forth herein.

47. The averments contained in this paragraph are conclusions of law which do not require a response. To the extent that factual allegations are made, the defendant denies them.

48. The defendant hereby repeats his answers to paragraphs 1 through 41 as set forth herein.

49. The averments contained in this paragraph are conclusions of law which do not require a response. To the extent that factual allegations are made, the defendant denies them.

50. The defendant hereby repeats his answers to paragraphs 1

60. The defendant hereby repeats his answers to paragraphs 1 through 41 as set forth herein.

61. The averments contained in this paragraph are conclusions of law which do not require a response. To the extent that factual allegations are made, the defendant denies them.

## Prayers for Relief

The defendant opposes each and every request for relief sought by the plaintiff.

## Affirmative Defenses

The defendant raises the following affirmative defenses:

1.  The complaint fails to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6).

2.  The complaint is barred by the applicable statute of limitations.

3.  The complaint is barred by the doctrine of laches.

4.  The complaint is barred by the plaintiff's failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997(e)(a).

5.  Because of his acts or omissions, the plaintiff has waived any claims he might have against the defendant for any of the matters asserted.

6.  Because of his acts or omissions, the plaintiff is estopped from raising any claims he might have against the defendant for any of the matters asserted.

7.   The defendant is protected by qualified immunity from suit, and all of his actions were within his qualified immunity. The defendant's conduct at all relevant times was reasonable, in good faith, without malice or corruption, within the scope of his authority and not in disregard of settled principles of law.

8.   The defendant is not responsible for any injuries allegedly suffered by the plaintiff, if any injury in fact occurred.

Jury Demand

The defendant demands a trial by jury on all issues so triable.

                         WILLIAM D. MONGELLI

                         By his attorney,

                         NANCY ANKERS WHITE
                         Special Assistant Attorney General

Date: May 26, 2005       /s/ DAVID J. RENTSCH
                         David J. Rentsch, Counsel
                         Legal Division
                         Department of Correction
                         70 Franklin Street, Suite 600
                         Boston, MA  02110-1300
                         (617) 727-3300, ext. 142
                         BBO #544926

## CERTIFICATE OF SERVICE

I, David J. Rentsch, certify that on this day I mailed a copy of the foregoing paper to William R. Mitchell, pro se, by first class mail, postage pre-paid, at MCI-Norfolk, P.O. Box 43, Norfolk, MA  02056.

Date: May 26, 2005       /s/ DAVID J. RENTSCH
                         David J. Rentsch

"B"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM R. MITCHELL,

        Plaintiff,                    C.A. No. 04-11504-RCL

        v.

WILLIAM D. MONGELLI,

        Defendant.

## **ANSWERS TO THE PLAINTIFF'S AMENDED**
## **INTERROGATORIES TO THE DEFENDANT, WILLIAM D. MONGELLI**

Interrogatory No. 1
        Please state your full name and job description fully and
in complete detail for the record.  And describe fully and in
complete detail any and all your curriculum, including, but not
limited to, any special courses or training in the field of law
librarian or general librarian.

Answer No. 1
        William Mongelli. I am the librarian at MCI-Norfolk. In
general, my duties are to plan, direct and supervise the
programs and services of the institution library by applying
standard library procedures to serve the needs of the
institution's inmates. I obtained a Bachelor of Arts (B.A.)
degree in 1982 and a Masters in Library Science (M.L.S.) degree
in 1986.

Interrogatory No. 2
        Please describe fully and in complete detail any and all
training you received by the Department of Correction prior,
during, or after you were hired directly related to your job.

Answer No. 2
        After I was hired by the Department of Correction in 1986,
I underwent four weeks of training at MCI-Cedar Junction in
Walpole. Since then, I have taken 40 hours of in-service
training each year as offered and required by the Department of
Correction.

Interrogatory No. 2a
    How long have you been employed by the Department of
Correction as a law librarian or general librarian?

Answer No. 2a
    Since October 1986.

Interrogatory No. 3
    Please describe fully and in complete detail if you have
ever written any papers, journals, speeches, or books, etc.,
whether it was in your private, individual or official capacity
within the last ten (10) years. If so, please describe fully and
in complete detail what those papers, journals, speeches, or
books are.

Answer No. 3
    I authored a book, entitled "CONSENTRATING ON THE LAW: A
Program Of Self-Directed Legal Research For Prison Course
Givers." It is published by F&W Associates, and the book is
available for purchase through LMC Source, 358 South 700 East
#B305, Salt Lake City, UT 84102. I wrote the book in my private
capacity in 2001.

Interrogatory No. 4
    Please describe fully and in complete detail that on
January 15, 2005, at the 10:30 a.m. movement, did you have an
occasion of seeing or hearing plaintiff engaging in a
conversation with one of your law clerks?

Answer No. 4
    No, I did not. In the plaintiff's amended complaint, he
claims that this incident occurred on January 15, 2004. While I
don't have an independent memory of that specific incident, I do
remember that the plaintiff would sometimes engage in boisterous
conversations with other inmates, including inmate law clerks,
in the library. On more than one occasion I had to remind the
plaintiff that he was in a library and that he should use a
quieter tone of voice so that he would not distract other
library patrons.

Interrogatory No. 5
    Please describe fully and in complete detail if you heard
what the conversation was about? If so, please describe fully
and in complete detail the substance of that conversation.

Answer No. 5

Again, if the question is whether I heard such a conversation on January 15, 2005, the answer is "no." Regarding the 2004 incident, I don't have a specific memory of the substance of the plaintiff's conversation, but I distinctly remember that the tone and volume of the plaintiff's voice was disruptive and interfered with the tranquility of the library environment.

Interrogatory No. 6

Please describe fully and in complete detail if plaintiff was violating any prison or law library rule, regulation, or policy while engaging in his conversation?  If so, please describe fully and in complete detail what those violations were.

Answer No. 6

Although I did not write a disciplinary report against the plaintiff, he could have been charged with a violation of the code of offenses, which at the time were contained in 103 CMR 430.00 *et seq.* (1993). Specifically, 103 CMR 430.24(8) prohibited conduct which disrupts or interferes with the security or orderly running of the institution. In addition, it is universally recognized that a library is a place of quiet study, and the plaintiff broke this unwritten rule of behavior.

Interrogatory No. 7

Please describe fully and in complete detail that on January 15, 2005, just before the 10:30 a.m. movement, and while plaintiff was engaged in a conversation with one of your law clerks, did you stick your head out of your office and yell at plaintiff to "shut-up?" If so, please describe fully and in complete detail why.

Answer No. 7

Again, my answer is "no" because I don't believe that this happened in 2005. With respect to the 2004 incident, I probably did loudly tell the plaintiff to "shut-up." I did this because I had already reminded the plaintiff on prior occasions to lower his voice in the library, and the fact that he ignored my prior admonishments provoked this response. I used a loud voice to convey my instructions so as to ensure that the plaintiff would hear and understand.

Interrogatory No. 8

Please describe fully and in complete detail if plaintiff informed you that he had a right to free speech?

Answer No. 8

If the question is whether the plaintiff said this to me on January 15, 2005, the answer is "no" because I don't believe we had this conversation in 2005. I don't remember whether the plaintiff said this to me during 2004.

Interrogatory No. 9

Please describe fully and in complete detail if you called plaintiff into your office and yelled at him?

Answer No. 9

I did not do this on January 15, 2005. I probably did call the plaintiff into my office during the 2004 incident because that is my custom and practice in that type of situation. I don't have an independent memory of that specific occasion.

Interrogatory No. 10

Please describe fully and in complete detail when plaintiff informed you that he had a right to free speech, did you become angry and start to scold plaintiff?

Answer No. 10

No, I did not do this on January 15, 2005. During 2004, I did have to speak with the plaintiff on several occasions to remind him about proper library decorum and to request that he lower his voice. If the plaintiff's response was that he had a right to free speech, I would have acknowledged this but informed him that other inmates have a right to a library environment free of loud distractions. To the extent that the plaintiff considers this a "scolding," it was.

Interrogatory No. 11

Please describe fully and in complete detail if you informed plaintiff that he could no longer speak to your law clerks? If so, please describe fully and in complete detail why.

Answer No. 11

I never told the plaintiff, in 2004, 2005, or at any other time, that he could not speak with the inmate law clerks. I told the plaintiff on several occasions that when he spoke to anyone

in the library, he should use a conversational tone appropriate for that environment. Moreover, I instructed him to refrain from engaging in loud, boisterous conversations that were disruptive and distracted others in the library.

### Interrogatory No. 12

Please describe fully and in complete detail if plaintiff then informed you that he had a right to access to the courts?

### Answer No. 12

I don't recall that the plaintiff said that. He certainly did not say this on January 15, 2005, if that is the question.

### Interrogatory No. 13

Please describe fully and in complete detail if you became more angry with what plaintiff said, and if you stated the phrase, "do you want to go there?" If so, please describe fully and in complete detail why.

### Answer No. 13

This did not happen on January 15, 2005. During one of my conversations with the plaintiff in 2004, I may have become angry with him because he appeared to be unwilling to comply with my instructions about using the proper tone of voice while in the library. In my estimation, the plaintiff was interfering with the right of other inmates to use the library as a place of quiet study. Because I felt that the plaintiff's conduct was disruptive, and he appeared not to understand or care about this, I probably did become angry with him. As I stated previously, I had to use a loud voice in this situation in order to ensure that the plaintiff heard and understood my instructions.

### Interrogatory No. 14

Please describe fully and in complete detail that on January 15, 2005, at the 10:30 a.m. movement, and upon plaintiff leaving the law library, did you call plaintiff over to where you were standing with a correctional officer and start yelling at plaintiff in front of this officer? If so, please describe fully and in complete detail why.

### Answer No. 14

This did not happen on January 15, 2005. If the plaintiff is asking whether a correctional officer was present during our

conversation in 2004, the answer is "yes." The officer-in-charge
(OIC) would have been present in or near the library for
security purposes. If the plaintiff perceived that I spoke to
him in front of the officer in a loud tone of voice, it was
because I had already reminded the plaintiff at least twice
before to lower his voice while in the library. As I stated in
previous answers, I felt that I had to use a loud voice under
the circumstances to ensure that the plaintiff heard and
understood my instructions to him.

Interrogatory No. 15

Please describe fully and in complete detail that when you
were yelling at plaintiff in front of the correctional officer,
it could get plaintiff lugged to higher security or have a
disciplinary ticket issued.

Answer No. 15

Anything is possible, but that was not my intention.

Interrogatory No. 16

Please describe fully and in complete detail when you were
yelling at plaintiff in front of the correctional officer, were
you trying to get plaintiff lugged to higher security or have a
disciplinary ticket issued? If so, please describe fully and in
complete detail why.

Answer No. 16

No. If I had determined that a disciplinary ticket was
warranted in this situation, I could have written the ticket
myself. I did not write a disciplinary ticket against the
plaintiff for his behavior because I thought that the
appropriate course was to handle the matter informally.

Interrogatory No. 17

Please describe fully and in complete detail if you
informed plaintiff after he apologized to you that you were
going to write up an incident report. If so, please describe
fully and in complete detail why.

Answer No. 17

No, this did not happen.

### Interrogatory No. 18

Please describe fully and in complete detail if you have any knowledge that chastising plaintiff in front of the correctional officer or informing plaintiff that you were going to write up an incident report because plaintiff informed you that he was engaging in or exercising his constitutionally protected rights would violate the constitution?

### Answer No. 18

**OBJECTION BY COUNSEL:** Counsel objects on the basis that the question is incomprehensible and vague. Counsel further objects as this question appears to ask the witness to draw a legal conclusion.

### Interrogatory No. 19

Please describe fully and in complete detail if you have ever written a disciplinary ticket up for plaintiff because of disruptive behavior, loud talking, or violating a prison rule, regulation, or policy? If so, please describe fully and in complete detail when and why.

### Answer No. 19

No, I have not. Each incident where the plaintiff showed a lack of regard for library decorum was handled informally, and therefore no formal disciplinary report was written.

### Interrogatory No. 20

Please describe fully and in complete detail if you had written up any other inmate in the law library for disruptive behavior, loud talking, or violating a prison rule, regulation, or policy? If so, please describe fully and in complete detail when, who, and why.

### Answer No. 20

**OBJECTION BY COUNSEL:** Counsel objects on the basis that the question is vague, overbroad, unduly burdensome, irrelevant to the subject matter involved in this action, not reasonably calculated to lead to the discovery of admissible evidence, and is otherwise outside the scope of permissible discovery under Mass. R. Civ. P. 26(b). Counsel further objects to this question to the extent that it seeks information protected by the Criminal Offender Record Information Act ("CORI"), G.L. c. 6, § 167 et seq.

Notwithstanding this objection, and without waiver thereof, the defendant answers as follows: Yes, I have written disciplinary reports against other inmates for rule infractions related to the library. My attorney will provide you with copies of the relevant documents.

Signed under the pains and penalties of perjury on

this __19ᵗʰ__ day of __APRIL__, 2006.

William R. Mongelli

As to objections:

David J. Rentsch, Counsel
Legal Division
Department of Correction
70 Franklin Street, Suite 600
Boston, MA   02110-1300
(617)727-3300, ext. 142
BBO# 544926

"C"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM R. MITCHELL,                          C.A. No. 04-11504-RCL

    Plaintiff,

    v.

WILLIAM D. MONGELLI,

    Defendant.

## **DEFENDANT'S RESPONSE TO THE**
## **PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS**

Request No. 1

    Any and all disciplinary reports, incident reports, signed
or unsigned, written against all and any of the Defendant's
workers within the last five (5) years. i.e. Clerk's, Stock
Clerk's, etc.

Response No. 1

**OBJECTION:** Defendant objects to this request as it seeks
information protected by the Criminal Offender Record
Information Act ("CORI"), G.L. c. 6, § 167 et seq. In addition,
this request is vague, unduly burdensome, overly broad,
irrelevant to the subject matter involved in this action, and
not reasonably calculated to lead to the discovery of admissible
evidence.

    Notwithstanding this objection, and without waiver thereof,
the defendant herewith produces documents #01-03.

Request No. 2

    Any and all disciplinary reports, incident reports, signed
or unsigned, written against all and any inmate in the general
population and/or while in the law library and/or general (sic)
within the last five (5) years. i.e. any inmate in the library.

Response No. 2

**OBJECTION:** Defendant objects to this request as it seeks
information protected by the Criminal Offender Record
Information Act ("CORI"), G.L. c. 6, § 167 et seq. In addition,

this request is vague, unduly burdensome, overly broad,
irrelevant to the subject matter involved in this action, and
not reasonably calculated to lead to the discovery of admissible
evidence.

Notwithstanding this objection, and without waiver thereof, the
defendant herewith produces documents #04-05.


Request No. 3
       Any and all complaints, law suits, signed or unsigned,
settled or unsettled, that have been filed against Defendant
within the last five (5) years.


Response No. 3

**OBJECTION:** Defendant objects to this request as vague, unduly
burdensome, overly broad, irrelevant to the subject matter
involved in this action, and not reasonably calculated to lead
to the discovery of admissible evidence.

       Notwithstanding the above objection, and without waiver
thereof, the plaintiff may refer to the case of Puleio v.
Commissioner of Correction, et al., 52 Mass. App. Ct. 302
(2001), rev. denied, 435 Mass. 1105, in which Mr. Mongelli was a
defendant. The complaint in that case may be obtained from the
clerk of the Suffolk Superior Court, Docket No. SUCV1997-01454.


Request No. 4
       Any and all papers, journals, speeches, and/or books
written by Defendant within the last ten (10) years.


Response No. 4

**OBJECTION:** Defendant objects to this request as vague, unduly
burdensome, overly broad, irrelevant to the subject matter
involved in this action, and not reasonably calculated to lead
to the discovery of admissible evidence.

       Notwithstanding the above objection, and without waiver
thereof, the plaintiff may refer to Mr. Mongelli's book,
"CONSENTRATING ON THE LAW: A Program Of Self-Directed Legal
Research For Prison Course Givers." The book is published by F&W
Associates, and is available for purchase through LMC Source,
358 South 700 East #B305, Salt Lake City, UT 84102.

Page 2

**M.C.I. NORFOLK**

Form A

**MASSACHUSETTS DEPARTMENT OF CORRECTION**

### DISCIPLINARY REPORT

INMATE ▇▇▇▇▇   I.D. NO. ▇▇▇▇▇   HOUSING UNIT ▇▇▇

DATE **NOV 2 8 2001**   D-REPORT NO. _01-0762_

1- DISOBEYING AN ORDER OF A STAFF MEMBER
OFFENSE                                   CODE NO.
5- WILLFUL FAILURE TO PROPERLY PERFORM A WORK ASSIGNMENT
   MINOR_____   MAJOR_____   REFERRED TO DISTRICT ATTORNEY_____

### DESCRIPTION OF OFFENSE

I THEN PLACED THE ORIGINALS AND COPIES IN A MANILA
ENVELOPE AND BROUGHT THEM TO SGT. TONY LANGILLE IN THE
S.I.C. OFFICE. DURING MY DISCUSSION WITH SGT. LANGILLE ABOUT
THIS MATERIAL I REMEMBERED THAT I HAD SPOKEN WITH INMATE
▇▇▇▇ ON TWO PREVIOUS OCCASIONS IN MY OFFICE BEHIND
CLOSED DOORS ABOUT SOME OTHER NON-LEGAL MATERIAL WHICH
DISCOVERED INMATE ▇▇▇▇ COPYING, AND MAKING IT CLEAR
5 INMATE ▇▇▇▇ THAT SUCH BEHAVIOR WOULD NOT BE
TOLERATED IN THE FUTURE.

INMATE ▇▇▇▇ IS WELL AWARE OF INSTITUTION RULES
FORBIDDING THE COPYING OF NON-LEGAL MATERIAL ON THE
LAW LIBRARY PHOTOCOPIER.

HAS INMATE BEEN PLACED ON AWAITING ACTION STATUS?   SHIFT ◯ 8:30 AM — 4:30 PM

YES __✓__  NO _____   DAYS OFF SAT / SUN

REPORTING STAFF PERSON'S SIGNATURE _William D. Maxwell_

SHIFT COMMANDER'S SIGNATURE _Capt. John Downs_  11pm  11/28

DISCIPLINARY OFFICER'S SIGNATURE _B. Jutras_

FINDING AND SANCTION, IF ANY_____
                         (transcribed from disciplinary hearing if major matter)

APPEAL RESULTS_____

REVIEWING AUTHORITY_____   DATE:_____

2

Form A

48001

### M.C.I. NORFOLK

### MASSACHUSETTS DEPARTMENT OF CORRECTION

### DISCIPLINARY REPORT

INMATE ████████     I.D. NO ████     HOUSING UNIT ████

DATE 8-5-04     D-REPORT NO. 04-0458

OFFENSE #5 #8     CODE NO._____

MINOR,_____   MAJOR __✓__   REFERRED TO DISTRICT ATTORNEY____

### DESCRIPTION OF OFFENSE

ON THURSDAY, AUGUST 5, 2004, AT APPROXIMATELY 10 $\frac{30}{AM}$, UPON RETURNING TO MY OFFICE, I NOTICED NEW CLERK ████████ ████ OPERATING THE PHOTOCOPIER. THE PHOTOCOPY DUTIES HAD BEEN ASSIGNED TO INMATES ████████ THAT MORNING. WHEN I ASKED INMATE ████ WHAT HE WAS DOING, INMATE ████ SAID " HE HAD A JAM AND I WAS HELPING HIM OUT." WHEN I EXAMINED THE PAPERS INMATE ████ WAS AT THAT MOMENT COPYING, I REALIZED IT WAS SEVERAL PAGES OF POETRY. (SEE ATTACHED)

INMATE ████ HAS WORKED FOR ME FOR SEVERAL YEARS AND IS WELL AWARE THAT HE IS NOT TO OPERATE THE LIBRARY COPIER UNLESS AUTHORIZED BY ME, AND THAT COPYING OF NON-LEGAL MATERIAL IS PROHIBITED.

HAS INMATE BEEN PLACED ON AWAITING ACTION STATUS?

SHIFT 8 $\frac{30}{PM}$ - 4 $\frac{30}{PM}$

YES __✓__   NO _____     DAYS OFF S/S

REPORTING STAFF PERSON'S SIGNATURE _____ WILLIAM D. MONGELLI

SHIFT COMMANDER'S SIGNATURE _____ Capt. Wm Deenise 8/5 12 N

DISCIPLINARY OFFICER'S SIGNATURE _____

FINDING AND SANCTION, IF ANY _____ Gm 5 Dismiss 8
(transcribed from disciplinary hearing if major matter)

RTM 12 hrs x-duty los of job

APPEAL RESULTS __Appeal denied 10/28/04__

REVIEWING AUTHORITY _____   DATE: 11/1/05

3

# COMMONWEALTH OF MASSACHUSETTS

## DEPARTMENT OF CORRECTION

### MCI NORFOLK
### INCIDENT REPORT

**Incident Report # :** 158114    **Incident Time :** 16:19    **Date:** 03/22/2005    **Place Occurred:** Law Library

**Codes & Subject :** INMATE RELATED    Suspicious Activity

**Reported By** : Mongelli William D Librarian    **Department:** Treatment    **Reported Date:** 03/22/2005

**Description** : On Tuesday, March 22, 2005, at approximately 2:00PM, I noticed inmate ▮▮▮▮▮▮▮ stapling what appeared to be a photocopy of a book catalogue. I asked inmate ▮▮▮▮ if he had the catalogue photocopied on the law library copier, and inmate ▮▮▮▮ said yes. Upon inspection, I noticed that this catalogue was from Eden Press and entitled "Privacy Catalogue." Looking through the catalogue I noticed titles such as "Revenge," "Revenge Encyclopedia," "How To Find Anyone Anywhere," and "How To Get Anything On Anybody." I reminded inmate ▮▮▮▮ that only legal documents are permitted to be copied on the law library copier, and confiscated the original catalogue and the three (3) copies of the catalogue he had made. I took the information to OIC Sgt. James Belair, who examined the information and recommended that I write this Incident Report and submit the photocopied catalogues in a manila envelope as evidence. --- EOR

| Person Type | Commit No | Name | Housing Unit |
|---|---|---|---|
| Inmate | ▮▮▮▮ | ▮▮▮▮▮▮ | |

**Entered By:** Mongelli William D Librarian

**Supervisor :** Hamm Michael H CO III    **Date:** 03/22/2005

**Comments :** items placed in evidence, D-report will be summitted on 200503

**Shift Commander:** Rego Andrew B    **Date:** 03/22/2005

**Comments :**

4

# COMMONWEALTH OF MASSACHUSETTS

## DEPARTMENT OF CORRECTION

### MCI NORFOLK
### INCIDENT REPORT

**Incident Report # :** 172811    **Incident Time :** 11:21    **Date:** 05/17/2005    **Place Occurred:**    Law Library

**Codes & Subject :** INMATE RELATED    Suspicious

**Reported By**    : Mongelli William D  Librarian    **Department:** Treatment    **Reported Date:** 05/17/2005

**Description**    : On Tuesday, May 17, 2005, at approximately 9:00am, I was entering the user code into the photocopier to begin the 9-10:30 copy shift. I noticed inmates███████ and███████████having a loud conversation; all other inmates in the room (approximately 12) were quietly studying. I told inmates███ and███ to lower their voices, and they complied. Then an inmate who was standing opposite me across the copy counter asked me a question. As I was talking with this inmate, I noticed that inmates███ and████ were ignoring my earlier directive to speak quietly and had returned to their disruptive talking, to the point where I could no longer hear the inmate I was speaking with. I approached inmates███ and███████ told them they were disrupting the law law library, and directed them to gather their things and leave. I reported this incident to OIC Clerk Daniel Mingola, who ensured that these inmates exited the OIC building. --EOR--

| Person Type | Commit No | Name | Housing Unit |
|---|---|---|---|
| Inmate | ███ | | ███ |
| Inmate | ███ | ███████ | ███ |
| Staff | | Mongelli William D | |

**Entered By:**    Mongelli William D  Librarian

**Supervisor :**    **Date:**

**Comments :**

**Shift Commander:**    **Date:**

**Comments :**

5

"D"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM R. MITCHELL,

      Plaintiff,              C.A. No. 04-11504-RCL

      v.

WILLIAM D. MONGELLI,

      Defendant.

## DEFENDANT WILLIAM D. MONGELLI'S RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS

REQUEST NO. 1
      Admit or Deny You authored your book, "CONSENTRATING ON THE LAW:" with the prisoner in mind.

RESPONSE NO. 1
      Deny.

REQUEST NO. 2
      Admit or Deny.  Your book contains "segments, paragraphs, chapters, or sections" of writings on the First and 14th Amendments to the United States Constitution.

RESPONSE NO. 2
      Admit.

REQUEST NO. 3
      Admit or Deny.  Your book contains "segments, paragraphs, chapters, or sections" of writings pursuant to the Freedom of Speech and Access to the Courts.

RESPONSE NO. 3
      Deny that the book has content on freedom of speech, but admit that it has content on access to the courts.

REQUEST NO. 4
      Admit or Deny.  Your book contains "segments, paragraphs, chapters, or sections" of writings as to what would constitute a violation of the First Amendment right to free speech and the 14th Amendment right to access to the courts.

RESPONSE NO. 4
Deny that the book has content on freedom of speech, but admit that it has content on access to the courts.

REQUEST NO. 5
Admit or Deny. Your book contains "segments, paragraphs, chapters, or sections of writings as to what would constitute retaliation by Federal and State Government, any agency, or work place for exercising the First and 14th Amendments to freedom of speech and access to the courts.

RESPONSE NO. 5
Deny.

REQUEST NO. 6
Admit or Deny. You have personal knowledge of what would constitute a violation of the First and 14th Amendments to the United States Constitution.

RESPONSE NO. 6
Deny.

REQUEST NO. 7
Admit or Deny. You have personal knowledge that adverse behavior by Federal and States Government, any agency, or work place for exercising the First and 14th Amendments to the United States Constitution could qualify as retaliation.

RESPONSE NO. 7
Deny.

REQUEST NO. 8
Admit or Deny. On or around 1997, you were named a defendant in a civil rights action pursuant to 42 U.S.C. §1983, in Puleio v. Commissioner of Correction, et al., Docket Number 1997-01454.

RESPONSE NO. 8
Admit.

REQUEST NO. 9
Admit or Deny. You were named a defendant because you violated the plaintiff Puleio's First and 14th Amendment rights to free speech and access to the courts.

RESPONSE NO. 9
Deny.

REQUEST NO. 10
     Admit or Deny.  You withheld legal materials from plaintiff
Puleio while he was in the segregation unit waiting action on a
disciplinary ticket.

RESPONSE NO. 10
     Deny.

REQUEST NO. 11
     Admit or Deny.  On January 15, 2004, you had written a
disciplinary report against plaintiff for violating 103 CMR
430.24(8), disruptive behavior in the law library.

RESPONSE NO. 11
     Deny.

REQUEST NO. 12 (first)
     Admit or Deny.  On January 15, 2004, you brought plaintiff
to the building officer for admonishments for violating 103 CMR
430.24(8).

RESPONSE NO. 12 (first)
     Deny.

REQUEST NO. 12 (second)
     Admit or Deny.  On January 15, 2004, you informed plaintiff
that you were going to write an "incident" report against him
for violating 103 CMR 430.23(8).

RESPONSE NO. 12 (second)
     Deny.

REQUEST NO. 13
     Admit or Deny.  It was three minutes from the time
plaintiff left your office and the time you brought him to the
building officer for admonishment.

RESPONSE NO. 13
     Deny.

REQUEST NO. 14
     Admit or Deny.  Plaintiff is only a disciplinary problem in
the law library.

RESPONSE NO. 14
     I do not have sufficient information or knowledge to either
admit or deny this request.

REQUEST NO. 15
    Admit or Deny.  You have a custom or policy of settling disciplinary problems unofficially.

RESPONSE NO. 15
    Admit that it my preference to resolve disciplinary problems in an informal manner.

REQUEST NO. 16
    Admit or Deny.  On November 28, 2001, August 5, 2004, March 22, 2005, and May 17, 2005, you had written (4) disciplinary and incident reports for violations of the law library rule and regulations.

RESPONSE NO. 16
    Admit.

REQUEST NO. 17
    Admit or Deny.  On November 28, 2001, August 5, 2004, March 22, 2005, and May 17, 2005, you tried to resolve these disciplinary reports informally or unofficially.

RESPONSE NO. 17
    Deny. Further answering, the incidents of March 22, 2005 and May 17, 2005 were not written up as disciplinary reports.

REQUEST NO. 18
    Admit or Deny.  On May 17, 2005, you had written only one ticket against two individuals for disruptive behavior pursuant to 103 CMR 430.23(8).

RESPONSE NO. 18
    Deny.

REQUEST NO. 19
    Admit or Deny.  On November 28, 2001, August 5, 2004, March 22, 2005, you had written (3) other disciplinary or incident reports for individuals violating the photocopying machine policies.

RESPONSE NO. 19
    Admit.

REQUEST NO. 20
    Admit or Deny.  You have written other disciplinary or incident reports since request for production of documents dated April 24, 2006 were made.

RESPONSE NO. 20
    Admit.


    Signed under the pains and penalties of perjury on
this  30ᵀᴴ  day of June, 2006.


William D. Monuelli

Reviewed by counsel:

David J. Rentsch, Counsel
Legal Division
Department of Correction
70 Franklin Street, Suite 600
Boston, MA    02110-1300
(617)727-3300, ext. 142
BBO# 544926